**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

NAHUM GILBERTO ORTIZ; DENNY MOLINA
CANTOR; LUCAS PALACIOS ALVARADO;
JEREMIAS LOPEZ LOPEZ; ELMER MOSCOSO
GUERRA; and LUIS GONZALEZ CARBAJAL,

                    Plaintiffs,

               v.

ORANGE COUNTY, NEW YORK; PAUL ARTETA,
Sheriff of Orange County, in his official and individual
capacity; CARL DUBOIS, former Sheriff of Orange
County, in his individual capacity; KENNETH JONES,
former Undersheriff of Orange County, in his individual
capacity; U.S. DEPARTMENT OF HOMELAND
SECURITY; U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT; and KENNETH GENALO, Acting
ICE Field Office Director, in his official capacity,

                    Defendants.

23 Civ. 2802 (VB)

## MEMORANDUM OF LAW IN SUPPORT OF THE FEDERAL
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:    (212) 637-2772 / 2633
E-mail: david.farber@usdoj.gov
        tara.schwartz@usdoj.gov

DAVID E. FARBER
TARA SCHWARTZ
Assistant United States Attorneys
   – Of Counsel –

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ....................................................................................................................... 2

    A.  ICE's Intergovernmental Service Agreement with OCJ ............................. 2

    B.  Plaintiffs' Grievances Concerning Conditions at OCJ .................................. 3

    C.  Plaintiffs' February 16-18, 2022 Hunger Strike ............................................ 4

    D.  Transfers to the Delta-1 Unit and Other ICE Detention Facilities ................. 6

    E.  Plaintiffs' Claims ............................................................................................ 6

LEGAL STANDARDS ............................................................................................................. 7

ARGUMENT ............................................................................................................................. 8

I.      This Court Lacks Jurisdiction To Review ICE's Decisions To Transfer Plaintiffs Molina and Palacios to Other Detention Facilities. .......................................................... 8

II.     Plaintiffs Molina's and Palacios' Claims Under the APA Are Barred by Sovereign Immunity. ........................................................................................................................ 12

III.    Plaintiffs Fail to State a Claim That the Federal Defendants Violated Their First Amendment Rights. ....................................................................................................... 13

    A.  The Complaint Does Not Allege Any Adverse Action by the Federal Defendants Against Plaintiffs. ............................................................................ 14

        1. Conduct Prior to the Hunger Strike ............................................................ 15

        2. Conduct During and After the Hunger Strike ............................................. 15

        3. Transfer to the Delta-1 Unit ........................................................................ 17

    B.  Plaintiffs Have Not Plausibly Alleged a Causal Connection Between Their Protected Speech and Their Transfers. ............................................................. 18

CONCLUSION .......................................................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aguilar v. ICE*,
    510 F.3d 1 (1st Cir. 2007) ...................................................................................... 11

*Anderson v. Branen*,
    17 F.3d 552 (2d Cir. 1994) ...................................................................... 14, 16, 17

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ................................................................................................ 7

*Avramenkov v. INS*,
    99 F. Supp. 2d 210 (D. Conn. 2000) .................................................................... 11

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................ 8

*Bennett v. Goord*,
    343 F.3d 133 (2d Cir. 2003) .................................................................................. 13

*Calla-Collado v. Att'y Gen. of the U.S.*,
    663 F.3d 680 (3d Cir. 2011) .................................................................................. 10

*Cantor Fitzgerald, Inc. v. Lutnick*,
    313 F.3d 704 (2d Cir. 2002) .................................................................................... 8

*Comm. of Cent. Am. Refugees v. INS*,
    795 F.2d 1434 (9th Cir.), *amended by* 807 F.2d 769 (9th Cir. 1986) ........................ 9

*Crichlow v. Doccs*,
    No. 18 Civ. 3222 (PMH), 2022 WL 6167135 (S.D.N.Y. Oct. 7, 2022) .................. 20

*Davidson v. Chestnut*,
    193 F.3d 144 (2d Cir. 1999) .................................................................................. 14

*Davis v. Goord*,
    320 F.3d 346 (2d Cir. 2003) .................................................................................. 13

*Dawes v. Walker*,
    239 F.3d 489 (2d Cir. 2001) .................................................................................. 14

*Dolan v. Connolly*,
    794 F.3d 290 (2d Cir. 2015) ........................................................................ 8, 14, 15

*Dorsey v. Fisher*,
    468 F. App'x 25 (2d Cir. 2012) ............................................................................. 13

*Eckhaus v. City of New York*,
    No. 18 Civ. 6901 (ARR)(PK), 2023 WL 3179506 (E.D.N.Y. May 1, 2023) .......... 16

*Edwards v. Horn*,
    No. 10 Civ. 6194 (RJS) (JLC), 2012 WL 760172 (S.D.N.Y. Mar. 8, 2012) ........... 16

*Espinal v. Goord,*
   558 F.3d 119 (2d Cir. 2009) ................................................................. 20

*Fabricio v. Griffin,*
   No. 16 Civ. 8731 (VB), 2019 WL 1059999 (S.D.N.Y. Mar. 6, 2019) ................................... 16

*Ford v. Deacon,*
   793 F. App'x 13 (2d Cir. 2019) ............................................................. 18, 19

*Gandarillas–Zambrana v. BIA,*
   44 F.3d 1251 (4th Cir. 1995) ............................................................... 11

*Garcia v. U.S. Dep't of Homeland Sec.,*
   657 F. Supp. 2d 403 (W.D.N.Y. 2009), *vacated on other grounds*, 669 F.3d 91 (2d Cir. 2011)
   ............................................................................................. 11

*Geo Grp., Inc. v. Newsom,*
   50 F.4th 745 (9th Cir. 2022) ................................................................ 9

*Giammatteo v. Newton,*
   452 F. App'x 24 (2d Cir. 2011) .............................................................. 7

*Gill v. Pidlypchak,*
   389 F.3d 379 (2d Cir. 2004) ................................................................. 13

*Gomez v. Cnty. of Westchester,*
   649 F. App'x 93 (2d Cir. 2016) .............................................................. 13

*Gomez v. Whitaker,*
   No. 18 Civ. 6900 (MAT), 2019 WL 4941865 (W.D.N.Y. Oct. 08, 2019) ............................. 10

*Green v. Napolitano,*
   627 F.3d 1341 (10th Cir. 2010) ............................................................. 12

*Greenwaldt v. Coughlin,*
   No. 93 Civ. 6551 (LAP), 1995 WL 232736 (S.D.N.Y. Apr. 19, 1995) ............................. 15

*Guangzu Zheng v. Decker,*
   No. 14 Civ. 4663 (MHD), 2014 WL 7190993 (S.D.N.Y. Dec. 12, 2014) ............................ 10

*Hamdan v. Gonzales,*
   425 F.3d 1051 (7th Cir. 2005) .............................................................. 12

*Hollander v. Am. Cyanamid Co.,*
   895 F.2d 80 (2d Cir. 1990) ................................................................. 19

*Long Island Radio Co. v. NLRB,*
   841 F.2d 474 (2d Cir. 1988) ................................................................. 7

*Makarova v. United States,*
   201 F.3d 110 (2d Cir. 2000) ................................................................. 7

*Mantena v. Johnson,*
   809 F.3d 721 (2d Cir. 2015) ................................................................. 9

*Mathurin v. Barr*,
   No. 19 Civ. 6885 (FPG), 2020 WL 9257062 (W.D.N.Y. Apr. 15, 2020) .............................. 10

*Morina v. Mayorkas*,
   No. 22 Civ. 02994 (LJL), 2023 WL 22617 (S.D.N.Y. Jan. 3, 2023).......................................9

*Nouritajer v. Jaddou*,
   18 F.4th 85 (2d Cir. 2021) ...................................................................................................9

*P.M. v. Joyce*,
   No. 22 Civ. 6321 (VEC), 2023 WL 2401458 (S.D.N.Y. Mar. 8, 2023).................................. 10

*Roseboro v. Gillespie*,
   791 F. Supp. 2d 353 (S.D.N.Y. 2011)................................................................................. 18

*Salazar v. Dubois*,
   No. 17 Civ. 2186 (RLE), 2017 WL 4045304 (S.D.N.Y. Sept. 11, 2017)............................... 10

*Shabaj v. Holder*,
   718 F.3d 48 (2d Cir. 2013)............................................................................................ 9, 12

*Sinclair v. Atty. Gen. of U.S.*,
   198 F. App'x 218 (3d Cir. 2006) .........................................................................................9

*Singh v. Whitaker*,
   362 F. Supp. 3d 93 (W.D.N.Y. 2019) ................................................................................ 10

*Smart v. Goord*,
   441 F. Supp. 2d 631 (S.D.N.Y. 2006)................................................................................ 15

*Swinson v. City of New York*,
   19 Civ. 11919 (KPF), 2022 WL 142407 (S.D.N.Y. Jan. 14, 2022)........................................ 18

*Thomas v. Waugh*,
   No. 13 Civ. 0321 (MAD) (TWD), 2015 WL 5750945 (N.D.N.Y. Sept. 30, 2015)................. 18

*Tolliver v. Jordan*,
   No. 19 Civ. 11823 (PMH), 2021 WL 2741728 (S.D.N.Y. July 1, 2021) ................................ 14

*United States v. Sherwood*,
   312 U.S. 584 (1941)............................................................................................................7

*Valencia v. Westchester Cnty.*,
   No. 19 Civ. 1699 (VB), 2020 WL 1233891 (S.D.N.Y. Mar. 13, 2020) ................................. 19

*Van Dinh v. Reno*,
   197 F.3d 427 (10th Cir. 1999) .......................................................................................... 11

*Vogelfang v. Capra*,
   889 F. Supp. 2d 489 (S.D.N.Y. 2012)................................................................................ 14

*Watkins v. Harlem Ctr. for Nursing & Rehab., LLC*,
   No. 20 Civ. 2919 (KPF), 2021 WL 4443968 (S.D.N.Y. Sept. 28, 2021) .............................. 18

*Whitfield v. O'Connell*,
  No. 09 Civ. 1925 (WHP), 2010 WL 1010060 (S.D.N.Y. Mar. 18, 2010) .............................. 14

*Wood v. United States*,
  175 F. App'x 419 (2d Cir. 2006) ......................................................................... 9, 12

**Statutes**

42 U.S.C. § 1983 ......................................................................................................... 1

5 U.S.C. § 701(a) ...................................................................................................... 12

5 U.S.C. § 702 ........................................................................................................... 12

6 U.S.C. § 557 ............................................................................................................. 9

8 U.S.C. § 1231(g)(1) ............................................................................................ 9, 10

8 U.S.C. § 1252(a)(2)(B)(ii) .............................................................. 1, 8, 11, 12

8 U.S.C. § 1252(a)(2)(D) .................................................................................. 11, 12

Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq.* ...................................... 1

The Homeland Security Act of 2002, P.L. 107–296 ............................................... 9

**Rules**

Federal Rule of Civil Procedure 12(b)(1) ............................................................... 1

Federal Rule of Civil Procedure 12(b)(6) ......................................................... 1, 7

**Other Authorities**

ICE, National Detention Standards for Non-Dedicated Facilities (2019), available at
  https://www.ice.gov/doclib/detention-standards/2019/nds2019.pdf .................................. 3, 18

Defendants the U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), and Kenneth Genalo (collectively, the "Federal Defendants"), by their attorney Damian Williams, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion to dismiss all claims against them in the Complaint (ECF No. 7, the "Complaint" or "Compl."), pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiffs are six noncitizens who were detained at Orange County Jail ("OCJ") pursuant to an Intergovernmental Services Agreement with ICE. Plaintiffs allege that they were subjected to retaliatory conduct by OCJ staff and officials after they complained of substandard conditions while in detention at OCJ. They bring a claim under 42 U.S.C. § 1983 against Orange County and OCJ officials for violations of the First Amendment, and claims against the Federal Defendants for a violation of the First Amendment and failure to follow ICE policies with respect to the transfer of two plaintiffs to other detention facilities, pursuant to the Administrative Procedure Act, 5 U.S.C. §§ 701 *et seq*. ("APA").

Plaintiffs' claims against the Federal Defendants should be dismissed for lack of subject matter jurisdiction and for failure to state a claim. First, this Court lacks jurisdiction to review decisions made by ICE to transfer two of the Plaintiffs from OCJ to other detention facilities pursuant to the jurisdiction-stripping provision of the Immigration and Nationality Act ("INA"), at 8 U.S.C. § 1252(a)(2)(B)(ii). Plaintiffs' constitutional and administrative challenges concerning such discretionary transfer decisions must be brought in a petition for review filed with the Second Circuit. Second, because the INA strips jurisdiction to review such detainee

1

transfer decisions, and those decisions are committed to agency discretion by law, Plaintiffs'

APA claim must be dismissed.

Plaintiffs have also failed to plausibly allege that the Federal Defendants violated their

First Amendment rights by retaliating against them. As an initial matter, Plaintiffs' allegations

are insufficient to establish that the Federal Defendants, as opposed to OCJ officials, took

adverse action against them. In addition, Plaintiffs fail to adequately allege any causal

connection between their protected activity and any alleged adverse action taken by the Federal

Defendants. As a result, their claim for First Amendment retaliation against the Federal

Defendants should be dismissed.

## BACKGROUND

Plaintiffs Nahum Gilberto Ortiz ("Ortiz"), Denny Molina Cantor ("Molina"), Lucas

Palacios Alvarado ("Palacios"), Jeremias Lopez Lopez ("Lopez"), Elmer Moscoso Guerra

("Moscoso"), and Luis Gonzalez Carbajal ("Gonzalez"), are six noncitizens who were detained

by ICE at OCJ, from 2021 to 2022, in connection with their respective immigration

proceedings.[1] Compl. ¶¶ 10, 12-17. Plaintiffs allege that they were subjected to retaliation for

speaking out about conditions at OCJ. *Id.* ¶¶ 53-54.

### A.  ICE's Intergovernmental Service Agreement with OCJ

ICE contracts with OCJ to provide detention facilities for immigration detainees pursuant

to an Intergovernmental Service Agreement ("IGSA"). *Id.* ¶ 26. Pursuant to the IGSA, OCJ is

responsible for housing ICE detainees, providing them with food and healthcare, and has direct

---

[1] Only Lopez remains in ICE detention at OCJ. *Id.* ¶ 15. Ortiz and Gonzalez were released from OCJ in March 2023 and August 2022, respectively. *Id.* ¶¶ 12, 17. Molina and Palacios were transferred from OCJ to another ICE detention facility in July 2022. *Id.* ¶¶ 13-14. And Moscoso was lawfully deported to his native country subsequent to Plaintiffs' filing of the Complaint.

control over the conditions of detention for those detainees. *Id.* ¶¶ 27, 29-30. ICE is responsible

for ensuring OCJ's compliance with ICE's National Detention Standards for Non-Dedicated

Facilities (2019), available at https://www.ice.gov/doclib/detention-standards/2019/nds2019.pdf

("NDS"), which are minimum detention standards that apply to facilities that house ICE

detainees as well as other inmate populations, such as OCJ. *Id.* ¶ 31. Pursuant to the NDS, OCJ is

responsible for classifying ICE detainees into categories for safety and security, and OCJ is

responsible for ensuring detainees are appropriately housed pursuant to their individual

classification level. *See* NDS, Standard 2.2 (Custody Classification System), §§ II.B, D. OCJ is

also responsible for "establishing a fair and equitable disciplinary system, requiring detainees to

comply with facility rules and regulations, and imposing disciplinary sanctions on those who do

not comply." *Id.,* Standard 3.1 (Disciplinary System). In addition, OCJ has responsibility for the

placement of ICE detainees in administrative or disciplinary segregation pursuant to written

policies consistent with the NDS. *See generally id.*, Standard 2.9 (Special Management Units).

### B.  Plaintiffs' Grievances Concerning Conditions at OCJ

Plaintiffs allege that during their detention, OCJ staff denied them access to medical care

for mental-health-related conditions, chronic conditions, and acute needs. Compl. ¶¶ 34-42.

Plaintiffs further allege that OCJ staff "routinely subjected [them] to racist and xenophobic

harassment" while they were detained at OCJ. *Id.* ¶¶ 43-45. And Plaintiffs allege that the food

they were served at OCJ was of "inadequate quantity and quality." *Id*. ¶ 46.

Plaintiffs allege that they "tried to raise these problems formally and informally with OCJ

and ICE," through established grievance procedures. *Id.* ¶¶ 47-52. Plaintiffs allege that Gonzalez

submitted complaints directly to ICE regarding the conditions at OCJ through a lockbox located

within their housing unit. *Id*. ¶ 52. In November 2021, Gonzalez submitted a complaint to DHS's

3

Office for Civil Rights and Civil Liberties ("CRCL"). *Id*. ¶ 55. Investigators from DHS subsequently visited OCJ and spoke with Gonzalez regarding the alleged misconduct detailed in the complaint. *Id*. ¶ 56. In February 2022, several "immigrant and civil rights organizations" filed a complaint with the CRCL regarding the conditions at OCJ, relying in part on sworn statements from Ortiz and Molina. *Id*. ¶ 61.

### C.  Plaintiffs' February 16-18, 2022 Hunger Strike

On February 16, 2022, Plaintiffs, along with other ICE detainees at OCJ, began a hunger strike to protest their conditions of confinement at OCJ. *Id*. ¶ 68. On February 17, 2022, an ICE Officer Thomas Flynn ("Officer Flynn"), who is a member of ICE's Jail Liaison Unit for OCJ, met with Gonzalez and Ortiz. *Id*. ¶ 74. Officer Flynn allegedly told Ortiz he would "look into" the issues raised by the strikers and took Gonzalez to speak with former-Acting Assistant ICE New York Field Office Director Judith Almodovar (the "Assistant ICE FOD"), on the phone. *Id*. Plaintiffs allege that the Assistant ICE FOD yelled at Gonzalez and "ordered him to calm the strikers down," asserting that ICE would improve conditions at OCJ. *Id*. Later that day, OCJ guards allegedly retaliated against Plaintiffs and others who were participating in the hunger strike by placing Moscoso, Molina, Gonzalez, Lopez, and Palacios in segregated confinement, confiscating food and personal items as part of a mass search, and preventing them from "using jail-provided tablets to communicate with people outside the jail." *Id*. ¶¶ 77-79. Plaintiffs allege that Officer Flynn "was present and observed this mass search of the plaintiffs' cells." *Id.* ¶ 78.

On February 18, 2022, OCJ issued disciplinary citations to Moscoso, Molina, Gonzalez, Lopez, and Palacios on the basis that their actions were "disruptive to the unit and orderly running of the facility." *Id*. ¶ 81. Plaintiffs allege, upon information and belief, that "ICE was informed of and approved of" the disciplinary actions taken by OCJ staff following the

commencement of the hunger strike. *Id*. ¶ 82. Later that day, the Assistant ICE FOD visited OCJ and met with Molina, allegedly promising "to improve conditions at OCJ if [the hunger strikers] resumed eating." *Id.* at ¶ 83. That same day, the Assistant ICE FOD held a second meeting with Molina, Gonzalez, Lopez, Moscoso, and Palacios and reiterated that she would address the hunger strikers' demands, but that "she could not rescind the disciplinary tickets" issued by OCJ "assigning them disciplinary confinement." *Id*. ¶ 84. The hunger strikers, including Plaintiffs, decided to end their hunger strike shortly after. *Id.*

A few days later, Plaintiffs Moscoso, Molina, Gonzalez, Lopez, and Palacios attended hearings related to the disciplinary citations issued on February 18, 2022. *Id*. ¶ 85. They were found guilty of engaging "in a group demonstration that was 'disruptive to the unit and orderly running of the facility.'" *Id.* Each was assigned seven days in disciplinary segregation by OCJ. *Id.* ¶ 86. In addition, within two weeks of the onset of the hunger strike, Ortiz was allegedly "subjected to two days of segregated confinement in his cell." *Id*. ¶ 87. Plaintiffs allege in conclusory fashion that ICE "sanctioned the plaintiffs' disciplinary segregation" and "collaborated with [OCJ] to silence the plaintiffs." *Id*. ¶ 92; *see also id*. ¶ 88 (alleging that ICE was involved in a "concerted effort" "to punish the hunger strikers for their speech through segregated confinement").

Subsequent to the hunger strike, Lopez and Moscoso provided written testimony regarding conditions at OCJ in connection with a New York City Council hearing held on February 28, 2022. *Id.* ¶¶ 94-96. On April 20, 2022, civil rights groups filed another complaint with CRCL, in which Gonzalez and Ortiz allegedly participated. *Id.* ¶ 99. On April 28, 2022, Gonzalez filed a second individual complaint with CRCL concerning abuse by OCJ staff. *Id*. ¶ 100. DHS officials allegedly investigated these complaints in the fall of 2022 and spoke with

Ortiz and Moscoso regarding the conditions at the jail. *Id*. ¶ 101.

### D.  Transfers to the Delta-1 Unit and Other ICE Detention Facilities[2]

On July 26, 2022, Plaintiffs Lopez, Moscoso, and Ortiz were allegedly transferred to unit Delta 1 (the "Delta-1 Unit") at OCJ—a "previously unused" unit that "had previously been closed."  *Id*. ¶¶ 105-06. Shortly thereafter, ICE Officer Flynn allegedly visited the Delta-1 Unit and "said he did not know why the group" had been relocated, "but that he would try to solve the situation." *Id*. ¶ 111. Only Lopez remains detained at OCJ in the Delta-1 Unit. *See supra,* note 1.

That same day, Molina and Palacios were transferred from OCJ to another ICE detention facility in Natchez, Mississippi. Compl. ¶ 120. On March 16, 2023, Molina was transferred to an ICE detention facility in Pine Prairie, Louisiana, and Palacios was transferred to an ICE detention facility in Winn, Louisiana. *Id.* ¶ 121. Plaintiffs allege, upon information and belief, that ICE failed to adequately justify the transfers of Molina and Palacios and that the transfers were unnecessary. *Id*. ¶ 131.

### E.  Plaintiffs' Claims

Plaintiffs bring a claim against Orange County, the current and former Sheriffs of Orange County, and the former Undersheriff of Orange County under 42 U.S.C. § 1983, for violations of the First Amendment. *Id.* ¶ 140 (First Claim). Plaintiffs also bring a standalone constitutional claim against the Federal Defendants alleging their conduct violates the First Amendment. *Id.* ¶ 141 (Second Claim). Finally, Molina and Palacios bring a claim against DHS and ICE for violating the APA because the transfers of Molina and Palacios from OCJ to other detention facilities failed to comply with DHS and ICE "policies regarding such transfers." *Id*. ¶¶ 142-43

---

[2] In May 2022, OCJ transferred Gonzalez to a criminal detention unit, where he remained until he was released from ICE detention in August 2022. *Id*. ¶¶ 104, 17. Plaintiffs do not allege any involvement by ICE in the decision to transfer Gonzalez to the criminal detention unit. *Id.* ¶ 104.

(Third Claim).

With respect to the Federal Defendants, Plaintiffs seek a declaration that the Federal Defendants' conduct violated their rights under the First Amendment and a declaration that DHS and ICE violated the APA by failing to follow their own policies with respect to the transfers of Molina and Palacios. *Id*. at 41 (Request for Relief). Plaintiffs request that the Court enjoin defendants to transfer Lopez from the Delta-1 Unit to a general population unit within OCJ. *Id.* at 42. And Plaintiffs request that the Court "set aside" the transfers of Molina and Palacios, and enjoin ICE to transfer them to a detention facility in the New York City area other than OCJ. *Id.*

## LEGAL STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "The United States, as sovereign, is immune from suit save as it consents to be sued . . ., and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). "Any waiver of the government's sovereign immunity is to be strictly construed in favor of the government." *Long Island Radio Co. v. NLRB*, 841 F.2d 474, 477 (2d Cir. 1988). The plaintiff "has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton,* 452 F. App'x 24, 27 (2d Cir. 2011) (citing *Makarova*, 201 F.3d at 113).

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must assert "sufficient factual matter . . . to state a claim to relief that is plausible on its face" if taken as true. *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). In making this determination, the court must accept well-pleaded factual allegations in the complaint as true and construe reasonable inferences in favor of the

plaintiff. *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 572 (2007). Simply offering "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555. "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). And courts need not give "credence to plaintiff's conclusory allegations." *Cantor Fitzgerald, Inc. v. Lutnick*, 313 F.3d 704, 709 (2d Cir. 2002). In the context of First Amendment retaliation claims brought by detainees, such claims must "supported by specific and detailed factual allegations," and not stated "in wholly conclusory terms." *Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015) (citations omitted).

## ARGUMENT

I.     **This Court Lacks Jurisdiction To Review ICE's Decisions To Transfer Plaintiffs Molina and Palacios to Other Detention Facilities.**

Since decisions about where to house and transfer detainees are committed to the statutory discretion of DHS, they are unreviewable by this Court.

The jurisdiction-stripping provision of the INA at 8 U.S.C. § 1252(a)(2)(B)(ii), bars courts from reviewing any decision or action that is committed to DHS's statutory discretion. Section 1252(a)(2)(B) provides:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of Title 28, or any other habeas corpus provision, and sections 1361 and 1651 of such title, and except as provided in subparagraph (D), and regardless of whether the judgment, decision, or action is made in removal proceedings, no court shall have jurisdiction to review--
> ...
> (ii) any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified under this subchapter to be in the discretion of the Attorney General or the Secretary of Homeland Security, other than the granting of relief under section 1158(a) of this title.

This provision generally "strips [courts of] jurisdiction over [] substantive discretionary decision[s]" made by DHS and its component agencies including ICE. *Mantena v. Johnson*, 809 F.3d 721, 728 (2d Cir. 2015); *see also Nouritajer v. Jaddou*, 18 F.4th 85, 89 (2d Cir. 2021) (concluding district court did not have subject-matter jurisdiction to review the revocation of a previously approved immigration petition); *Shabaj v. Holder*, 718 F.3d 48, 51 (2d Cir. 2013) (concluding district court did not have subject-matter jurisdiction to review denial of application for a waiver of inadmissibility); *Morina v. Mayorkas*, No. 22 Civ. 02994 (LJL), 2023 WL 22617, at *7-10 (S.D.N.Y. Jan. 3, 2023) (dismissing complaint challenging denial of plaintiff's application for an adjustment of immigration status for lack of subject-matter jurisdiction).

Pursuant to 8 U.S.C. § 1231(g)(1), DHS has the statutory responsibility to "arrange for appropriate places of detention for aliens detained pending removal or a decision on removal."[3] The Second Circuit has found that Section 1231(g)(1) provides "statutory discretion" to DHS to determine where detainees are held. *Wood v. United States*, 175 F. App'x 419, 420 (2d Cir. 2006) (DHS may determine where to hold detainees "in the exercise of … statutory discretion in light of the available facilities" (citing 8 U.S.C. § 1231(g))). Indeed, "Section 1231(g)(1) gives both 'responsibility' and 'broad discretion' to the Secretary 'to choose the place of detention for deportable aliens.'" *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 751 (9th Cir. 2022) (quoting *Comm. of Cent. Am. Refugees v. INS*, 795 F.2d 1434, 1440 (9th Cir.), *amended by* 807 F.2d 769 (9th Cir. 1986)); *see also Sinclair v. Atty. Gen. of U.S.*, 198 F. App'x 218, 222 n.3 (3d Cir. 2006) ("[T]he place of detention is left to the discretion of the Attorney General." (citing 8 U.S.C. § 1231(g)(1))).

---

[3] The Homeland Security Act of 2002, P.L. 107–296 ("HSA"), transferred immigration enforcement authorities to the Secretary of Homeland Security and provided that any reference to the Attorney General in a provision of the INA describing functions that were transferred from the Attorney General to DHS by the HSA ''shall be deemed to refer to the Secretary'' of Homeland Security. *See* 6 U.S.C. § 557.

As a result, as numerous courts within this Circuit have held, district courts lack jurisdiction to review ICE's decisions with respect to the placement and transfer of detainees. *See, e.g., P.M. v. Joyce,* No. 22 Civ. 6321 (VEC), 2023 WL 2401458, at *5 (S.D.N.Y. Mar. 8, 2023) ("The Court does not have jurisdiction to review the Attorney General's discretionary authority to transfer detainees." (citing *Salazar v. Dubois*, No. 17 Civ. 2186 (RLE), 2017 WL 4045304, at *1 (S.D.N.Y. Sept. 11, 2017) ("A court lacks jurisdiction to review decisions of the Attorney General where the authority is derived from subchapter II of Chapter 12 of Title 8.")); *Guangzu Zheng v. Decker*, No. 14 Civ. 4663 (MHD), 2014 WL 7190993, at *15-16 (S.D.N.Y. Dec. 12, 2014) (concluding Section 1252(a)(2)(B) stripped court of jurisdiction to issue an order prohibiting ICE from transferring detainee because such action was within the agency's discretion pursuant to Section 1231(g)(1)); *Mathurin v. Barr*, No. 19 Civ. 6885 (FPG), 2020 WL 9257062, at *11 (W.D.N.Y. Apr. 15, 2020) (courts "lack jurisdiction to restrict the Attorney General's decisions about whether and where to transfer aliens between facilities"); *Singh v. Whitaker*, 362 F. Supp. 3d 93, 106 (W.D.N.Y. 2019) ("This Court agrees that § 1231(g)(1) provides DHS with broad authority to decide where an alien is detained."); *Gomez v. Whitaker*, No. 18 Civ. 6900 (MAT), 2019 WL 4941865, at *6 (W.D.N.Y. Oct. 08, 2019) (citing *Calla-Collado v. Att'y Gen. of the U.S.*, 663 F.3d 680, 685 (3d Cir. 2011) (stating that Congress vested DHS "with authority to enforce the nation's immigration laws[,]" and that, as a "part of DHS, ICE 'necessarily has the authority to determine the location of detention of an alien in deportation proceedings . . . and therefore, to transfer aliens from one detention center to another'") (quotation and citation omitted)); *Garcia v. U.S. Dep't of Homeland Sec.*, 657 F. Supp. 2d 403, 410 (W.D.N.Y. 2009) (holding that the court did not have jurisdiction over petitioner's transfer request because "transferring an alien from one location to another is . . .

within the province of the Attorney General"), *vacated on other grounds*, 669 F.3d 91 (2d Cir.

2011); *Avramenkov v. INS*, 99 F. Supp. 2d 210, 213 (D. Conn. 2000) (refusing to grant

petitioner's request for an injunction to prevent transfer because "Congress has squarely placed

the responsibility of determining where aliens are to be detained within the sound discretion of

the Attorney General"); *see also Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999)

("§ 1252(a)(2)(B)(ii) provides that no court has jurisdiction to review *any* decision or action the

Attorney General has discretion to make 'under this subchapter' … including § 1231." (emphasis

in original)); *Gandarillas–Zambrana v. BIA*, 44 F.3d 1251, 1256 (4th Cir. 1995) ("The INS

necessarily has the authority to determine the location of detention of an alien in deportation

proceedings . . . and therefore to transfer aliens from one detention center to another."); *but see*

*Aguilar v. ICE*, 510 F.3d 1, 20-21 (1st Cir. 2007) (holding individualized transfer decisions by

ICE are reviewable).

Here, Molina and Palacios seek review of ICE's discretionary decision to transfer them

from OCJ to facilities in Mississippi and Louisiana. Compl. ¶¶ 117-136, 141-143. Plaintiffs'

constitutional and APA claims concerning these transfers fall squarely within the jurisdiction-

stripping provision of Section 1252(a)(2)(B)(ii). As a result, Plaintiffs' claims against the Federal

Defendants concerning the transfer of Molina and Palacios from OCJ must be dismissed for lack

of subject matter jurisdiction.

The only exception to the jurisdiction-stripping provision of Section 1252(a)(2)(B) is

contained at 8 U.S.C. § 1252(a)(2)(D), which allows for "review of constitutional claims or

questions of law raised upon a petition for review filed with an appropriate court of appeals."

Section 1252(a)(2)(D) thus provides for "limited judicial review of constitutional claims and

questions of law presented in petitions for review." *Hamdan v. Gonzales*, 425 F.3d 1051, 1057

(7th Cir. 2005). Accordingly, while this Court lacks jurisdiction to review Plaintiffs'

constitutional and APA claims concerning ICE's transfer decisions, Plaintiffs may still bring

these challenges in an appropriate petition for review filed with the Second Circuit. *See, e.g.,*

*Shabaj*, 718 F.3d at 51-52 (concluding that 8 U.S.C. § 1252(a)(2)(D) prohibited district court

from reviewing plaintiff's claim to the extent it raised "constitutional claims or questions of

law"); *Green v. Napolitano,* 627 F.3d 1341, 1348 (10th Cir. 2010) ("Congress limited that

exception [in § 1252(a)(2)(D)] to petitions for review, which renders the exception inapplicable

in the district courts.").

## II.    **Plaintiffs Molina's and Palacios' Claims Under the APA Are Barred by Sovereign Immunity.**

Plaintiffs Molina's and Palacios' APA claim must be dismissed because transfer

decisions by ICE are both precluded from judicial review and committed to agency discretion by

law. The APA provides a waiver of sovereign immunity for individuals seeking equitable relief

if they have suffered a "legal wrong because of agency action," unless a statute "preclude[s]

judicial review," or the challenged agency action "is committed to agency discretion by law."

5 U.S.C. §§ 701(a), 702.

As outlined above, Section 1252(a)(2)(B)(ii) of the INA precludes judicial review by this

Court of ICE's discretionary decision to transfer Molina and Palacios from OCJ. In addition,

ICE's broad statutory discretion to transfer detainees from one jurisdiction to another means such

decisions are committed to agency discretion by law. *See Wood*, 175 F. App'x at 420.

Consequently, the APA does not provide an applicable waiver of sovereign immunity here, and

thus the Court lacks jurisdiction over Plaintiffs' Third Claim in the Complaint.

12

III.    **Plaintiffs Fail to State a Claim That the Federal Defendants Violated Their First Amendment Rights.**

Plaintiffs' claim that the Federal Defendants' conduct violates the First Amendment fails to plead the requisite specific and detailed factual allegations necessary to survive a motion to dismiss. Plaintiffs appear to bring a First Amendment retaliation claim premised upon their transfer to the Delta-1 Unit or to facilities outside of OCJ.[4] However, Plaintiffs' allegations fail to plausibly allege either that ICE officials took adverse action against them or that there was a causal connection between their protected speech and their transfers.

To establish a prima facie case of First Amendment retaliation, a plaintiff must demonstrate: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004) (internal quotation marks omitted); *see also Gomez v. Cnty. of Westchester*, 649 F. App'x 93, 96 (2d Cir. 2016) (same standard for pretrial detainees). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (internal quotation marks omitted). To sufficiently allege a causal connection, a plaintiff's "allegations must support an inference that the protected conduct was 'a substantial or motivating factor for the adverse actions taken by prison officials.'" *Dorsey v. Fisher*, 468 F. App'x 25, 27 (2d Cir. 2012) (quoting *Bennett v. Goord*, 343 F.3d 133, 137 (2d Cir. 2003)).

The Second Circuit has held that district courts should "approach prisoner retaliation claims with skepticism and particular care, because virtually any adverse action taken against a

---

[4] The Complaint does not articulate how the Federal Defendants' conduct violated the First Amendment. *See* Compl. ¶ 141 ("The conduct of Defendants DHS, ICE, and Genalo, as alleged in the Complaint, violates the First Amendment to the U.S. Constitution.").

prisoner by a prison official . . . can be characterized as a constitutionally proscribed retaliatory act." *Davis*, 320 F. 3d at 352 (internal quotation marks omitted). Accordingly, such claims must be "supported by specific and detailed factual allegations." *Dolan*, 794 F.3d at 295 (citations omitted); *see also Tolliver v. Jordan*, No. 19 Civ. 11823 (PMH), 2021 WL 2741728, at *5 (S.D.N.Y. July 1, 2021) ("[C]onclusory allegations will not suffice; instead, a prisoner's claim for retaliation must be supported by specific and detailed factual allegations." (citing *Vogelfang v. Capra*, 889 F. Supp. 2d 489, 517 (S.D.N.Y. 2012)).

### A. The Complaint Does Not Allege Any Adverse Action by the Federal Defendants Against Plaintiffs.

Plaintiffs fail to adequately allege that the Federal Defendants took adverse action against them. An adverse action is defined as "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001). Retaliatory conduct without such a deterrent effect is "*de minimis*, and therefore outside the ambit of constitutional protection." *Id.* (citing *Davidson v. Chestnut,* 193 F.3d 144, 150 (2d Cir. 1999). "In considering a prisoner retaliation claim, courts must bear in mind that 'prisoners may be required to tolerate more . . . than average citizens, before a [retaliatory] action taken against them is considered adverse.'" *Whitfield v. O'Connell*, No. 09 Civ. 1925 (WHP), 2010 WL 1010060, at *9 (S.D.N.Y. Mar. 18, 2010) (quoting *Davis*, 320 F.3d at 353). In cases where the alleged adverse action is a failure to intervene, liability only attaches when there was "a realistic opportunity to intervene to prevent the harm from occurring." *Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994). As outlined below, Plaintiffs fail to adequately allege that the Federal Defendants—as opposed to OCJ staff—took any adverse action against them.

14

## 1.   Conduct Prior to the Hunger Strike

First, Plaintiffs have not alleged that the Federal Defendants took adverse action against them prior to the hunger strike in February 2022. While Plaintiffs allege that OCJ guards were involved in altercations with Plaintiffs after the submitted complaints and grievances, *see* Compl. ¶¶ 58-59, no ICE officials were involved in that conduct. At most Plaintiffs allege that ICE officials did not visit the jail enough and did not respond to their complaints. *Id.* ¶¶ 51-52. Neither constitutes adverse action. *See Smart v. Goord*, 441 F. Supp. 2d 631, 642-43 (S.D.N.Y. 2006) (failure of defendants to investigate or act in response to plaintiff's complaints is insufficient to state a claim (citing *Greenwaldt v. Coughlin*, No. 93 Civ. 6551 (LAP), 1995 WL 232736, at *4 (S.D.N.Y. Apr. 19, 1995))).

## 2.   Conduct During and After the Hunger Strike

Plaintiffs also fail to allege that the ICE officials took any adverse action against them during or immediately after the February 2022 hunger strike. Plaintiffs' allegations of retaliation during the hunger strike are almost exclusively focused on the actions of OCJ guards and officials. *See* Compl. ¶¶ 75-81 ("From the outset, and throughout the hunger strike, OCJ guards engaged in a campaign of escalating retaliation," including placing the hunger strikers in segregated confinement, conducting a mass search of their cells, blocking them from accessing their jail-provided tablets, and issuing them disciplinary sanctions). Plaintiffs assert "upon information and belief" and in conclusory fashion that "ICE was informed of and approved of" the disciplinary actions taken by OCJ staff following the onset of the hunger strike. *Id*. ¶ 82. But these wholly conclusory statements are devoid of the "specific and detailed factual allegations" necessary to state a viable First Amendment retaliation claim. *Dolan*, 794 F.3d at 295.

Indeed, the Complaint indicates that ICE officials made an effort to engage with the demands of the hunger strikers during this time. While visiting OCJ during the hunger strike, the Assistant ICE FOD asked "why the hunger strikers were refusing to eat" and promised "to address [the strikers'] demands." Compl. ¶¶ 83-84. At most, the Complaint alleges that this ICE official "yelled at Plaintiff Gonzalez" on the second day of the hunger strike and "grew angry" in one conversation with Molina, *id.* ¶¶ 74, 83—conduct which falls well below the requisite adverse action needed to sustain a retaliation claim. *See Fabricio v. Griffin*, No. 16 Civ. 8731 (VB), 2019 WL 1059999, at *8 (S.D.N.Y. Mar. 6, 2019) ("[N]on-specific verbal threats, harassing comments and hostile behavior do not constitute adverse actions sufficient to state a retaliation claim." (citing *Edwards v. Horn*, No. 10 Civ. 6194 (RJS) (JLC), 2012 WL 760172, at *15 (S.D.N.Y. Mar. 8, 2012))).

To the extent Plaintiffs premise their retaliation claim on the Federal Defendants' failure to intervene to stop retaliatory conduct by OCJ officials during the hunger strike, Compl. ¶ 82, Plaintiffs fail to allege ICE officials had a "realistic opportunity" to intervene and stop any allegedly retaliatory conduct. *Anderson*, 17 F.3d at 557. Even if OCJ staff's mass search of the hunger strikers' cells or imposition of disciplinary sanctions could constitute adverse action, Plaintiffs do not allege that ICE Officer Flynn had the authority or capability to intervene and stop such conduct by OCJ officials. At most, Plaintiffs allege that ICE Officer Flynn was present and observed such conduct, Compl. ¶ 78, but they do not allege that he had a realistic opportunity to intervene to prevent any harm. *See Eckhaus v. City of New York*, No. 18 Civ. 6901 (ARR) (PK), 2023 WL 3179506, at *6 (E.D.N.Y. May 1, 2023) ("Mere presence at the scene of an incident is insufficient to establish that an officer had an opportunity to prevent" a constitutional violation from occurring).

Moreover, the Complaint specifically acknowledges that ICE does not have direct control over prison conditions, detainee disciplinary procedures, and the classification and placement of detainees at OCJ. *See, e.g.,* Compl. ¶ 29 ("Conditions at OCJ are under the direct control of the Orange County Sheriff"); *id*. ¶ 30 ("Defendant Jones … exercised control over the conditions of immigration detention at OCJ."); *id*. ¶ 84 (Assistant ICE FOD "could not rescind the disciplinary tickets assigning [plaintiffs] disciplinary confinement"). Furthermore, as Plaintiffs allege, the Orange County Sheriff "has broad authority on law enforcement and jail-related matters." *Id.* ¶ 29 (citing Orange County Code §§ 17-2, 17-5). Accordingly, Plaintiffs fail to allege that ICE officials had a reasonable opportunity to intervene and prevent any harm from OCJ officials' allegedly retaliatory conduct.

3.   Transfer to the Delta-1 Unit

ICE officials also did not take adverse action against Plaintiffs with respect to the alleged transfer of Lopez, Moscoso, and Ortiz to the Delta-1 Unit within OCJ. *Id*. ¶¶ 105-106.[5] The Complaint alleges that it was OCJ officials who "approved the transfer to the previously unused" Delta-1 Unit, *id*. ¶ 105, and Plaintiffs do not allege that ICE officials were involved in that placement decision.

To the extent Plaintiffs assert that ICE failed to intervene "to rectify OCJ's retaliatory transfer of the plaintiffs to this unit," *id*. ¶ 111, the Complaint lacks allegations suggesting that any ICE official had a "realistic opportunity" to prevent Lopez, Moscoso, or Ortiz from being transferred to the Delta-1 Unit. *Anderson*, 17 F.3d at 557. As noted above, *supra* at 3, OCJ officials are responsible for ensuring detainees are appropriately housed pursuant to their

---

[5] Plaintiffs do not allege any involvement by ICE officials with respect to the alleged transfer of Plaintiff Gonzalez to punitive segregation within OCJ in May 2022. *Id*. ¶ 92.

individual classification level. *See* NDS, Standard 2.2 (Custody Classification System), §§ II.B, D.[6] And OCJ officials have responsibility for the placement of ICE detainees in administrative or disciplinary segregation. *Id.*, Standard 2.9 (Special Management Units). At most, Plaintiffs allege that ICE Officer Flynn was aware of the transfer of Lopez, Moscoso, and Ortiz to the Delta-1 Unit, but they do not allege that he had the capability to intercede and remedy the allegedly retaliatory transfer. Accordingly, Plaintiff cannot show that the Federal Defendants took adverse action against them.

### B. Plaintiffs Have Not Plausibly Alleged a Causal Connection Between Their Protected Speech and Their Transfers.

Plaintiffs also fail to establish the requisite causal connection between their protected activity and their subsequent transfers to the Delta-1 Unit or other ICE detention facilities.

To identify whether a causal connection exists between protected speech and an adverse action, courts consider "a number of factors, including any statements made by the defendant[s] concerning [their] motivation and the temporal proximity between the protected activity and the defendant[s'] adverse action[s]." *Roseboro v. Gillespie*, 791 F. Supp. 2d 353, 366 (S.D.N.Y. 2011). "The Second Circuit has made clear that 'temporal proximity alone . . . is insufficient to establish a retaliation claim.'" *Swinson v. City of New York*, 19 Civ. 11919 (KPF), 2022 WL 142407, at *12 (S.D.N.Y. Jan. 14, 2022) (quoting *Ford v. Deacon*, 793 F. App'x 13, 16 (2d Cir. 2019) (time lapse of four months between protected speech and alleged adverse action insufficient to establish a retaliation claim)); *Thomas v. Waugh*, No. 13 Civ. 321 (MAD) (TWD), 2015 WL 5750945, at *15 (N.D.N.Y. Sept. 30, 2015) ("[W]here 'timing is the only basis for a

---

[6] "On a motion to dismiss, the Court may consider any statements or documents incorporated by reference in the Complaint, documents that are integral to the Complaint even if they are not incorporated by reference, and matters of which judicial notice may be taken," including "documents retrieved from official government websites." *Watkins v. Harlem Ctr. for Nursing & Rehab., LLC*, No. 20 Civ. 2919 (KPF), 2021 WL 4443968, at *1 n.1 (S.D.N.Y. Sept. 28, 2021) (internal quotation marks omitted).

claim of retaliation . . . an inference of retaliation does not arise.'") (quoting *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001)).

Here, Plaintiffs rely solely on temporal proximity between their hunger strike and subsequent transfers to support a causal connection. But the five-month gap between the February 16-19, 2022 hunger strike and the July 26, 2022 transfers is too long to support a causal connection between any alleged adverse action and protected speech. *See Ford*, 793 F. App'x at 16 (four months too long); *Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 85-86 (2d Cir. 1990) (three months too long). Plaintiffs do not provide any other nonconclusory allegation to support a causal connection between their protected conduct and the alleged adverse actions.

Indeed, the allegations in the Complaint indicate that ICE officials could not have used the transfers to the Delta-1 Unit as a form of retaliation because they did not have the authority to effectuate the transfers. Specifically, according to the Complaint, after some of the Plaintiffs were moved to the Delta-1 Unit within OCJ, ICE Officer Flynn told this group that "he did not know why the group had been moved to disciplinary segregation [and] that he would try to solve the situation." Compl. ¶ 111. Rather than supporting an inference that Plaintiffs' protected activity was a substantial or motivating factor for their transfer to this unit, ICE Officer Flynn's statement shows that ICE officials did not have the authority, or make the decision, to transfer Plaintiffs. *See Valencia v. Westchester Cnty.*, No. 19 Civ. 1699 (VB), 2020 WL 1233891, at *7 (S.D.N.Y. Mar. 13, 2020) (plaintiff failed to plead requisite causal connection where there was no indication that defendants "had the authority, or made the decision, to transfer plaintiff to a different housing unit"). As noted above, OCJ officials control the conditions of confinement at the facility and have responsibility for ensuring detainees are appropriately housed pursuant to

their individual classification level. *See supra* at 2-3. Accordingly, Plaintiffs cannot establish that any failure to intervene by ICE officials was motivated by Plaintiffs' protected speech.

The same is true with respect to the transfers of Molina and Palacios to other ICE detention facilities. As Plaintiffs allege, the "mass transfer" that took place on July 26, 2022, involved both detainees who had and had not participated in the February hunger strike. *See* Compl. ¶¶ 105, 118. The fact that detainees who had not engaged in any protected activity were part of the group that was transferred to other ICE facilities supports the inference that such transfers were *not* motivated by Plaintiffs' protected activity. Indeed, Molina and Palacios offer no specific and detailed allegations that would support the inference that ICE transferred them from OCJ because of their participation in the hunger strike five months prior. *Id.* ¶¶ 117-136; *cf. Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (passage of six months between the protected activity and alleged retaliatory action was not too long where plaintiff plausibly alleged "officers waited to exact their retaliation at an opportune time").

Plaintiffs' conclusory allegations that ICE coordinated with OCJ officials to "punish the hunger strikers for their speech," Compl. ¶ 88, "collaborated with [OCJ] to silence the plaintiffs," *id.* ¶ 92, and "has long used its vast web of detention centers to transfer people in retaliation for engaging in protected speech or conduct," *id.* ¶ 136, do not suffice to establish causation. *See Crichlow v. Doccs*, No. 18 Civ. 3222 (PMH), 2022 WL 6167135, at *8 (S.D.N.Y. Oct. 7, 2022) ("Simply stating, in conclusory fashion, that [defendants] acted against Plaintiff because he engaged in a protected activity does not establish causation."). Simply put, Plaintiffs have failed to provide specific and detailed factual allegations to support a causal connection between their protected activity and any alleged adverse action taken by the Federal Defendants. Accordingly, Plaintiffs' First Amendment claim against the Federal Defendants should be dismissed.

**CONCLUSION**

For the reasons set forth above, the Court should dismiss Plaintiffs' claims against the

Federal Defendants.

Dated:  New York, New York
        July 7, 2023

                                              Respectfully submitted,

                                              DAMIAN WILLIAMS
                                              United States Attorney for the
                                              Southern District of New York
                                              *Attorney for Defendants*

                              By:     */s/ David E. Farber*_____
                                      DAVID E. FARBER
                                      TARA SCHWARTZ
                                      Assistant United States Attorney
                                      86 Chambers Street, 3rd Floor
                                      New York, New York 10007
                                      Telephone: (212) 637-2772
                                      E-mail: david.farber@usdoj.gov