# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NAHUM GILBERTO ORTIZ; DENNY MOLINA CANTOR; LUCAS PALACIOS ALVARADO; JEREMIAS LOPEZ LOPEZ; ELMER MOSCOSO GUERRA; and LUIS GONZALEZ CARBAJAL, <br><br> Plaintiffs, <br><br> v. <br><br> ORANGE COUNTY, NEW YORK; PAUL ARTETA, Sheriff of Orange County, in his official and individual capacity; CARL DUBOIS, former Sheriff of Orange County, in his individual capacity; KENNETH JONES, former Undersheriff of Orange County, in his individual capacity; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and KENNETH GENALO, Acting ICE Field Office Director, in his official capacity, <br><br> Defendants. | Case No. 23-cv-2802 (VLB) |

## PLAINTIFFS' OPPOSITION TO
## FEDERAL DEFENDANTS' MOTION TO DISMISS

NEW YORK CIVIL LIBERTIES UNION FOUNDATION
Amy Belsher
Guadalupe Victoria Aguirre
Antony Gemmell
New York Civil Liberties Foundation
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300
abelsher@nyclu.org

THE BRONX DEFENDERS
Niji Jain
The Bronx Defenders
360 E. 161st Street
Bronx, N.Y. 10451
Tel: (718) 838-7878
njain@bronxdefenders.org

CENTER FOR CONSTITUTIONAL RIGHTS
Samah Sisay
Astha Sharma Pokharel
Baher Azmy
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, N.Y. 10007
Tel: 212-614-6484
ssisay@ccrjustice.org

CENTER FOR CONSTITUTIONAL RIGHTS
Caitlin J. Sandley
Center for Constitutional Rights
P.O. Box 486
Birmingham, A.L. 35201
Tel: 212-614-6443
csandley@ccrjustice.org

Dated: August 7, 2023
        New York, N.Y.

*Counsel for Plaintiffs*

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ................................................................................. 1

STANDARDS.......................................................................................................... 2

ARGUMENT .......................................................................................................... 3

    I.    THE IMMIGRATION AND NATIONALITY ACT DOES NOT STRIP THIS COURT OF JURISDICTION TO REVIEW THE FEDERAL DEFENDANTS' RETALIATORY AND UNLAWFUL TRANSFERS OF PLAINTIFFS MOLINA AND PALACIOS. ........................ 3

        A.  8 U.S.C § 1231(g)(1) Does Not "Specify" That Federal Defendants Have Unreviewable Discretion to Transfer People. ...................................................................................... 4

        B.  The Federal Defendants Do Not Have Discretion to Violate the Constitution or Their Own Policies. ...................................................................................................... 8

    II.    PLAINTIFFS MOLINA AND PALACIOS'S CLAIMS ARE NOT BARRED BY SOVEREIGN IMMUNITY. ...................................................................................... 11

    III.    THE PLAINTIFFS HAVE ADEQUATELY PLED FIRST AMENDMENT RETALIATION CLAIMS AGAINST THE FEDERAL DEFENDANTS. ............................ 12

        A.  The Complaint Adequately Alleges the Federal Defendants Took Adverse Action Against the Plaintiffs............................................................................................ 14

        B.  The Complaint Adequately Alleges that the Plaintiffs' Transfers Were Causally Connected to Their Protected Conduct. ................................................................... 20

CONCLUSION...................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Cases**..................................................................................................................Page(s)

*Abdi v. Duke*, 280 F. Supp. 3d 373 (W.D.N.Y. 2017) ...................................................11

*Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1 (1st Cir. 2007) ................................................................................................................5, 6

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011) ......................2

*Anderson v. Branen*, 17 F.3d 552 (2d Cir. 1994)..............................................15, 16, 18

*Arroyo v. United States Dep't of Homeland Sec.*, No. 19-CV-815, 2019 WL 2912848 (C.D. Cal. June 20, 2019)......................................................................................................12

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ....................................................................2, 13

*Avramenkov v. I.N.S.*, 99 F. Supp. 2d 210 (D. Conn. 2000) .........................................9

*Bennett v. Goord*, 343 F.3d 133 (2d Cir. 2003) ..........................................................20

*Boehner v. City of Rochester*, 609 F. Supp. 3d. 220 (W.D.N.Y. 2022).......................15

*Calderon v. Sessions*, 330 F. Supp. 3d 944 (S.D.N.Y. 2018) .......................................7

*Calla-Collado v. Att'y Gen. of the U.S.*, 663 F.3d 680 (3d Cir. 2011) ..........................7

*Campbell v. City of Yonkers*, No. 19-CV-2117, 2020 WL 5548784 (S.D.N.Y. Sept. 16, 2020) ......................................................................................................................16, 19

*Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995)*, abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609 (2d Cir. 2020) ...........................................................20

*Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434 (9th Cir.), *amended*, 807 F.2d 769 (9th Cir. 1986) ................................................................................................................9

*Damus v. Nielsen*, 313 F. Supp. 3d 317 (D.D.C. 2018)..............................................11

*Davis v. Goord*, 320 F.3d 346 (2d Cir. 2003) .............................................................13

*Davis v. Kelly*, 160 F.3d 917 (2d Cir. 1998)...............................................................22

*Delgado v. Quarantillo*, 643 F.3d 52 (2d Cir. 2011) .......................................................8

*Dolan v. Connolly*, 794 F.3d 290 (2d Cir. 2015) ...........................................................13

*Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86 (2d Cir. 2019) ..............................2

*Eckhaus v. City of New York*, No. 18 Civ. 6901, 2023 WL 3179506 (E.D.N.Y. May 1, 2023)....18

*Espinal v. Goord*, 558 F.3d 119 (2d Cir. 2009) ......................................................22, 23

*Fed. Defs. of N.Y. v. Fed. Bureau of Prisons*, 954 F.3d 118 (2d Cir. 2020)...........10, 12

*Ferguson v. City of New York*, No. 17-CV-4090, 2018 WL 3626427 (E.D.N.Y. July 30, 2018) .........................................................................................................................15

*Ford v. Deacon*, 793 F. App'x 13 (2d Cir. 2019) .........................................................23

*Freedom for Immigrants v. U.S. Dep't of Homeland Sec.*, No. 19-CV-10424, 2020 WL 2095787 (C.D. Cal. Feb. 11, 2020)........................................................................13

*Gandarillas–Zambrana v. B.I.A.*, 44 F.3d 1251 (4th Cir. 1995) ....................................5

*Gayle v. Gonyea*, 313 F.3d 677 (2d Cir. 2002)......................................................20, 23

*Geo Grp., Inc. v. Newsom*, 50 F.4th 745 (9th Cir. 2022).................................................5

*Gill v. Pidlypchak*, 389 F.3d 379 (2d Cir. 2004).........................................................13

*Gorman–Bakos v. Cornell Coop. Extension,* 252 F.3d 545 (2d Cir. 2001) ...................22

*Green v. Napolitano*, 627 F.3d 134 (10th Cir. 2010).....................................................8

*Gualandi v. Adams*, 385 F.3d 236 (2d Cir. 2004)..........................................................8

*Guangzu Zheng v. Decker*, No. 14-CV-4663, 2014 WL 7190993 (S.D.N.Y. Dec. 12, 2014), *aff'd*, 618 F. App'x 26 (2d Cir. 2015)..............................................................10

*Hamdan v. Gonzales*, 425 F.3d 1051 (7th Cir. 2005) .....................................................8

*Hayes v. Dahlke*, 976 F.3d 259 (2d Cir. 2020) .............................................................22

*I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26 (1996) ...........................................................12

*Kucana v. Holder*, 558 U.S. 233 (2010) .......................................................................4

*Lehal v. Cent. Falls. Det. Facility Corp.*, No 13-CV-3923, 2019 WL 1447261 (S.D.N.Y. Mar. 19, 2019) .......................................................................................................16, 18

*Mitchell v. Orsino*, No. 09-CV-7029, 2009 WL 2474709 (S.D.N.Y. Aug. 13, 2009)....................7

*Monestime v. Reilly*, 704 F. Supp. 2d 453 (S.D.N.Y. 2010) ............................................7

*Montilla v. I.N.S.*, 926 F.2d 162 (2d Cir. 1991) .......................................................10, 12

*Myers & Myers, Inc. v. U. S. Postal Serv.*, 527 F.2d 1252 (2d Cir. 1975) .....................8

*Nethagani v. Mukasey*, 532 F.3d 150 (2d Cir. 2008) .................................................4, 6

*O'Neill v. Krzeminski*, 839 F.2d 9 (2d Cir. 1988) .........................................................18

*Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204 (4th Cir. 2019)............................5

*Ruiz v. Mukasey*, 552 F.3d 269 (2d Cir.2009) ...............................................................8

*Salazar v. Dubois*, No. 17-CV-2186, 2017 WL 4045304 (S.D.N.Y. Sept. 11, 2017) ....................9

*Shabaj v. Holder*, 718 F.3d 48 (2d Cir. 2013) ...............................................................8

*Sharkey v. Quarantillo*, 541 F.3d 75 (2d Cir. 2008) ....................................................11

*Sinclair v. Atty. Gen. of U.S.*, 198 F. App'x 218 (3d Cir. 2006)....................................7

*Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87 (2d Cir. 2001)..........................23

*Spencer Enters., Inc. v. United States*, 345 F.3d 683 (9th Cir. 2003) ..............................6

*Swinson v. City of New York*, 19-CV-11919, 2022 WL 142407 (S.D.N.Y. Jan. 14, 2022)...........23

*Tao Luo v. Keisler*, 521 F. Supp. 2d 72 (D.D.C. 2007) .................................................3

*Thomas v. Waugh*, No. 13-CV-321, 2015 WL 5750945 (N.D.N.Y. Sept. 30, 2015) ...................23

*Van Dinh v. Reno*, 197 F.3d 427 (10th Cir. 1999)..................................................5, 6, 9

*Velesaca v. Decker*, 458 F. Supp. 3d 224 (S.D.N.Y. 2020)..........................................10

*Williams v. Muller,* 98-CV-5204, 2001 WL 936297 (S.D.N.Y. Aug. 17, 2001)..........................20

*Wood v. United States*, 175 F. App'x 419 (2d Cir. 2006)................................................6

*Wong v. United States*, 373 F.3d 952 (9th Cir. 2004)................................................8

*Zadvydas v. Davis*, 533 U.S. 678 (2001) ................................................13

*Zhang v. Slattery*, 840 F. Supp. 292 (S.D.N.Y. 1994) ................................................11

*Zhao v. Gonzales*, 404 F.3d 295 (5th Cir. 2005)................................................6

**Statutes, Rules and Regulations**

5 U.S.C. § 701(a) ................................................11

5 U.S.C. § 702 ................................................11

5 U.S.C. § 706(2)(A) ................................................12

6 U.S.C. § 271(b)(5) ................................................3

6 U.S.C. § 557 ................................................3

8 U.S.C. § 1157(c)(1) ................................................5

8 U.S.C. § 1231(g)(1) ................................................3

8 U.S.C. § 1252(a)(1) ................................................7

8 U.S.C. § 1252(a)(2)(B)(ii) ................................................3, 4

8 U.S.C. § 1252(a)(5)................................................7, 8

## PRELIMINARY STATEMENT

The plaintiffs—six noncitizens previously or currently incarcerated on behalf of ICE at the Orange County Jail—initiated this civil rights action after the defendants repeatedly retaliated against them in response to their sustained advocacy about the inhumane conditions of their confinement. In a collective effort to alert the public to the racist and abusive treatment they received during the many months that they were detained at the jail, the plaintiffs submitted formal and informal grievances, including multiple administrative complaints to the Defendant Department of Homeland Security ("DHS"), provided New York City Council testimony, spoke with media, and engaged in a multi-day hunger strike. In response, jail officials, in close coordination with ICE, attempted to silence the plaintiffs, assigning them disciplinary segregation, preventing them from communicating with others inside and outside the jail, and, when those measures failed to stop the plaintiffs' advocacy, transferring some of the plaintiffs to a disciplinary segregation unit and the others to facilities hundreds of miles from their families and attorneys in the southern United States.

After knowingly participating in these retaliatory acts against people detained in their custody, the federal defendants in this case, ICE and DHS[1], now seek to avoid responsibility for these harms. First, the federal defendants move to dismiss Plaintiffs Molina and Palacios's claims that their transfer to the South was unlawful on the theory that ICE has unfettered discretion to transfer people in their custody, even when those transfers violate the Constitution and the agency's own policies. But no statute affords the defendants the discretion to violate the plaintiffs' rights.

---

[1] The other defendants—Orange County and the current and former sheriffs and former undersheriff of the Orange County Jail —did not move to dismiss. And even if this Court is persuaded by the arguments raised in the federal defendants' motion, none affect the plaintiffs' claims against these county defendants.

On the merits of the plaintiffs' First Amendment claims, the federal defendants first deny that the plaintiffs have alleged ICE's participation in any adverse actions, disregarding their responsibility to the people in their custody and misconstruing the critical role ICE officials played in attempting to silence the plaintiffs. Next, the federal defendants overlook several critical facts alleged in the Complaint in an effort to deny the presence of a causal connection between the plaintiffs' protected speech and conduct and those adverse acts. The Complaint adequately alleges that the federal defendants were not only responsible for multiple adverse actions against the plaintiffs but also were motivated to engage in those actions as a result of the plaintiffs' highly publicized and sustained advocacy. Accordingly, there is no basis for the Court to dismiss the plaintiffs' claims.

## STANDARDS

The federal defendants move to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). In resolving a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), this court must accept all uncontroverted facts in the complaint as true and draw all reasonable inferences in favor of the party asserting jurisdiction. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011).

Similarly, to "survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Eastman Kodak Co. v. Henry Bath LLC*, 936 F.3d 86, 93 (2d Cir. 2019) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "In assessing . . . motions to dismiss complaints for failure to state a claim, it is a court's obligation to . . . interpret the allegations in the light most favorable to the plaintiffs, drawing reasonable inferences in their favor." *Id*. The parties do not have material disagreements on the facts at issue here, *see* Defs' Br. 2-6, but, as detailed herein, primarily disagree on the inferences this Court may plausibly draw from those facts.

**ARGUMENT**

**I.    THE IMMIGRATION AND NATIONALITY ACT DOES NOT STRIP THIS COURT OF JURISDICTION TO REVIEW THE FEDERAL DEFENDANTS' RETALIATORY AND UNLAWFUL TRANSFERS OF PLAINTIFFS MOLINA AND PALACIOS.**

Relying on two provisions of the Immigration and Nationality Act ("INA"), the federal defendants claim unreviewable discretion to punish detained immigrants for their First Amendment-protected activity by transferring them to detention centers hundreds of miles away from their counsel and family members, including their minor children. *See* Mem. In Supp. of the Fed. Defs' Mot. to Dismiss ("Defs' Br."), 8-12, ECF No. 39. First, the federal defendants point to Section 1252(a), which strips courts of jurisdiction to review any decision that is "specified" by statute to be in the Attorney General's discretion. *See* 8 U.S.C. § 1252(a)(2)(B)(ii). Second, the federal defendants locate such discretionary authority in a separate provision, Section 1231(g)(1), which provides that the "Attorney General shall arrange for appropriate places of detention" for noncitizens, 8 U.S.C. § 1231(g)(1).[2]  Federal defendants are incorrect. The Court has, as a matter of law, jurisdiction to review the plaintiffs' claims and Section 1231(g)(1) does not grant them the sort of unfettered discretion that Section 1252 requires. Nor could a statute grant the federal defendants such discretion given that their actions are, as the plaintiffs plausibly allege,[3] contrary to the U.S. Constitution and the ICE's own policies.

---

[2] References to "Attorney General" are deemed to include DHS and its subcomponent units to whom relevant authority is delegated. *Tao Luo v. Keisler*, 521 F. Supp. 2d 72, 73 (D.D.C. 2007) (citing 6 U.S.C. §§ 271(b)(5) and 557).

[3] The defendants do not dispute the plaintiffs have plausibly alleged the federal defendants' actions violate the agency's own policies in violation of the *Accardi* doctrine, *see generally* Defs' Br., and the plaintiffs address the defendants' arguments that the First Amendment claim is not plausibly alleged below, *see infra* Section III.

**A.    8 U.S.C § 1231(g)(1) Does Not "Specify" That Federal Defendants Have Unreviewable Discretion to Transfer People.**

The federal defendants claim to derive their authority to transfer Plaintiffs Molina and Palacios in Section 1231(g) of Chapter 8 of the U.S. Code. Defs' Br. at 9. Contrary to Second Circuit guidance, and the weight of Circuit Court authority, the federal defendants urge this Court to adopt a sprawling reading of Sections 1231(g) and 1252(a)(2)(B)(ii) that would strip district courts of jurisdiction to hear any challenge to DHS's and ICE's transfer of noncitizens. Defs' Br. at 9. This Court should reject the federal defendants' argument.

To begin, statutes carry with them a strong presumption in favor of judicial review of agency action—a presumption that can be overcome only by "clear and convincing evidence" of Congress's intent. *Kucana v. Holder*, 558 U.S. 233, 251-52 (2010). Section 1252(a)(2)(B)(ii) strips district courts of jurisdiction to review decisions by DHS, and its subcomponent ICE, when "the authority for" those decisions "is specified" by statute to be in DHS's discretion. 8 U.S.C. § 1252(a)(2)(B)(ii). In interpreting this provision, and in accordance with the presumption favoring judicial review, the Second Circuit has held that "when a statute authorizes the Attorney General to make a determination, but lacks additional language specifically rendering that determination to be within his discretion (e.g., 'in the discretion of the Attorney General,' 'to the satisfaction of the Attorney General,' etc.), the decision is not one that is 'specified . . .  to be in the discretion of the Attorney General. . . .'" *Nethagani v. Mukasey*, 532 F.3d 150, 154-55 (2d Cir. 2008).

The federal defendants urge this Court to locate discretionary transfer authority in Section 1231(g)(1), which states only that DHS "shall arrange for appropriate places of detention for" immigrants in removal proceedings. While the Second Circuit has not decided whether this provision "specifies" discretionary transfer authority, the First and Fourth Circuits have squarely held that it does not. As the Second Circuit did in *Nethagani*, those courts require that, for review

4

to be precluded by Section 1252(a)(2)(B)(ii), the discretionary nature of the authority must be explicitly stated. *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210 (4th Cir. 2019); *Aguilar v. U.S. Immigr. & Customs Enf't Div. of Dep't of Homeland Sec.*, 510 F.3d 1, 20 (1st Cir. 2007). The First Circuit explained that an example of such explicit discretion, not present in Section 1231(g), is plain in a nearby statutory provision, Section 1157(c)(1), *Aguilar*, 510 F.3d at 20, which reads "the Attorney General may, *in the Attorney General's discretion* and pursuant to such regulations as the Attorney General may prescribe, admit any refugee...." 8 U.S.C. § 1157(c)(1) (emphasis added). Because discretion is not explicitly stated in Section 1231(g), Section 1252(a)(2)(B)(ii) does not bar review of transfers. *Aguilar*, 510 F.3d at 20; *Reyna*, 921 F.3d at 209-10.[4]

Additionally, both circuits note that Section 1231(g)(1) is not related to the authority to transfer at all, but rather to "the government's brick and mortar obligations for obtaining facilities in which to detain" noncitizens. *Reyna*, 921 F.3d at 209; *see also Aguilar*, 510 F.3d at 20.[5]

The federal defendants urge the Court instead to adopt a rule announced by the Tenth Circuit in *Van Dinh v. Reno*, Defs.' Br. at 9-11, which barred district court review of ICE's

---

[4] The federal defendants cite to an earlier case, *Gandarillas–Zambrana v. B.I.A.*, 44 F.3d 1251, 1256 (4th Cir. 1995), but the Fourth Circuit has since made clear that in that case it "*implied* the right to transfer" immigrants, "from the authority granted the Attorney General under the predecessor to § 1231(g) to determine the location of detention facilities.... That, of course, does not serve to advance the government's position in seeking to apply § 1252(a)(2)(B)(ii), which requires that discretionary authority be *specified*, i.e., made explicit, in order to be unreviewable." *Reyna*, 921 F.3d at 210 (emphasis in original).

[5] Indeed, in *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 751 (9th Cir. 2022), a case cited by the federal defendants, Defs.' Br. at 9, a private contractor challenged a California law that prevented contractors from running ICE jails, *id*. at 750. This case raised a question about DHS's "brick-and-mortar" authority rather than a question about transfers, and the court simply noted that DHS has the responsibility and discretion to choose places of detention for immigrants. *Id*. at 751.

transfer decisions. 197 F.3d 427, 433 (10th Cir. 1999). But the Tenth Circuit ruling cannot be reconciled with the Second Circuit's holding in *Nethagani*, and several circuits have criticized it as overbroad. *See Aguilar*, 510 F.3d at 20 (*Van Dinh* reflects "a minority view: as other courts have recognized, the plain language of the statute calls [it] into question."); *Zhao v. Gonzales*, 404 F.3d 295, 303 n.6 (5th Cir. 2005) ("*Van Dinh* … misstates the statutory text"); *Spencer Enters., Inc. v. United States*, 345 F.3d 683, 691 (9th Cir. 2003) (finding *Van Dinh*'s reasoning unpersuasive because "the plain language of 1252(a)(2)(B)(ii) requires that discretionary authority be specified by the statute.").

The federal defendants also cite to *Wood v. United States*, 175 F. App'x 419, 420 (2d Cir. 2006), Defs' Br. at 9, an unpublished Second Circuit opinion decided before *Nethagani*. *Wood* does not address this question because the court assumed hypothetical jurisdiction to examine the merits of negligence and Federal Tort Claims Act damages claims brought by a formerly detained immigrant arising from his transfer. 175 F. App'x at 420. The court dismissed the claims on the merits, reasoning that, because the plaintiff could not post bond, the Attorney General had the authority to determine where to detain him and had not acted negligently in doing so. *Id*. The question of discretion thus went to the *merits* of whether the Attorney General's determination was tortious, not to the court's presumptive jurisdiction to entertain the case.

The federal defendants' citations to cases in which district courts in New York have refused to exercise jurisdiction over requests to enjoin transfers are also inapposite. *See* Defs' Br. 10-11. First, to the extent that those cases can be read to hold that Section 1231(g)(1) "specifies" DHS's discretionary authority to transfer immigrants, they should be disregarded as contrary to the Second Circuit's guidance in *Nethagani.* Second, all those cases involve requests to enjoin

*future* transfers pending resolution of petitioners' habeas or other proceedings, not requests to remedy—via injunctive relief—unconstitutional or otherwise unlawful transfers that have already occurred. *Id*. As described in greater detail in section 2 below, this is a meaningful distinction because an unconstitutional or unlawful transfer is not an exercise of discretionary authority. And finally, even on the distinct question addressed by the cases cited by the federal defendants, there is substantial authority in this Circuit to the contrary. *See, e.g., Calderon v. Sessions*, 330 F. Supp. 3d 944, 950 (S.D.N.Y. 2018) (noting prior ruling enjoining ICE from transferring a petitioner pending habeas proceedings); *Monestime v. Reilly*, 704 F. Supp. 2d 453, 459 (S.D.N.Y. 2010) (ordering defendants to keep petitioner within jurisdiction of ICE's New York Field Office pending bond hearing); *Mitchell v. Orsino*, No. 09-CV-7029, 2009 WL 2474709, at *4 (S.D.N.Y. Aug. 13, 2009) (same).[6]

Finally, the federal defendants misunderstand immigration law in arguing that the plaintiffs may only challenge their unlawful transfers via a petition for review filed with an appropriate court of appeals. *See* Defs' Br. at 11-12. A petition for review can only raise "constitutional claims or questions of law" relating to a removal order. 8 U.S.C. § 1252(a)(5). Here, Plaintiffs Molina and Palacios allege their transfers are unlawful because they amount to

---

[6] The federal defendants also cite to two irrelevant Third Circuit cases. Defs' Br. at 9-10. Both cases concerned petitions for review of constitutional claims at the appellate court and did not present the question of whether the district court lacked jurisdiction under Section 1252(a)(2)(B)(ii). *See Calla-Collado v. Att'y Gen. of the U.S.*, 663 F.3d 680, 682 (3d Cir. 2011); *Sinclair v. Atty. Gen. of U.S.*, 198 F. App'x 218, 220 (3d Cir. 2006). In *Calla-Collado v. Att'y Gen. of the U.S.*, the court simply finds that the transfer from New Jersey to Louisiana was not unconstitutional based on the facts of the plaintiff's claim regarding the transfer's impact on his ability to litigate his removal proceedings. 663 F.3d at 685. In *Sinclair*, the court assessed whether exercise of personal jurisdiction over the petitioner in Pennsylvania violated the due process clause because petitioner was a New York resident, ruling that DHS had the authority to exercise jurisdiction over anyone in the United States, and noting in a footnote that DHS also has the authority to detain people. 198 F. App'x at 222, n.3.

unconstitutional retaliation and violate ICE's own policies. Such claims are not properly raised in a petition for review because they do not relate to whether Plaintiffs Molina and Palacios are removable or to the legality of their removal proceedings. *See* 8 U.S.C. § 1252(a)(1), (a)(5), (b)(4); *Delgado v. Quarantillo*, 643 F.3d 52, 55 (2d Cir. 2011) ("a suit brought against immigration authorities is not *per se* a challenge to a removal order; whether the district court has jurisdiction will turn on the substance of the relief that a plaintiff is seeking."); *Ruiz v. Mukasey*, 552 F.3d 269 (2d Cir.2009) (holding that § 1252(a)(5) "do[es] not preclude a district court from exercising jurisdiction over an action seeking review of the denial of an I–130 petition [for classification of a noncitizen as an immediate relative of a U.S. citizen] because such a denial is unrelated to any removal action or proceeding"). None of the cases the federal defendants cite suggest Plaintiffs Molina and Palacios's transfer claims can be raised in a petition for review. Defs' Br. at 11-12 (citing *Hamdan v. Gonzales*, 425 F.3d 1051 (7th Cir. 2005); *Shabaj v. Holder*, 718 F.3d 48 (2d Cir. 2013); *Green v. Napolitano*, 627 F.3d 134 (10th Cir. 2010)).

### B.    The Federal Defendants Do Not Have Discretion to Violate the Constitution or Their Own Policies.

Even if this Court accepts—contrary to Second Circuit precedent—that Section 1231(g) "specifies" DHS's authority to transfer noncitizens, the statute should not be read as stripping courts of jurisdiction to hear constitutional or *Accardi* challenges to transfer decisions.[7]

---

[7] To the extent the Court finds that the jurisdictional question is not resolved as a matter of law or on the pleadings, and instead turns on a factual question such as whether the federal defendants acted in violation of the Constitution and/or ICE policy, plaintiffs should "be given an opportunity to conduct discovery on these jurisdictional facts," especially since "the facts for which discovery is sought, are peculiarly within the knowledge of the opposing party." *Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004).

"Federal official[s] cannot have the discretion to behave unconstitutionally or outside of the scope of their delegated authority." *Myers & Myers, Inc. v. U. S. Postal Serv.*, 527 F.2d 1252, 1261 (2d Cir. 1975); *see also Wong v. United States*, 373 F.3d 952, 963 (9th Cir. 2004) ("decisions that violate the constitution cannot be 'discretionary'" and are therefore not barred from review under § 1252(a)(2)(B)(ii)). Plaintiffs Molina and Palacios have set forth allegations that the Court must at this stage accept as true and which, as argued below, plausibly state that the defendants transferred them in retaliation for their First Amendment-protected activity. This Court can examine whether ICE transferred the plaintiffs in violation of the First Amendment without opining on the propriety of transfers motivated by other, permissible reasons.

The cases cited by the federal defendants only support plaintiffs' argument that claims related to unconstitutional transfers are not subject to permissible discretion and thus cannot be barred by Section 1252(a)(2)(B)(ii). *See Van Dinh*, 197 F.3d at 435 (declining to address petitioner's "argument that § 1252(a)(2)(B)(ii) … does not apply to bar review when constitutional due process issues…have been raised" because petitioner challenged future transfers and did "not allege that an actual or continuing constitutional violation had occurred"); *Comm. of Cent. Am. Refugees v. I.N.S.*, 795 F.2d 1434, 1441 (9th Cir.), *amended*, 807 F.2d 769 (9th Cir. 1986) (only "in the absence of any evidence of a violation of due process or the statutory privilege to be represented by retained counsel" did "prudential considerations" preclude court "from exercising its jurisdiction"); *Salazar v. Dubois*, No. 17-CV-2186, 2017 WL 4045304, at *1 (S.D.N.Y. Sept. 11, 2017) ("[W]ithout a showing that a transfer would infringe on Salazar's constitutional rights, this Court does not have authority to issue an order to change or keep Salazar at any particular location."); *Avramenkov v. I.N.S.*, 99 F. Supp. 2d 210, 214 (D. Conn. 2000) (noting exception to jurisdiction-stripping provision when interference with existing

9

attorney-client relationship or constitutional violation is shown); *Guangzu Zheng v. Decker*, No. 14-CV-4663, 2014 WL 7190993, at *16 n.31 (S.D.N.Y. Dec. 12, 2014) (declining to address whether jurisdiction-stripping provision applies when transfer violates "the Constitution or other laws in extreme cases"), *aff'd*, 618 F. App'x 26 (2d Cir. 2015).

An agency's discretion is similarly cabined, as a matter of law, by its own policy pronouncements. *See Fed. Defs. of N.Y. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020). Thus, once an agency has constrained its discretion over its decision-making authority through regulations, including internal policies and directives, a court has the power to review whether it followed those regulations, even if it cannot at the outset weigh the merits of the discretionary decision, and even if the policies are "more rigorous than otherwise be required." *Montilla v. I.N.S.*, 926 F.2d 162, 167, 169 (2d Cir. 1991); *Velesaca v. Decker*, 458 F. Supp. 3d 224, 236 (S.D.N.Y. 2020). The federal defendants do not dispute that Plaintiffs Palacios and Molina have plausibly alleged that ICE transferred them far away from their attorneys of record and their immediate families, including their minor children, in violation of internal policies. *See* Compl. ¶¶ 125–28, 132, ECF No. 7 ("Compl.").

To review this claim, this Court will have to examine whether, pursuant to ICE Policy 11022.1, ICE conducted a review to determine that: Plaintiffs Molina and Palacios's transfers were "necessary" for one of seven enumerated reasons; the Assistant Field Office Director approved the transfer; the plaintiffs' counsel were notified of the reasons for the transfers within 24 hours, and the reason for the transfer was noted in their files. The plaintiffs' claim under ICE Directive 11064.3 further requires consideration of whether ICE made a determination that Plaintiffs Molina and Palacios were covered by the policy; whether a "Parental Interests Coordinator" was assigned to provide guidance on "initial placements and transfer decisions";

and whether ICE determined that keeping Plaintiffs Molina and Palacios in the New York area, where they have immediate family, was "impracticable," or that transfer was "legally required" or "dictated by exceptional circumstances." *Id.* This analysis does not require the Court to examine the merits of the transfer decision. If the Court finds these requirements are not met, the Court can and should set aside the transfer decision. At that point, the transfer decision would not be "specified to be in the discretion of the attorney general," because it would have been "not performed in accordance with" policy. *Sharkey v. Quarantillo*, 541 F.3d 75, 86 (2d Cir. 2008) (holding that, although agency had discretion over whether to grant or deny permanent status, Section 1252(a)(2)(B)(ii) did not bar review of petitioner's claim that status was improperly revoked because agency did not follow rescission procedures required by regulation). This is true even if the relevant policy is an internal policy document or directive. *See Abdi v. Duke*, 280 F. Supp. 3d 373, 384-85 (W.D.N.Y. 2017) (applying *Sharkey* analysis to an *Accardi* claim based on ICE's failure to follow its own parole directive), *order clarified sub nom. Abdi v. Nielsen*, 287 F. Supp. 3d 327 (W.D.N.Y. 2018), *and enforcement granted in part sub nom. Abdi v. McAleenan*, No. 1:17-CV-00721, 2019 WL 1915306 (W.D.N.Y. Apr. 30, 2019), *and vacated in part on other grounds sub nom. Abdi v. McAleenan*, 405 F. Supp. 3d 467 (W.D.N.Y. 2019); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 327 (D.D.C. 2018) (same); *see also Zhang v. Slattery*, 840 F. Supp. 292, 295-96 (S.D.N.Y. 1994) (rebuking ICE's predecessor for not following internal parole directive).

## II.    PLAINTIFFS MOLINA AND PALACIOS'S CLAIMS ARE NOT BARRED BY SOVEREIGN IMMUNITY.

The federal defendants next argue, relatedly, that the Administrative Procedure Act's ("APA") waiver of sovereign immunity does not apply here because ICE's decision to transfer the plaintiffs is precluded from judicial review and committed to agency discretion by law. Defs'

Br. at 12. As described above, Section 1231(g) does not preclude or commit transfer decisions to DHS's unreviewable discretion by law under the APA. 5 U.S.C. §§ 701(a), 702.

Even if this Court rules that Section 1231(g) does confer DHS some discretionary authority over transfers, its adoption of an internal policy guiding that discretion provides an additional basis for APA review. When an agency's discretion is unfettered at the outset, "if it announces and follows—by rule or by settled course of adjudication—a general policy by which its exercise of discretion will be governed, an irrational departure from that policy … could constitute action that must be overturned as 'arbitrary, capricious, [or] an abuse of discretion' within the meaning of the Administrative Procedure Act...." *I.N.S. v. Yueh-Shaio Yang*, 519 U.S. 26, 32 (1996) (quoting 5 U.S.C. § 706(2)(A)); *see also Montilla v. I.N.S.*, 926 F.2d at 167 (noting that *Accardi*'s "ambit is not limited to rules attaining the status of formal regulations"); *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons,* 954 F.3d 118, 130 (2d Cir. 2020) (finding "government agencies are generally required to follow their own regulations" and when they fail to do so, the APA "gives aggrieved parties a cause of action to enforce compliance"). Because ICE has enacted at least two policies governing its transfer decisions, which both impact Plaintiffs Molina and Palacios's attorney-client relationships and familial relationships, the APA's waiver of sovereign immunity applies. *See Arroyo v. United States Dep't of Homeland Sec.*, No. 19-CV-815, 2019 WL 2912848, at *21 (C.D. Cal. June 20, 2019) ("[I]f ICE were to transfer class members outside the [Area of Responsibility] without first complying with ICE Policy 11022.1, such a transfer would be arbitrary and capricious." (emphasis removed)).

### III.    THE PLAINTIFFS HAVE ADEQUATELY PLED FIRST AMENDMENT RETALIATION CLAIMS AGAINST THE FEDERAL DEFENDANTS.

The federal defendants next argue the plaintiffs have failed to adequately plead First Amendment retaliation claims against them. The parties agree that to bring a retaliation claim

under the First Amendment, the plaintiffs must demonstrate: "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." Defs' Br. 13 (quoting *Gill v. Pidlypchak*, 389 F.3d 379, 380 (2d Cir. 2004)).[8]

The federal defendants do not dispute the adequacy of the plaintiffs' allegations that: (1) the plaintiffs engaged in speech and conduct protected by the First Amendment; (2) certain disciplinary measures taken during and following the hunger strike constitute adverse actions; (3) the adverse actions taken during the hunger strike were causally related to the plaintiffs' protected speech and conduct; or (4) the federal defendants are responsible for transferring Plaintiffs Molina and Palacios to detention centers in the South. Instead, the federal defendants argue only that the Complaint fails to allege that: (A) the federal defendants—as opposed to the county defendants—are responsible for certain adverse actions against the plaintiffs; and (B) a causal connection exists between the plaintiffs' protected speech and their transfers. Defs' Br. 13–20. Both arguments fail for the reasons discussed below.

---

[8] The federal defendants elsewhere suggest this Court should approach the plaintiffs' retaliation claims with "skepticism and particular care." (Defs' Br. at 13-14 (quoting *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003)). However, in explaining this standard the Second Circuit notes only that the plaintiff is required to plead specific and detailed factual allegations not stated in wholly conclusory terms—the same standard applied to all motions to dismiss. *See Dolan v. Connolly*, 794 F.3d 290, 295 (2d Cir. 2015); *see also Iqbal*, 556 U.S. at 678-79. The plaintiffs have met that standard here. Moreover, to the extent a heightened standard applies uniquely to First Amendment retaliation claims brought by people incarcerated for criminal offenses, the federal defendants have provided no justification for why it should apply to the *civil* immigration detention at issue here. And it should not. *See Freedom for Immigrants v. U.S. Dep't of Homeland Sec.*, No. 19-CV-10424, 2020 WL 2095787, at *3 n.2 (C.D. Cal. Feb. 11, 2020) ("[T]he Court rejects DHS's argument that the standard for First Amendment retaliation claims within the prison context applies here [in the context of immigration detention].") (citing *Zadvydas v. Davis*, 533 U.S. 678, 679 (2001)).

**A. The Complaint Adequately Alleges the Federal Defendants Took Adverse Action Against the Plaintiffs.**

The federal defendants first dispute whether the Complaint alleges the federal defendants—as opposed to the county defendants—took adverse action against the plaintiffs. To start, the plaintiffs adequately allege, and the federal defendants appear to concede,[9] that ICE officials were directly responsible for the out-of-state transfers of Plaintiffs Molina and Palacios. *See* Compl. ¶ 120. Thus, the only question before the Court is whether the plaintiffs have adequately alleged the federal defendants' involvement in adverse actions taken while the plaintiffs were detained at the Orange County Jail ("OCJ") during and following their hunger strike.[10] These adverse actions include the assignment of the plaintiffs to segregated confinement during the hunger strike, Compl. ¶ 77; the interference with the plaintiffs' ability to communicate with others inside and outside the jail, including their lawyers, during the hunger strike, *id.* ¶¶ 77–80; the disciplinary citations resulting in seven days in segregated confinement immediately following the strike, *id.* ¶ 81; and the later transfer of Plaintiffs Ortiz, Lopez, and Moscoso to a punitive segregation unit at OCJ, *id.* ¶¶ 105-16. The federal defendants do not dispute that these punitive responses to the plaintiffs' peaceful hunger strike constituted adverse action for purposes of a retaliation claim. Defs' Br. at 16. They argue only that the plaintiffs have not alleged the federal defendants' involvement in these actions. However, the Complaint contains

---

[9] While the federal defendants cast their argument in broad terms, *see* Defs' Br. 14 ("Plaintiffs fail to adequately allege that the Federal Defendants—as opposed to OCJ staff—took any adverse action against them."), they do not in fact dispute (1) that the transfer of Plaintiffs Molina and Palacios constitutes adverse action, nor (2) that they are responsible, along with the OCJ defendants, for that action, *see id.* at 15-18.

[10] The federal defendants also dispute that the plaintiffs have adequately alleged their involvement in conduct prior to the hunger strike. Defs' Br. at 15. These actions do not form the basis of the plaintiffs' First Amendment claims against the federal defendants.

sufficient, specific facts demonstrating that ICE officials directly participated in—and, at

minimum, failed to intervene to prevent—these retaliatory disciplinary actions.

First, the Complaint adequately alleges facts sufficient to infer that ICE officers were

directly involved in the adverse actions during and immediately following the hunger strike. *See*

Compl. ¶ 82 ("ICE was informed of and approved of these disciplinary actions."); *see also id.* ¶

92 ("ICE also sanctioned the plaintiffs' disciplinary segregation."). ICE officers, summoned to

OCJ to help end the plaintiffs' hunger strike, were onsite, collaborating with OCJ at all relevant

points in time, including during the adverse actions described above. *Id.* ¶¶ 74–84, 92. It is no

coincidence that OCJ began issuing disciplinary citations the same day ICE officers arrived at

the jail to help end the public strike. *See id*. ¶¶ 81–84. And the disciplinary tactics employed to

quell the strike were lifted straight from ICE's playbook for how to end hunger strikes in

immigration detention. *See id.* ¶ 82 (noting ICE's advice to "separate the ringleader" and "break

their numbers," referring to hunger strikes); *id.* ¶ 92 (counting 182 cases of solitary confinement

by ICE in response to hunger strikes).

But even if OCJ took these actions of its own accord, ICE had ample opportunity—and a

duty—to intervene. The parties agree that a defendant's failure to intervene may constitute

adverse action for purposes of a First Amendment retaliation claim. *See* Defs' Br. at 14 (quoting

*Anderson v. Branen*, 17 F.3d 552, 557 (2d Cir. 1994)); *see also Boehner v. City of Rochester*,

609 F. Supp. 3d. 220, 231 (W.D.N.Y. 2022) (declining to dismiss claims against officers alleged

to have failed to intervene in various constitutional violations, including First Amendment

retaliation); *Ferguson v. City of New York*, No. 17-CV-4090, 2018 WL 3626427, at *6–7

(E.D.N.Y. July 30, 2018) (reinstating, on a motion to reconsider, a plaintiff's failure-to-intervene

claim based on a First Amendment retaliation claim). "[I]t is widely recognized that all law

enforcement officials have an affirmative duty to intervene and protect the constitutional rights of [people] from infringement by other law enforcement officers in their presence." *See Campbell v. City of Yonkers*, No. 19-CV-2117, 2020 WL 5548784, at *10 (S.D.N.Y. Sept. 16, 2020) (Briccetti, J.) (quoting *Lehal v. Cent. Falls. Det. Facility Corp.*, No 13-CV-3923, 2019 WL 1447261, at *14 (S.D.N.Y. Mar. 19, 2019) (finding plaintiffs had plausibly alleged failure to intervene theory against federal law enforcement officers present when City of Yonkers law enforcement officers violated the plaintiff's rights)). Here, the plaintiffs' allegations plausibly demonstrate that ICE was aware of OCJ's retaliatory conduct, had "a realistic opportunity to intervene and prevent the harm from occurring" and failed to do so. *Anderson*, 17 F.3d at 557.

        The federal defendants focus much of their argument on the plaintiffs' purported failure to allege that ICE had a "realistic opportunity" to intervene in the adverse acts. Defs' Br. at 16–17. To show a realistic opportunity to intervene, a plaintiff must show the defendant was aware of the violation and had an opportunity to prevent it. *See Anderson*, 17 F.3d at 557. The federal defendants do not meaningfully dispute that the Complaint alleges they were aware of the violations of the plaintiffs' First Amendment rights. ICE's National Detention Standards ("NDS"),[11] which govern ICE detention at OCJ, required OCJ to notify ICE immediately when the hunger strike began, Compl. ¶ 73, and further required OCJ to notify ICE of at least some of the plaintiffs' segregation assignments due to their mental health or medical diagnoses or disabilities, *see* NDS 2.9; *see also* Compl. ¶¶ 23, 31, 37–38, 95. And OCJ plainly did notify ICE: two ICE officers arrived at OCJ on the second day of the strike. These officers were not only present at key moments including "the cell searches, assignment of segregated confinement, and

---

[11] The parties agree that the Court may consider ICE's 2019 National Detention Standards. Defs' Br. at 18 n.6.

suppression of the plaintiffs' ability to communicate outside the jail," *id*. ¶ 82, but were integral to OCJ's attempts to manage and quell the highly publicized strike.

The first of these two ICE officers, Officer Thomas Flynn, is the official ICE liaison tasked with overseeing ICE detention at OCJ. Officer Flynn met with the plaintiffs during the strike about their demands. *Id.* ¶ 74. He was also present when the plaintiffs were subjected to segregated confinement without the ability to communicate through their tablets, *id.* ¶ 77; threatened with further punishment if they did not end the strike, *id.* ¶ 78; and issued disciplinary citations, *id.* ¶¶ 82.

A second ICE Officer, Judith Almodovar, a senior representative from the ICE New York Field Office, also arrived at the jail on the second day of the hunger strike to help Officer Flynn and OCJ end the strike. Indeed, Almodovar spoke and met with the plaintiffs on several occasions during the multi-day hunger strike, at times yelling at the plaintiffs to end the strike[12] and at others attempting to win the plaintiffs over with ultimately empty assurances. *See id.* ¶¶ 83-84. During one of her meetings with the plaintiffs, Almodovar noted her awareness of their inability to communicate through their tablets, specifically promising that the restoration of the plaintiffs' access to the tablets on the condition that they end the hunger strike. *See id.* ¶ 84. Almodovar similarly demonstrated awareness of the disciplinary citations the plaintiffs had just

---

[12] Contrary to the federal defendants' characterizations, the plaintiffs do not contend that Almodovar's anger or yelling constitute adverse action, *see* Defs' Br. at 16; rather, these facts lend support to the plaintiffs' allegations that ICE officials were motivated to end the hunger strike and ensure that the plaintiffs cease their public advocacy efforts, *see* Compl. ¶ 83 ("Almodovar grew angry and suggested that, instead of refusing food altogether, which would be recognized—publicly and embarrassingly—as a hunger strike, the[ plaintiffs] should accept the food and then throw it away.").

received, assigning them seven days of segregated confinement.[13] *See id.* The federal defendants misconstrue the fact that Almodovar negotiated with the hunger strikers as an effort to assist them. *See* Defs' Br. at 16. But Almodavar's assurances accomplished only the end to the strike and did nothing to address the plaintiffs' demands. *See* Compl. ¶¶ 83, 97. In any event, ICE's involvement in these adverse acts was a far cry from "mere presence at the scene," Defs' Br. at 16 (quoting *Eckhaus v. City of New York*, No. 18-CV-6901, 2023 WL 3179506, at *6 (E.D.N.Y. May 1, 2023)).

Given the intensive involvement of ICE Officers Flynn and Almodovar, it is more than plausible to infer that ICE was not only aware of OCJ's retaliatory efforts to end the strike but had several opportunities to prevent it at any point between their arrival on day two of the hunger strike and the end of the plaintiffs' seven-day segregated confinement following the strike. *See Anderson*, 17 F.3d at 557 (finding a federal drug enforcement agent who witnessed other agents assault a plaintiff from a car may be found to have had time or capacity to prevent the harm). This was not a case where the constitutional violation occurred so rapidly that there was no feasible time for an officer to intercede. *See, e.g., O'Neill v. Krzeminski*, 839 F.2d 9, 11-12 (2d Cir. 1988) (rejecting plaintiff's claims of failure to intervene as a matter of law where the alleged excessive force consisted of three rapid blows because the officer "had no realistic opportunity to prevent them"); *Lehal*, 2019 WL 1447261, at *14 (noting courts "look to the length of the incident" and collecting cases).

ICE was similarly aware of—and had ample opportunity to prevent—the plaintiffs' later transfer to the punitive segregation unit at OCJ (the "Delta-1 Unit"). OCJ transferred Plaintiffs

---

[13] It is of little relevance that Almodovar *claimed* that she "could not rescind the disciplinary tickets," *see* Defs' Br. at 16 (citing Compl. ¶ 84), a statement belied by the NDS, Compl. ¶¶ 31, 112.

Ortiz, Lopez, and Moscoso to this unit on this same day, July 26, 2022—during the same early morning hours—as ICE was transferring Plaintiffs Molina and Palacios out of OCJ. Compl. ¶¶ 105, 106, 119. And "OCJ is required to notify ICE of any segregation placement of a detained person lasting 14 or more days." *Id*. ¶ 112. Moreover, ICE Officer Flynn visited the D1 unit shortly after the group was transferred there.[14] *Id*. ¶ 111. ICE has had several months to intervene to rectify this retaliatory placement and, to this day, has failed to do so. *Id*. ¶ 116.

Finally, the federal defendants are incorrect in arguing the plaintiffs have not alleged ICE had the "authority or capability" to intervene in these violations of the plaintiffs' rights. Defs' Br. at 16-18. This argument cannot be reconciled with ICE's extensive involvement in ending the strike and in overseeing OCJ's detention of people in ICE custody more generally. And as this Court has found, law enforcement officials have a duty to intervene in constitutional violations, even when committed by officers from different law-enforcement agencies. *See Campbell*, 2020 WL 5548784, at *10. Moreover, as the NDS recognizes "ICE has important obligations under the U.S. Constitution" to prevent harm and retaliatory conduct by its contracted facility against people detained in its custody. *See* NDS at i; Compl. ¶ 54. In discussing the NDS, Defs' Br. at 3, the federal defendants fail to acknowledge that they have a duty to ensure that OCJ officials do not retaliate against people who lodge complaints while detained in ICE custody at the jail. Compl. ¶ 54. Nor do they recognize ICE's responsibility to oversee lengthy and unwarranted disciplinary segregation. *See id*. ¶ 112. Taken together as true, these facts support reasonable inferences that the federal defendants are responsible for the adverse actions described above.

---

[14] The federal defendants also make much of Officer Flynn's claim that he did not know why the group had been moved to disciplinary segregation. Defs' Br. at 19. Even assuming this representation was true, the plaintiffs adequately allege through the circumstantial evidence discussed below, *infra* Section III.B, that other ICE officials would have been aware of the reason for the transfer and shared OCJ's retaliatory intent.

**B.    The Complaint Adequately Alleges that the Plaintiffs' Transfers Were Causally Connected to Their Protected Conduct.**

The federal defendants next dispute that the plaintiffs have adequately alleged a causal connection between their protected conduct and the inter- and intra-facility transfers of the plaintiffs. Defs' Br. at 18-20. For purposes of First Amendment retaliation, a plaintiff can demonstrate a causal connection through a combination of circumstantial evidence, including the temporal proximity between the protected activity and the alleged retaliatory act. *See, e.g.*, *Gayle v. Gonyea*, 313 F.3d 677, 683 (2d Cir. 2002) (finding that the temporal proximity between a grievance and a misbehavior report served as evidence of retaliation). In addition, courts consider the suspect nature of evidence used to support the adverse act[15] and the defendants' statements regarding their motive for the adverse act.[16]

As an initial matter, it bears repeating that the federal defendants do *not* dispute that the plaintiffs' sustained advocacy about the conditions of their confinement is protected under the First Amendment. The plaintiffs' protected speech and conduct includes the plaintiffs' attempts to file informal and formal grievances with ICE, Compl. ¶¶ 51–52; participation in multiple individual and group complaints with DHS's Office for Civil Rights and Civil Liberties ("CRCL"), *id*. ¶¶ 55–56, 61–67; interviews with the media, *id*. ¶¶ 58, 93; meetings with DHS investigators, *id*. ¶¶ 56, 101; participation in a hunger strike, *id*. ¶¶ 68–84; and testimony to the

---

[15] *See Bennett v. Goord*, 343 F.3d 133, 138-39 (2d Cir. 2003) (finding claim that discipline was retaliatory was supported by fact that all relevant disciplinary actions were later found unjustified); *Gayle*, 313 F.3d at 683 (finding same).

[16] *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995)*, abrogated on other grounds by Tangreti v. Bachmann*, 983 F.3d 609, 615-616 (2d Cir. 2020) ("Colon offers more than circumstantial proof; he also presents direct evidence of retaliation, namely, defendant['s]  alleged admission of the existence of a retaliatory scheme."); *Williams v. Muller*, 98-CV-5204, 2001 WL 936297, at *3 (S.D.N.Y. Aug. 17, 2001) (noting the court may consider "any statements made by the defendant concerning his motivation").

20

New York City Council during a public hearing, *id.* ¶¶ 94–96. This list does not even account for the numerous formal and informal complaints lodged with OCJ, *see id.* ¶¶ 31, 74, of which, given ICE's contractual relationship with the jail and corresponding duty of oversight, the federal defendants were almost certainly aware.

These collective efforts to speak out about conditions in the jail generated media attention and scrutiny from other governmental entities, including the New York Attorney General and the U.S. Attorney's Office. *Id.* ¶¶ 64–66. The federal defendants do not dispute the Complaint adequately alleges they were aware of the plaintiffs' advocacy,[17] which spanned months—from the fall of 2021 to the end of April 2022.[18] *See id.* ¶ 100.

The defendants' coordinated mass transfer of the plaintiffs to a punitive segregation unit within OCJ and to detention centers in the South occurred in July of 2022, just five months after the plaintiffs' hunger strike, the February CRCL complaint, and city council testimony, and a mere three months after Plaintiffs Ortiz and Gonzalez participated in supplemental complaints submitted to DHS's CRCL. *Id.* ¶¶ 99–100. And during those intervening months, the plaintiffs' advocacy continued to cause problems for the defendants; in May 2022, New York City Council Members toured OCJ, voicing concerns about the conditions of confinement for people detained at the jail. *Id.* ¶ 98. It is not surprising that it took the federal defendants several months to effectuate the plaintiffs' transfers given the complexity of transferring people from a local jail in Goshen, New York to a rural detention center in Mississippi. Thus, this temporal proximity is strong circumstantial evidence that the transfers were executed in retaliation for the plaintiffs' protected conduct.

---

[17] *See, e.g.,* Compl. ¶¶ 31, 52, 55, 73–75, 78, 83–84, 89, 94, 99–100.
[18] Plaintiffs Ortiz and Moscoso also visited and registered complaints with visiting investigators from CRLC in the fall of 2022. Compl. ¶ 101.

Overlooking these facts, the federal defendants focus only on the plaintiffs' hunger strike, arguing that the five months that passed between the strike and the transfers is "too long." Defs' Br. at 19. But, even assuming the relevant time period is five months, the Second Circuit has "not drawn a bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship between the exercise of a federal constitutional right and an allegedly retaliatory action," allowing the "Court to exercise its judgment about the permissible inferences that can be drawn from temporal proximity in the context of particular cases." *Espinal v. Goord*, 558 F.3d 119, 129 (2d Cir. 2009) (quoting *Gorman–Bakos v. Cornell Coop. Extension,* 252 F.3d 545, 554 (2d Cir. 2001)); *see also Hayes v. Dahlke*, 976 F.3d 259, 273 (2d Cir. 2020). Indeed, the Second Circuit repeatedly has found lengths of time exceeding five months constitute circumstantial evidence of retaliatory motive. *See, e.g.*, *Espinal*, 558 F.3d at 129 (holding that passage of six months between dismissal of incarcerated plaintiff's prior lawsuit and his allegedly retaliatory beating by officers "is sufficient to support an inference of a causal connection" precluding dismissal of First Amendment claim); *Gorman–Bakos,* 252 F.3d at 555 (holding that five months between the protected action and the retaliation supported an inference of a causal connection); *Davis v. Kelly*, 160 F.3d 917, 922 (2d Cir. 1998) (finding plaintiff raising retaliation claim for transfer that occurred one year after the protected conduct raised colorable claim).

The federal defendants next argue that the plaintiffs cannot rely on temporal proximity alone to prove causation. Defs' Br. at 19. This argument fails in two respects. As an initial matter, the Second Circuit has previously found a six-month gap between protected activity and retaliation alone sufficient to support a causal connection, reversing the district court's finding

that this period of time was "too lengthy."[19] *Espinal*, 558 F.3d at 129 ("[W]e find that the passage of only six months between [protected conduct] and an allegedly retaliatory beating by officers . . . is sufficient to support an inference of a causal connection.").

Moreover, the Complaint contains multiple additional pieces of circumstantial evidence demonstrating the federal defendants' retaliatory intent. First, the fact that the coordinated intra- and inter-facility transfers were executed in the early morning hours of precisely the same day, Compl. ¶¶ 105, 106, 119, is strong circumstantial evidence that these adverse acts were motivated by the same retaliatory intent. In fact, they defy logic as purely administrative acts—the defendants transferred the plaintiffs to a previously unused and unprepared disciplinary unit, *id*. ¶ 106, at the precise moment that a large number of beds were becoming available in other units due to the transfers of others, including other plaintiffs, out of OCJ. And Defendant Jones made the defendants' true motive apparent when he publicly stated the plaintiffs' advocacy about conditions at OCJ would cause ICE to "move them to a different facility" rather than release them or address their concerns. *See id*. ¶ 117; *see Gayle*, 313 F.3d at 684 (finding defendants' statements supported inference of retaliatory intent). Beyond this ominous prediction, neither ICE nor OCJ has explained why the plaintiffs were transferred. *See* Compl. ¶¶ 107, 111, 115, 121. Second, there is the unnecessarily cruel nature of the transfers. Not only were Plaintiffs Molina and Palacios transferred hundreds of miles away from their families, immigration

---

[19] In arguing that the Second Circuit has held otherwise, the federal defendants rely only on unpublished district court cases, *see* Defs' Br. at 18 (first citing *Swinson v. City of New York*, 19-CV-11919, 2022 WL 142407, at *12 (S.D.N.Y. Jan. 14, 2022); and then citing *Thomas v. Waugh*, No. 13-CV-321, 2015 WL 5750945, at *15 (N.D.N.Y. Sept. 30, 2015)). These cases in turn rely respectively on inapposite Second Circuit decisions considering motions for summary judgments, *see Ford v. Deacon*, 793 F. App'x 13, 16 (2d Cir. 2019) (summary order); *Slattery v. Swiss Reinsurance Am. Corp.*, 248 F.3d 87, 95 (2d Cir. 2001) (finding, in the context of retaliatory employment discharge challenge, that the temporal proximity was unpersuasive where disciplinary actions preceded the protected conduct).

counsel, and young children in violation of ICE's own policies, *id*. ¶¶ 125–133, but on the day of

the transfers, the plaintiffs were awoken before dawn, *id.* ¶¶ 106, 119, denied the opportunity to

notify their lawyers and families of the transfer, *see id.* ¶ 118, had all of their belongings thrown

away, and were shackled for over 24 hours with just one opportunity to use a restroom, *id.* ¶ 119.

Plaintiffs Ortiz, Lopez, and Moscoso were similarly awoken in the early morning hours with no

prior notice to them or their attorneys and moved to the disciplinary unit which had plainly not

been cleaned or otherwise prepared for their arrival. *Id.* ¶ 106-110.

Third, while the federal defendants note that some people who did not participate in the

hunger strike were also transferred, Defs' Br. at 20, they do not address the critical fact that

*everyone* who participated in the hunger strike and remained in immigration detention at OCJ in

July was transferred to OCJ's disciplinary segregation unit or the South. Compl. ¶ 106. Fourth,

the plaintiffs' transfers cannot be isolated from the broader pattern of retaliation and harassment

alleged in the Complaint, including the assignment of segregated confinement, cell searches, and

various attempts to prevent the plaintiffs from communicating with the outside world. *See id.* ¶¶

75–93, 102. So too must the transfers be viewed in the context of ICE's well-documented

practice of transferring people in retaliation for engaging in conduct protected under the First

Amendment, including hunger strikes. *Id.* ¶ 136 ("A recent report analyzing over 10,000 pages of

documents revealed ICE and its contractors' routine use of punitive measures and coercive

tactics including, inter alia, retaliatory transfers, to end hunger strikes and quash other types of

protected speech.").[20]  Accordingly, the plaintiffs have plausibly and adequately alleged that the

---

[20] The federal defendants also argue that they cannot have used the transfers to D1 as a form of retaliation because they did not have the authority to effectuate the transfers. Defs' Br. at 19-20. These arguments primarily concern whether the defendants are responsible for the adverse acts and are addressed above. *See supra* Section III.A.

federal defendants' decision to transfer the plaintiffs was motivated by the plaintiffs' protected

speech and conduct.

## **<u>CONCLUSION</u>**

For the reasons stated above, this Court should deny the federal defendants' motion to

dismiss.

Dated: August 7, 2023      NEW YORK CIVIL LIBERTIES UNION
       New York, N.Y.        FOUNDATION

*/s/ Amy Belsher*
AMY BELSHER
GUADALUPE VICTORIA AGUIRRE
ANTONY GEMMELL
New York Civil Liberties Foundation
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300
abelsher@nyclu.org
agemmell@nyclu.org
laguirre@nyclu.org

SAMAH SISAY
ASTHA SHARMA POKHAREL
BAHER AZMY
Center for Constitutional Rights
666 Broadway, 7th Floor
New York, N.Y. 10007
Tel: 212-614-6484
ssisay@ccrjustice.org
asharmapokharel@ccrjustice.org
bazmy@ccrjustice.org

CAITLIN J. SANDLEY
Center for Constitutional Rights
P.O. Box 486
Birmingham, A.L. 35201
Tel: 212-614-6443
csandley@ccrjustice.org

NIJI JAIN
The Bronx Defenders
360 E. 161st Street
Bronx, N.Y. 10451
Tel: (718) 838-7878
njain@bronxdefenders.org

*Counsel for Plaintiffs*