```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
NAHUM GILBERTO ORTIZ; DENNY              :
MOLINA CANTOR; LUCAS PALACIOS            :
ALVARADO; JEREMIAS LOPEZ LOPEZ;          :
ELMER MOSCOSO GUERRA; and LUIS           :
GONZALEZ CARBAJAL,                       :
                     Plaintiffs,         :
                                         :
v.                                       :
                                         :          OPINION AND ORDER
ORANGE COUNTY, NEW YORK; PAUL            :
ARTETA, in his individual and official   :          23 CV 2802 (VB)
capacities; CARL DUBOIS, in his individual :
capacity; KENNETH JONES, in his individual :
capacity; U.S. DEPARTMENT OF             :
HOMELAND SECURITY; U.S.                  :
IMMIGRATION AND CUSTOMS                  :
ENFORCEMENT; and KENNETH GENALO,         :
in his official capacity,                :
                     Defendants.         :
--------------------------------------------------------------x
```

Briccetti, J.:

Plaintiffs Nahum Gilberto Ortiz, Denny Molina Cantor, Lucas Palacios Alvarado, Jeremias Lopez Lopez, Elmer Moscoso Guerra, and Luis Gonzalez Carbajal, all individuals who are or were civil immigration detainees at the Orange County Jail in Goshen, New York ("OCJ"), bring this Section 1983 action against defendants Orange County, New York; Paul Arteta, Sheriff of Orange County; Carl Dubois, former Sheriff of Orange County; and Kenneth Jones, former Undersheriff of Orange County (together, the "Orange County Defendants"); as well as against the U.S. Department of Homeland Security ("DHS"); U.S. Immigration and Customs Enforcement ("ICE"); and Kenneth Genalo, Acting ICE Field Office Director (together with DHS and ICE, the "Federal Defendants").

Plaintiffs bring First Amendment claims, principally alleging defendants retaliated against them for complaining about poor conditions in immigration detention facilities.

1

Now pending is plaintiffs' motion for leave to amend and supplement the complaint pursuant to Rules 15(a) and 15(d).  (Doc. #65).

For the reasons set forth below, the motion is GRANTED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3).

## BACKGROUND

The Court assumes the parties' familiarity with the factual and procedural background of this case and summarizes only those facts relevant to the pending motion.

I.      The Complaint

Plaintiffs allege Orange County contracts with ICE to house civil detainees at OCJ while they await the outcome of their immigration proceedings.  Plaintiffs are six individuals who are or were civilly detained at OCJ under the ICE contract.  According to plaintiffs, although the Orange County Sheriff directly controls the conditions at OCJ, ICE is responsible for ensuring OCJ complies with ICE's minimum detention standards for contracting facilities.  Among other things, ICE's detention standards forbid disciplinary retaliation for lodging complaints.

Beginning in 2021, plaintiffs and other immigration detainees complained internally and to the public about the conditions at OCJ.  In February 2022, plaintiffs allege they participated in a group complaint submitted to DHS's Office for Civil Rights and Civil Liberties ("CRCL") regarding misconduct at OCJ, including the use of retaliatory violence and disciplinary segregation against detainees who registered formal and informal complaints.  Commencing on February 16, 2022, plaintiffs allege they and dozens of others detained at OCJ participated in a multiday hunger strike to convince ICE and OCJ to address the conditions and mistreatment they had experienced at OCJ.  Plaintiffs allege OCJ notified ICE of the hunger strike that day.

During the strike, OCJ guards allegedly retaliated against plaintiffs and other hunger strikers.  Plaintiffs allege OCJ guards placed hunger strikers in segregated confinement; conducted mass searches of their cells, confiscating and discarding food and personal items; prevented the hunger strikers from using jail-provided tablets to communicate with their attorneys; and issued them disciplinary citations for engaging in group demonstrations.  Plaintiffs allege ICE was informed of and approved of these disciplinary actions, and that an ICE official was present during the strike and for OCJ's retaliatory actions.

On February 18, 2022, plaintiffs met with ICE Director Judith Almodovar, who allegedly assured them the strikers' demands would be addressed if they ended the strike.  Later that day, according to plaintiffs, Almodovar held a meeting with hunger strikers, telling them she could not rescind the disciplinary tickets, but she would address their other demands if they ended the strike.  Based on these assurances, plaintiffs allege the hunger strikers decided to end the strike.

On July 26, 2022, ICE allegedly transferred Molina, Palacios, and other hunger strike participants to a detention center in Natchez, Mississippi.  On March 16, 2023, ICE allegedly transferred Molina and Palacios from Mississippi to a detention center in Louisiana.  Plaintiffs allege these transfers violated ICE policies and were executed in retaliation for plaintiffs exercising their First Amendment rights to protest and complain about the substandard conditions at OCJ.  Plaintiffs also allege the contract between ICE and OCJ requires ICE to provide express authorization for the transfer of any person detained pursuant to its contract with OCJ.[1]

By Opinion and Order dated January 10, 2024, the Court denied the Federal Defendants' motion to dismiss the initial complaint pursuant to Rules 12(b)(1) and 12(b)(6).  (Doc. #53).  The

---

[1] Plaintiffs did not attach to the complaint the contract between ICE and OCJ.

Court held it has jurisdiction to hear plaintiffs' claims concerning transfers to out-of-state facilities, notwithstanding Section 1252(a)(2)(B) of the Immigration and Nationality Act, and that plaintiffs had adequately alleged a claim for retaliation under the First Amendment.

II.  Subsequent Events and Proposed Amended Complaint

Around December 21, 2023, ICE transferred Molina from Louisiana to the Buffalo (Batavia) Service Processing Center, an ICE detention facility in Batavia, New York ("Batavia"). On February 2, 2024, plaintiffs and the Federal Defendants filed a stipulation in which they agreed (i) ICE had "no plans" to transfer Molina to another facility, (ii) ICE would not transfer Molina back to OCJ, and therefore (iii) Molina's request for an injunction ordering his transfer back to the New York City area, but not OCJ, was moot. (Id. at ¶¶ 3–4).[2] On February 5, 2024, the Court so ordered the stipulation. (Doc. #58).

On March 21, 2024, plaintiffs moved for leave to file a first amended complaint. (Doc. #65). The Federal Defendants oppose plaintiffs' motion. (Doc. #70 ("Fed. Defs' Opp.")). The Orange County Defendants take no position.

Plaintiffs seek to supplement and amend their complaint in relevant part as follows.

The Proposed Amended Complaint (Doc. #66-1 ("PAC")) alleges Molina won relief from removal in his immigration proceedings under the Convention Against Torture in October 2023, but ICE has continued to detain him pending an appeal of the immigration judge's order. Plaintiffs allege Molina's continued detention contravenes ICE's policy to release individuals who have been granted relief by an immigration court absent exceptional circumstances pending the outcome of any DHS appeal.

---

[2]  In addition, Molina agreed to voluntarily dismiss without prejudice his claim against the Federal Defendants under the Administrative Procedure Act for failing to follow ICE procedures with respect to his transfer to detention centers in the South.

4

The PAC alleges Molina has experienced harsh restrictions and abusive treatment at Batavia.  Molina also alleges he has communicated with the public, ICE offices, and DHS about the conditions of his confinement at Batavia.  However, shortly after he submitted a complaint to the CRCL, Batavia guards began searching Molina's cell nearly every day, more frequently than other cells in his unit.  Furthermore, Molina allegedly fears returning to OCJ because of the abhorrent conditions and retaliation he endured there.

Plaintiffs request leave to amend their complaint to include (i) a declaration that the Federal Defendants' "policies and practices of retaliating against detained people who engage in First Amendment-protected activity," violate Molina's First Amendment rights (PAC at 43–44 ¶ b); and (ii) an injunction preventing the Federal Defendants from subjecting Molina "to the unlawful acts and omissions described herein, and to refrain from engaging in further retaliation," including retaliatory transfer outside of New York or back to OCJ (id. at 44 ¶ 4).[3]

**DISCUSSION**

I.      Standard of Review

Rule 15(a)(2) provides the Court "should freely give leave" to amend "when justice so requires."  Under Rule 15(d), the Court "may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  The analysis for a motion to amend and a motion to supplement is the same.  See M.V.B. Collision, Inc. v. Allstate Ins. Co., 728 F. Supp. 2d 205,

---

[3]     Plaintiffs also sought to supplement the complaint with allegations regarding Lopez's continued confinement at OCJ and to seek declaratory and injunctive relief on that basis. (PAC at 43–44 ¶¶ a, c–e).  However, ICE has since deported Lopez to Guatemala, and the parties agree his claims for equitable relief are therefore moot.  (Docs. ##74–76).  Accordingly, the Court construes plaintiffs to have withdrawn their motion to the extent it seeks to add requests for declaratory or injunctive relief as to Lopez.

222 (E.D.N.Y. 2010). Accordingly, leave to amend under Rule 15(d) should be "freely permitted when the supplemental facts connect it to the original pleading." Quaratino v. Tiffany & Co., 71 F.3d 58, 66 (2d Cir. 1995).[4] Stated otherwise, "Rule 15(d) reflects a liberal policy favoring a merit-based resolution of the entire controversy between the parties." Witkowich v. Gonzales, 541 F. Supp. 2d 572, 590 (S.D.N.Y. 2008).

"In the absence of any apparent or declared reason," including undue delay, bad faith, or dilatory motive on the movant's part, undue prejudice to the nonmoving party, or futility of amendment, "the leave sought should, as the rules require, be 'freely given.'" Foman v. Davis, 371 U.S. 178, 182 (1962). "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993). This "permissive standard is consistent with [a] strong preference for resolving disputes on the merits." Williams v. Citigroup, Inc., 659 F.3d 208, 212–213 (2d Cir. 2011).

However, an amendment to a pleading is futile if a proposed claim "would not survive a motion to dismiss" under Rules 12(b)(1) or 12(b)(6). Lopez v. Ki Moon Restaurant Corp., 2018 WL 3370668, at *2 (E.D.N.Y. Apr. 24, 2018). To survive a Rule 12(b)(1) motion, a plaintiff must "allege facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." Carter v. HealthPort Techs., LLC, 822 F.3d 47, 56 (2d Cir. 2016). In deciding a 12(b)(1) motion at the pleading stage, the Court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009). However, "argumentative inferences favorable to the party asserting

---

[4] Unless otherwise indicated, case quotations omit all internal citations, quotations, footnotes, and alterations.

6

jurisdiction should not be drawn." Buday v. N.Y. Yankees P'ship, 486 F. App'x 894, 895 (2d Cir. 2012) (summary order).

II.     Supplemental Allegations of Retaliation Against Molina at Batavia

Defendants argue plaintiffs should be denied leave to supplement the complaint with allegations regarding Molina's experience at Batavia because the allegations are not sufficiently connected to plaintiffs' original claims.

The Court disagrees.

"A supplemental pleading is designed to cover matters that occur subsequent to the filing of the complaint, but pertain to the original pleadings." Albrecht v. Long Island R.R., 134 F.R.D. 40, 41 (E.D.N.Y. 1991). Generally, courts grant leave to supplement pleadings where the new allegations "fit within the alleged pattern of Defendants' retaliatory acts contained in the original complaint." Wang v. N.Y.C. Dep't of Youth & Cmty. Dev., 2024 WL 1174723, at *6 (S.D.N.Y. Mar. 19, 2024).

As discussed below, plaintiffs plausibly allege Molina is subjected to continued detention in contravention of ICE policy (and thus faces retaliation) at Batavia because of his protected speech at OCJ. Moreover, plaintiffs have alleged Molina has faced terrible conditions at Batavia, including being confined to his cell for approximately nineteen hours per day, resulting in increased anxiety and depression. Moreover, plaintiffs allege he has experienced abusive treatment from one Batavia guard in particular.

These new allegations "fit within the alleged pattern of [the Federal] Defendants' retaliatory acts alleged in the original complaint." Wang v. N.Y.C. Dep't of Youth & Cmty. Dev., 2024 WL 1174723, at *6. Plaintiffs made extensive allegations regarding the Federal Defendants' knowledge of, involvement in, and opportunity to prevent the alleged retaliation at

OCJ and alleged retaliatory transfer of Molina to the South. (PAC ¶¶ 82–84, 92, 97, 111–13). Likewise, plaintiffs have alleged ICE knew or approved of, or had a realistic opportunity to prevent, the retaliation at Batavia, as Batavia is a federal processing center run by ICE. It is thus reasonable to infer from the allegations in the PAC that the same defendant, ICE, knew or approved of, or had a realistic opportunity to prevent, the retaliation at both OCJ and Batavia.

Accordingly, applying the liberal standards of Rule 15, the Court finds the PAC's supplemental allegations regarding retaliation against Molina at Batavia are sufficiently connected to and support plaintiffs' existing First Amendment retaliation claim.[5]

III. Futility

Defendants argue plaintiffs' motion for leave to amend should be denied as futile because plaintiffs have not alleged sufficient facts to demonstrate Molina has standing to seek declaratory and injunctive relief against the Federal Defendants.

The Court disagrees.

A. Legal Standard

To satisfy the "irreducible constitutional minimum of standing . . . . [t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). To support standing, an injury must be both "concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. at 339. "This does

---

[5] The Federal Defendants argue the PAC does not state a cognizable First Amendment retaliation claim against them for the alleged retaliation targeting Molina at Batavia. Because the Court finds these allegations are sufficiently connected to the original complaint and support Molina's First Amendment retaliation claim—which this Court has already determined was properly pleaded under Rule 12(b)(6) (Doc. #53 at 20)—it need not consider whether these allegations support their own First Amendment retaliation claim.

not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness." Id. at 341.  A plaintiff asserting a First Amendment retaliation claim "has standing if he can show either that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm."  Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013).

"A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." Deshawn E. ex rel. Charlotte E. v. Safir, 156 F.3d 340, 344 (2d Cir. 1998).  Although "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief," courts consider past wrongs as "evidence bearing on whether there is a real and immediate threat of repeated injury."  City of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983).

B. Analysis

Here, the PAC adequately alleges injury-in-fact, traceability, and redressability sufficient to support Molina's standing to pursue the relief he seeks.

1. Injury-in-Fact

In the PAC, plaintiffs allege the Federal Defendants are holding Molina in continued detention in contravention of established ICE policy.  Plaintiffs allege Molina has faced terrible conditions in detention, including being confined to his cell for approximately nineteen hours per day while at Batavia, resulting in increased anxiety and depression.  Moreover, plaintiffs allege he has experienced abusive treatment from one Batavia guard in particular.  This type of discretionary detention "clearly constitutes a concrete harm sufficient to allege an ongoing

9

injury-in-fact." Berg v. N.Y.C. Police Comm'r Kelly, 2016 WL 4257525, at *4 (S.D.N.Y. Aug. 10, 2016), overruled on other grounds, 897 F.3d 99 (2d Cir. 2018).

Moreover, although Molina may have no general constitutional right to be released under ICE policy, he does have a constitutional right not to be subjected to continued detention because of his protected conduct under the First Amendment. To assert a First Amendment retaliation claim, a plaintiff must establish that the retaliatory conduct, which may "otherwise not ris[e] to the level of a constitutional violation," Dolan v. Connolly, 794 F.3d 290, 295 (2d Cir. 2015), "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights," Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003).

Plaintiffs have adequately alleged Molina is subjected to continued detention in contravention of ICE policy, and thus faces ongoing retaliation, at Batavia because of his protected speech at OCJ. ICE's general policy favors release of an individual who has been granted relief by an immigration court absent "absent exceptional circumstances such as national security or danger to the community." (Doc. #70-1 at ECF 4).[6] Molina allegedly won relief from removal in his immigration proceedings in October 2023. The PAC suggests no exceptional circumstances that would justify Molina's continued detention, and defendants do not contest that plaintiffs have plausibly alleged his continued detention violates ICE policy. If true, Molina presumably should be released under ICE policy. The Court thus finds Molina's

---

[6] Because futility is analyzed under the Rule 12(b) standard, the Court generally may consider only documents attached to, incorporated by reference in, or integral to the complaint. DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). By relying on ICE Directive 16004.1 in their allegations (PAC ¶ 137), plaintiffs incorporated this document by reference. Accordingly, the Court may consider the document, even though it was submitted by the Federal Defendants in connection with their opposition. (Doc. #70-1).

continued detention, as alleged, would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights.

Accordingly, plaintiffs have adequately alleged an injury-in-fact as to Molina.[7]

### 2. Traceability

Plaintiffs have also adequately alleged the requisite causal connection between Molina's purported injury and his protected conduct.

Since Molina engaged in protected conduct regarding the conditions of confinement at OCJ in the first half of 2022, the Federal Defendants have allegedly engaged in a continued pattern of retaliatory conduct. Molina was allegedly placed in segregated confinement and subjected to other retaliatory actions at OCJ in February 2022, of which ICE was allegedly aware and in which it could have intervened. ICE allegedly transferred Molina to a detention center in Mississippi a few months later in July 2022, in contravention of ICE policy, and to a new detention center in Louisiana in March 2023, again in contravention of ICE policy.[8] Seven months after that, in October 2023, plaintiffs allege Molina won relief from removal in his immigration proceedings, and yet the Federal Defendants refuse to release him in contravention of ICE's general policy, as discussed above.

---

[7] Because the Court finds this alleged injury is ongoing, it need not consider whether Molina's alleged "credible fear" of future retaliation is also sufficient to convey standing.

[8] Specifically, plaintiffs allege ICE Policy 11022.1 prohibits the transfer of a detainee outside of a field office's area of responsibility if the detainee has been granted bond or has in the area immediate family, an attorney of record, pending or ongoing removal proceedings, or a scheduled bond hearing. A detainee who meets these criteria may only be transferred if a field office director deems the transfer necessary for one of seven enumerated reasons. According to plaintiffs, Molina had immediate family, an attorney of record, and ongoing removal proceedings in the New York area at the times he was transferred to Louisiana and Mississippi facilities, but ICE provided no justification for the transfers, as required by ICE policy. (PAC ¶¶ 129, 131).

Drawing all reasonable inferences in plaintiffs' favor, they have plausibly alleged Molina's continued detention—as part of a continued pattern of alleged retaliatory conduct against him—is fairly traceable to the Federal Defendants' actions or failure to intervene. Cf. John & Vincent Arduini Inc. v. NYNEX, 129 F. Supp. 2d 162, 168 (N.D.N.Y. 2001) (finding standing when injury was directly traceable to a discriminatory pattern of conduct). Moreover, the lapse of seven months between Molina's alleged retaliatory transfer to Louisiana, in violation of ICE policy, and his alleged retaliatory continued detention, also in contravention of ICE policy, does not defeat a causal connection as a matter of law. See Burton v. Lynch, 664 F. Supp. 2d 349, 367 (S.D.N.Y. 2009). In addition, the absence of any allegations of "exceptional circumstances" that would justify Molina's continued detention, such that his continued detention allegedly contravenes ICE policy, suggests a causal connection to Molina's protected conduct at OCJ.

Accordingly, plaintiffs have plausibly alleged Molina's injury is fairly traceable to defendants' conduct.

3. Redressability

Lastly, plaintiffs have sufficiently alleged Molina's injuries are redressable.

To plead redressability, a plaintiff must allege facts showing it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Coal. of Watershed Towns v. EPA, 552 F.3d 216, 218 (2d Cir. 2008). Moreover, "a plaintiff's request for improper relief is an inappropriate basis for dismissal" if the injury is otherwise redressable by a proper judicial remedy. Goldman v. Reddington, 417 F. Supp. 3d 163, 176 (E.D.N.Y. 2019). Rather, a complaint fails to satisfy the redressability requirement if "[n]one of the specific items of relief sought, and none that [the Court] can envision as appropriate under the general request,"

would redress the plaintiffs' injuries.  Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 105–06 (1998) (emphasis added).

Plaintiffs have adequately alleged facts in the PAC that show it is likely Molina's claims are redressable by the Court.

As discussed above, plaintiffs have adequately alleged an ongoing harm to Molina arising from his continued detention.  This harm is plainly redressable by the Court.  For example, as plaintiffs note, this Court could order injunctive relief requiring the Federal Defendants to conduct a nonretaliatory assessment of his detention at Batavia.  (Doc. #73 at 10 n.12).  In addition, an order enjoining the Federal Defendants from retaliatorily transferring Molina outside of New York State again, as plaintiffs specifically requested in the PAC, could redress his alleged credible fear of further retaliation.[9]

Moreover, the Federal Defendants' Rule 65(d) arguments are inapplicable here.  As courts in this Circuit have recognized, a Rule 12(b)(6) motion "properly addresses the cause of action alleged, not the remedy sought.  It is the court that will craft any remedy.  Only when that remedy has been determined may defendants contest its application on grounds of vagueness or some other violation of Rule 65(d)."  City of New York v. A-1 Jewelry & Pawn, Inc., 247 F.R.D. 296, 353 (E.D.N.Y. 2007).

Accordingly, plaintiffs have adequately alleged Molina's injuries are likely to be redressable, such that he has standing.

In short, permitting amendment would not be futile.

---

[9]  The Court agrees plaintiffs' request for an injunction prohibiting the Federal Defendants from transferring Molina back to OCJ (PAC at 44 ¶ d) is moot because the Federal Defendants have already agreed not to do this by stipulation and the Court has entered an order to that effect.  However, because the Court will ultimately craft the appropriate remedy, if any, it need not strike this language from the PAC's request for relief.

**CONCLUSION**

The motion for leave to amend and supplement is GRANTED.

Plaintiffs shall file an amended complaint, consistent with the withdrawal of Lopez's claims for equitable relief but otherwise identical to the PAC, by June 7, 2024.

By June 21, 2024, defendants shall answer, move, or otherwise respond to the amended complaint.

By separate Order, the Court will schedule an initial conference.

The Clerk is instructed to terminate the motion. (Doc. #65).

Dated: May 31, 2024
White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge