**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NAHUM GILBERTO ORTIZ; DENNY MOLINA CANTOR; LUCAS PALACIOS ALVARADO; JEREMIAS LOPEZ LOPEZ; ELMER MOSCOSO GUERRA; and LUIS GONZALEZ CARBAJAL,<br><br>                              Plaintiffs,<br><br>              v.<br><br>ORANGE COUNTY, NEW YORK; PAUL ARTETA, Sheriff of Orange County, in his official and individual capacity; CARL DUBOIS, former Sheriff of Orange County, in his individual capacity; KENNETH JONES, former Undersheriff of Orange County, in his individual capacity; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and KENNETH GENALO, Acting ICE Field Office Director, in his official capacity,<br><br>                              Defendants. | 23 Civ. 2802 (VB) |

## MEMORANDUM OF LAW IN SUPPORT OF THE FEDERAL DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.:    (212) 637-2772 / 2633
E-mail: david.farber@usdoj.gov
              tara.schwartz@usdoj.gov

DAVID E. FARBER
TARA SCHWARTZ
Assistant United States Attorneys
    – Of Counsel –

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................... 1

BACKGROUND ...................................................................................................................... 1

    A.  Plaintiff Molina's First Amendment Claim ................................................................ 2

        1. Alleged Retaliation at Orange County Jail ..................................................... 3

        2. Period of Detention in Mississippi and Louisiana ......................................... 3

        3. Alleged Retaliation at the Batavia Facility .................................................... 4

    B.  Procedural History ...................................................................................................... 6

LEGAL STANDARDS ............................................................................................................ 7

ARGUMENT ............................................................................................................................ 8

    PLAINTIFF MOLINA'S CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF
    FAIL BECAUSE HE LACKS ARTICLE III STANDING ................................................. 8

    A.  Because Molina's appeal to the BIA is no longer pending, his claim of ongoing
        retaliation is now moot. .......................................................................................... 10

    B.  Molina does not identify another ongoing injury-in-fact sufficient to confer standing. 12

    C.  Molina does not demonstrate a likelihood of future harm and the existence of an
        official policy necessary for standing to pursue prospective relief. ............................ 15

        1. Molina fails to demonstrate a likelihood of future harm. ............................ 16

        2. Molina fails to allege the existence of an official policy or its equivalent. ................ 17

CONCLUSION ....................................................................................................................... 19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Alvarez v. Smith*,
    558 U.S. 87 (2009) ................................................................................................ 8

*Amadei v. Nielsen*,
    348 F. Supp. 3d 145 (E.D.N.Y. 2018) ................................................................ 19

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*,
    671 F.3d 140 (2d Cir. 2011) .................................................................................. 7

*Battice v. Phillip*,
    No. 04 Civ. 669, 2006 WL 2190565 (E.D.N.Y. Aug. 2, 2006) ............................. 13

*Bilal v. White*,
    494 F. App'x 143 (2d Cir. 2012) ..................................................................... 13, 15

*Carter v. HealthPort Techs., LLC*,
    822 F.3d 47 (2d Cir. 2016) ............................................................................... 8, 13

*Cedars-Sinai Med. Ctr. v. Watkins*,
    11 F.3d 1573 (Fed. Cir. 1993) ............................................................................. 14

*City of L.A. v. Lyons*,
    461 U.S. 95 (1983) ...................................................................................... 7, 9, 16

*Clapper v. Amnesty Int'l USA*,
    568 U.S. 398 (2013) ........................................................................................ 9, 17

*Conn. Parents Union v. Russell-Tucker*,
    8 F.4th 167 (2d Cir. 2021) .................................................................................... 7

*Corley v. City of New York*,
    No. 14 Civ. 3202, 2017 WL 4357662 (S.D.N.Y. Sept. 28, 2017) ......................... 13

*Correspondent Servs. Corp. v. JVW Inv., Ltd.*,
    No. 99 Civ. 8934 (RWS), 2004 WL 2181087 (S.D.N.Y. Sept. 29, 2004) ................. 8

*Curtis v. City of New Haven*,
    726 F.2d 65 (2d Cir. 1984) ................................................................................... 18

*Davis v. Goord*,
    320 F.3d 346 (2d Cir. 2003) ................................................................................ 14

*Deshawn E. by Charlotte E. v. Safir*,
    156 F.3d 340 (2d Cir. 1998) ................................................................................ 16

*Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*,
    544 F.2d 1126 (2d Cir. 1976) ................................................................................. 8

*Fox v. Bd. Of Trustess of the State Univ. of New York*,
    42 F.3d 135 (2d Cir. 1994) .................................................................................... 7

*Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*,
   528 U.S. 167 (2000) .......................................................................................................... 7

*Giammatteo v. Newton*,
   452 F. App'x 24 (2d Cir. 2011) ........................................................................................ 7

*Guadagno v. Wallack Ader Levithan Assocs.*,
   932 F. Supp. 94 (S.D.N.Y. 1996) ..................................................................................... 8

*Laird v. Tatum*,
   408 U.S. 1 (1972) ............................................................................................................ 17

*Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ................................................................................................... 9, 17

*Makarova v. United States*,
   201 F.3d 110 (2d Cir. 2000) ............................................................................................. 7

*Medina v. City of New York*,
   No. 19 Civ. 9412 (AJN), 2020 WL 7028688 (S.D.N.Y. Nov. 30, 2020) ......................... 17

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) .......................................................................................................... 9

*Peck v. Baldwinsville Cent. Sch. Dist.*,
   351 F. App'x 477 (2d Cir. 2009) .................................................................................... 18

*Raines v. Byrd*,
   521 U.S. 811 (1997) .......................................................................................................... 9

*Robinson v. Gov't of Malaysia*,
   269 F.3d 133 (2d Cir. 2001) ............................................................................................. 8

*Shain v. Ellison*,
   356 F.3d 211 (2d Cir. 2004) ..................................................................................... 15, 16

*Soc'y of Separationists, Inc. v. Herman*,
   959 F.2d 1283 (5th Cir. 1992) .......................................................................................... 9

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) .......................................................................................................... 9

*TransUnion LLC v. Ramirez*,
   141 S. Ct. 2190 (2021) ...................................................................................................... 9

*Walker v. Goord*,
   No. 98 Civ. 5217, 2000 WL 297249 (S.D.N.Y. Mar. 22, 2000) .................................... 13

*Weinstein v. Bradford*,
   423 U.S. 147 (1975) ........................................................................................................ 10

**Statutes**

8 U.S.C § 1226(a) ............................................................................................................ 11, 12

**Other Authorities**

ICE Directive 16004.1*, Detention Policy Where an Immigration Judge has
   Granted Asylum and ICE has Appealed* (Feb. 9, 2004)...................................................... passim

ICE, Performance Based National Detention Standards 2011, Section 6.2(V)(G) ...................... 18

**Rules**

Federal Rule of Civil Procedure 12(b)(1) .......................................................................... 1, 7, 8, 13

Federal Rule of Civil Procedure 12(h)(3) ................................................................................. 1, 8

**Constitutional Provisions**

U.S. Constitution, Article III, § 2 ................................................................................................. 8

Defendants the U.S. Department of Homeland Security ("DHS"), U.S. Immigration and Customs Enforcement ("ICE"), and Kenneth Genalo (collectively, the "Federal Defendants"), by their attorney Damian Williams, United States Attorney for the Southern District of New York, respectfully submit this memorandum of law in support of their motion to dismiss the claim against them in the Amended Complaint (ECF No. 81, the "Amended Complaint" or "Am. Compl."), pursuant to Rules 12(b)(1) and 12(h)(3) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

The only remaining claim against the Federal Defendants in this case is brought by Plaintiff Denny Molina Cantor ("Molina") alleging a violation of the First Amendment. He seeks declaratory and injunctive relief against the Federal Defendants concerning their alleged retaliation against him for engaging in First Amendment protected conduct. But Molina lacks Article III standing. His prior basis for standing—that ICE was detaining him in contravention of its own policy—has been mooted by developments in his immigration case which have made such policy no longer applicable to Molina. Further, he has failed to allege any other ongoing injury, and he cannot demonstrate both a likelihood of future harm and the existence of an official policy or its equivalent necessary to confer standing.

As a result, the Court lacks subject matter jurisdiction over Molina's claim for First Amendment retaliation against the Federal Defendants and that claim must be dismissed.

## BACKGROUND

Plaintiffs Molina, Nahum Gilberto Ortiz, Lucas Palacios Alvarado, Jeremias Lopez Lopez ("Lopez"), Elmer Moscoso Guerra, and Luis Gonzalez Carbajal are six noncitizens who were detained by ICE at Orange County Jail ("OCJ") from 2021 to 2022, in connection with their respective immigration proceedings. Am. Compl. ¶¶ 10, 12-17. In this action, Plaintiffs allege that

1

they were subjected to retaliation for speaking out about conditions at OCJ. *Id.* ¶¶ 53-54. In addition to the claim against the Federal Defendants, the Amended Complaint asserts claims against defendants Orange County, New York, Paul Arteta, Sheriff of Orange County, Carl DuBois, former Sheriff of Orange County, and Kenneth Jones, former Undersheriff of Orange County, for damages pursuant to 42 U.S.C. § 1983. *Id.* ¶ 151.

Since the filing of this action, five of the six plaintiffs have been either released from ICE custody or removed from the United States. *See* Am. Compl. ¶¶ 12-17; ECF No. 76. Molina is the only plaintiff still in ICE custody, and he is located not at OCJ, but at Buffalo Federal Detention Facility in Batavia, New York ("Batavia" or the "Batavia Facility"). *See* ECF No. 58. He is the only plaintiff with a claim remaining against the Federal Defendants.[1]

### A.  Plaintiff Molina's First Amendment Claim

In the Amended Complaint, Molina asserts a First Amendment retaliation claim against the Federal Defendants. He claims that he was retaliated against by ICE while in detention at OCJ, between November 2021 and July 2022, and is currently being retaliated against at the Batavia Facility, where he has been detained since December 2023. As relief for his sole claim against the Federal Defendants, he seeks: (1) a declaration that the Federal Defendant's policies and practices of retaliating against detained people who engage in protected activity, violates his First Amendment rights; and (2) an injunction to prevent the Federal Defendants from subjecting him to unlawful acts and to refrain from engaging in further retaliation. Am. Compl. 43-44 (Prayer for Relief).

---

[1] The Amended Complaint includes a reference to Plaintiff Lopez, *see* Am. Compl. ¶ 152 (referencing Plaintiff Lopez in Second Claim); however, the parties have agreed that his claims are moot, as he has been removed from the United States. *See* ECF No. 78, at 5 n.3. As such, only Molina's claim against the Federal Defendants properly remains.

### 1.   Alleged Retaliation at Orange County Jail

Molina was first detained at OCJ in November 2021. Am. Compl. ¶ 13. He alleges that in early to mid-February 2022, he and other plaintiffs discussed their experiences at OCJ with advocates as part of a complaint submitted by several immigrant and civil rights organizations to DHS's Office for Civil Rights and Civil Liberties ("CRCL Complaint"). *Id*. ¶ 61. While the CRCL Complaint used pseudonyms to protect the identities of the witnesses involved, plaintiffs allege that officials at OCJ were able to identify those who participated. *Id*. ¶ 63.

Further, Molina alleges that in February 2022, he and a significant portion of the detainees in his unit engaged in a hunger strike to protest their conditions of confinement. *Id*. ¶¶ 68-69. He claims that OCJ guards retaliated against him and others who were participating in the hunger strike by placing them in segregated confinement, confiscating their food and personal items as part of a mass search, and prevented them from using their jail-provided tablets to communicate with people outside the jail. *See id*. ¶¶ 75-81. He also claims that he was subject to disciplinary action by OCJ. *Id*. ¶ 81. Molina alleges that ICE was informed of and approved of the actions taken by the OCJ staff following the commencement of the hunger strike and collaborated with OCJ to silence the plaintiffs. *See id*. ¶¶ 82, 92.

Several months after the hunger strike, in July 2022, ICE coordinated a mass transfer of individuals out of OCJ. *Id*. ¶ 105. As part of this mass transfer, Molina was transferred out of OCJ to another ICE detention center in Natchez, Mississippi. *Id*. ¶ 120. Molina alleges that his transfer was in retaliation for his participation in the hunger strike and other protected activity. *See id*. ¶¶ 8, 103, 135.

### 2.   Period of Detention in Mississippi and Louisiana

Molina was detained in Natchez, Mississippi from July 2022 until March 16, 2023, at which time he was transferred to Pine Prairie, Louisiana. *Id*. ¶¶ 120-121. Molina remained at these

two facilities for approximately one-and-a-half years, until he was transferred back to the New York area—specifically, Batavia—in December 2023. *See id.* ¶¶ 13, 140. Notably, Molina does not allege that any retaliatory acts were taken against him at Natchez or Pine Prairie for his protected activity at OCJ, or any other protected activity.

On or about October 27, 2023, while Molina was located at Pine Prairie, he won relief in his immigration proceedings. *Id.* ¶ 137. DHS appealed the Immigration Judge's order. *Id.* Molina alleges that despite the fact that ICE Directive 16004.1 provides for release of noncitizens who have won relief before an immigration judge absent exceptional circumstances, the Federal Defendants continued to detain Molina. *See id.*[2] On December 6, 2023, Molina's immigration counsel requested Molina's release from custody, but did not request release pursuant to ICE Directive 16004.1. *See id.* ¶ 139; Pujol Decl., ¶ 11, Ex. A. On December 12, 2023, New York Field Office Director Kenneth Genalo ("FOD Genalo") denied Molina's request for discretionary release, noting that in light of Molina's recent criminal history, FOD Genalo could "find no compelling reason to warrant a favorable exercise of discretion in this case." Pujol Decl., ¶ 12, Ex. B.

### 3. Alleged Retaliation at the Batavia Facility

Molina arrived at the Batavia Facility on December 22, 2023. Am. Compl. ¶ 140. Molina alleges that since he has been at the Batavia Facility, he has engaged in additional protected activity including advocacy about the conditions of confinement at Batavia. *Id.* ¶ 142. Specifically, he has

---

[2] ICE Directive 16004.1*, Detention Policy Where an Immigration Judge has Granted Asylum and ICE has Appealed* (Feb. 9, 2004), provides as follows: "In general, it is ICE policy to favor release of aliens who have been granted protection relief by an immigration judge, absent exceptional circumstances such as national security issues or danger to the community and absent any requirement under law to detain." *See* Declaration of Joseph T. Pujol ("Pujol Decl."), ¶ 11 n.1.

communicated with journalists, advocacy and organizing groups, guards at Batavia, ICE officers, and at least one DHS investigator. *Id.* ¶ 144. On February 16, 2024, he submitted a complaint to ICE's Office of the Immigration Detention Ombudsman, DHS CRCL, and DHS Office of the Inspector General (the "February 2024 Civil Rights Complaint"). *Id.* ¶ 145.

Molina alleges that days after submitting the February 2024 Civil Rights Complaint, officers at Batavia began searching his general population cell nearly every day and sometimes twice a day, which is more frequently than other cells in his unit. *Id.* ¶ 146. However, Molina's cell has only been searched approximately 3 to 4 times per month, in keeping with the general practice in his detention unit. *See* Declaration of George P. Harvey, Jr. ("Harvey Decl."), ¶¶ 6-7. Molina's cell has not been subjected to daily or near daily cell searches, and his cell has been subjected to the same frequency of searches as those of other detainees housed in his unit. *Id.* ¶ 7.

Molina also alleges that he experienced abusive treatment from one particular guard at the Batavia Facility, Officer Nichols. *See* Am. Compl. ¶ 143. However, Plaintiff does not allege that Officer Nichols abused him as a result of any protected activity, nor does he allege that Officer Nichols even knew about his protected activity. *See id*. In his February 2024 Civil Rights Complaint, Molina alleged that "on two occasions, Officer C. Nichols has yelled at Mr. Molina for no apparent reason." Declaration of David E. Farber ("Farber Decl."), Ex. 1 at 4.

Molina also alleges that he is permitted out of his cell only five hours per day, but he does not allege that this condition is retaliatory nor that it is specific to him. *See id*. ¶ 142. In his February 2024 Civil Rights Complaint, Molina alleged that "[h]e and others in his unit are typically allowed out of their cells for about five hours per day." Farber Decl., Ex. 1 at 1. However, Molina and the other detainees in his unit at the Batavia Facility are allowed out of their cells an average of 6.5 to 7 hours per day based on a set schedule. *See* Harvey Decl. ¶¶ 4-5. Detainees in Molina's

unit are also allowed out of their cells, even when they are scheduled to be in their cells, for various reasons, including visitation, medical appointments, voluntary work assignments, law library, and in order to attend religious studies. *Id.* ¶ 5.

### B. Procedural History

Plaintiffs filed the original complaint in this action on April 5, 2023, ECF No. 7, which the Federal Defendants moved to dismiss, *see* ECF No. 39. On January 10, 2024, the Court denied the Federal Defendants' motion to dismiss. ECF No. 53.

On February 15, 2024, Plaintiffs notified the Court that they intended to amend their pleadings. ECF No. 61. Plaintiffs filed their motion for leave to amend on March 21, 2024, *see* ECF Nos. 65-66,[3] which the Federal Defendants opposed, ECF No. 70. In their opposition, the Federal Defendants argued that the motion for leave to amend was futile because, *inter alia*, Molina lacked Article III standing. *Id*. Specifically, the Federal Defendants argued that Molina: (i) failed to identify an ongoing injury-in-fact sufficient to confer him standing for the equitable relief that he seeks; and (ii) could not demonstrate a likelihood of future harm. *Id*. at 15-23.

On May 31, 2024, the Court granted Plaintiffs' motion for leave to amend. *See* Opinion & Order, ECF No. 78. In granting Plaintiffs' motion, the Court found that Molina plausibly alleged he was "subjected to continued detention in contravention of ICE policy . . . favor[ing] release of an individual who has been granted relief by an immigration court" "and thus faces ongoing

---

[3] Along with their motion to amend, Plaintiffs filed their proposed amended complaint, which alleged that ICE had failed to release Molina pursuant to ICE Directive 16004.1. ECF No. 66-2 ¶ 137; *see also* Pujol Decl. ¶ 13. After ICE received the proposed amended complaint, the New York City Feld Office undertook a separate review of Molina's custody status to determine whether Molina was eligible for discretionary release pursuant to ICE Directive 16004.1. *See* Pujol Decl. ¶ 13. On April 10, 2024, FOD Genalo again made the determination to continue Molina's detention due to the danger Molina's release posed to the community, specifically due to the recency and serious nature of his criminal history. *See id.* ¶ 14.

retaliation, at Batavia because of his protected speech at OCJ." *Id.* at 10. However, on May 28, 2024, the BIA issued its decision on appeal, vacating the Immigration Judge's determination granting relief to Molina, and remanding his case back to the Immigration Judge for further proceedings. *See* Pujol Decl. ¶ 15. As a result, no appeal to the BIA is currently pending, and ICE Directive 16004.1 no longer applies to Molina. *Id.*

## LEGAL STANDARDS

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The plaintiff "has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x 24, 27 (2d Cir. 2011) (citing *Makarova*, 201 F.3d at 113). To survive a Rule 12(b)(1) motion, the allegations in the proposed complaint must demonstrate, among other things, that the plaintiff possesses Article III standing to seek the relief requested. *Conn. Parents Union v. Russell-Tucker*, 8 F.4th 167, 172 (2d Cir. 2021). "[A] plaintiff must demonstrate standing separately for each form of relief sought." *Friends of the Earth, Inc. v. Laidlaw Env't Servs., Inc.*, 528 U.S. 167, 185 (2000) (citing *City of L.A. v. Lyons*, 461 U.S. 95, 109 (1983)). "When a case becomes moot, the federal courts lack subject matter jurisdiction over the action. Defects in subject matter jurisdiction cannot be waived and may be raised at any time during the proceedings." *Fox v. Bd. Of Trustess of the State Univ. of New York*, 42 F.3d 135, 140 (2d Cir. 1994) (cleaned up).

Where a Rule 12(b)(1) motion raises a facial challenge to the court's jurisdiction, the plaintiff has no evidentiary burden in refuting that challenge. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011). However, where a Rule 12(b)(1) motion raises a factual challenge, the defendant may "proffer[ ] evidence beyond the [p]leading," and the plaintiff "will

need to come forward with evidence of their own to controvert that presented by the defendant 'if the affidavits submitted on a 12(b) motion … reveal the existence of factual problems' in the assertion of jurisdiction." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016) (quoting *Exch. Nat'l Bank of Chi. v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976)). When a factual challenge to jurisdiction has been raised, "no presumptive truthfulness attaches to the complaint's jurisdictional allegations," and "the burden is on the plaintiff to satisfy the Court, as fact-finder, of the jurisdictional facts." *Guadagno v. Wallack Ader Levithan Assocs.*, 932 F. Supp. 94, 95 (S.D.N.Y. 1996). In the case of a factual challenge, a court must refer to proffered evidence outside of the pleadings, "if resolution of a proffered factual issue may result in the dismissal of the complaint for want of jurisdiction." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 141 n.6 (2d Cir. 2001).

Rule 12(h)(3) provides that "[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). "Motions brought pursuant to Rule 12(h)(3) are subject to the same standards as motions to dismiss for want of subject matter jurisdiction brought pursuant to Rule 12(b)(1)." *Correspondent Servs. Corp. v. JVW Inv., Ltd.*, No. 99 Civ. 8934 (RWS), 2004 WL 2181087, at *5 (S.D.N.Y. Sept. 29, 2004) (citation omitted).

## ARGUMENT

### PLAINTIFF MOLINA'S CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF FAIL BECAUSE HE LACKS ARTICLE III STANDING

Because Article III of the Constitution authorizes federal courts to adjudicate only "Cases" or "Controversies," U.S. Const. Art. III, § 2, an "actual controversy must be extant" not just "at the time the complaint is filed," but throughout "all stages" of the litigation. *Alvarez v. Smith*, 558 U.S. 87, 92 (2009). To establish standing under Article III, a plaintiff must demonstrate

(1) that he has "suffered an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) that there is a sufficient "causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant"; and (3) that it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up). These elements ensure "that there is a real need to exercise the power of judicial review in order to protect the interests of the complaining party." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (citation omitted).

The "standing inquiry [must be] especially rigorous when reaching the merits of the dispute would force [a court] to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997); *see also Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1287 (5th Cir. 1992). After all, "[f]ederal courts do not exercise general legal oversight of the Legislative and Executive Branches, or of private entities." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).

Moreover, to obtain prospective equitable relief—as Plaintiffs seek here—it is not enough to allege a past injury. *See Lyons*, 461 U.S. at 102; *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974) ("Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."). Rather, Plaintiffs must demonstrate that they face a "real and immediate threat" of future harm. *Lyons*, 461 U.S. at 102. "[T]hreatened injury must be certainly impending to constitute injury in fact, and [ ] allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410, 414 n.5 (2013) (cleaned up) (emphasis added).

A.  **Because Molina's appeal to the BIA is no longer pending, his claim of ongoing retaliation is now moot.**

In granting Plaintiffs' motion for leave to amend the complaint, the Court found that Plaintiffs had "adequately alleged Molina is subjected to continued detention in contravention of ICE policy, and thus faces ongoing retaliation." Opinion & Order (ECF No. 78), at 10. Specifically, Molina alleged that ICE's failure to release him from detention while his appeal to the BIA was pending contravened ICE's discretionary release policy found in ICE Directive 16004.1. *See id.* at 9-12; *see also* Am. Compl. ¶ 137. That ICE Directive favors release of an individual who has been granted relief by an immigration court while an appeal to the BIA is pending, "absent exceptional circumstances such as national security or danger to the community." *See* Opinion and Order, at 10.

However, on May 28, 2024, the BIA issued a decision vacating the immigration judge's determination granting relief to Molina, and remanding his case back to the immigration judge for further proceedings. *See* Pujol Decl., ¶ 15; ECF No. 85 at 2. Given this development in Molina's immigration case, he is no longer in the position of having been granted immigration relief with an appeal pending before the BIA. Accordingly, the ICE policy favoring release absent exceptional circumstances while a BIA appeal is pending no longer applies to Molina, and his purported "ongoing" injury based on being held in contravention of that policy is now moot. *See, e.g., Weinstein v. Bradford*, 423 U.S. 147, 148 (1975) (case challenging prison policy dismissed as moot where prisoner "no longer has any present interest affected by that policy").

Moreover, Molina's allegation that he was detained in contravention of ICE's policy favoring his release is itself meritless. In fact, ICE made the determination that Molina should continue to be detained due to the danger he poses to the community. On October 27, 2023, the Immigration Judge granted Molina relief from removal in his immigration proceedings, and DHS

subsequently appealed that decision to the BIA. *See* Pujol Decl., ¶ 11. On December 6, 2023, while DHS's appeal to the BIA was pending, Molina's immigration counsel requested Molina's release from custody, but did not request release pursuant to ICE Directive 16004.1. *See* Am. Compl. ¶ 139; Pujol Decl., ¶ 11, Ex. A. On December 12, 2023, New York Field Office Director FOD Genalo denied Molina's request for discretionary release, noting that in light of Molina's recent criminal history, FOD Genalo could "find no compelling reason to warrant a favorable exercise of discretion in this case." Pujol Decl., ¶ 12, Ex. B.

On March 21, 2024, Plaintiffs filed their proposed amended complaint, which explicitly referred to ICE Directive 16004.1. *See* ECF No. 66-2 ¶ 137; *see also* Pujol Decl. ¶ 13. After ICE received the proposed amended complaint, the New York City Feld Office undertook a separate review of Molina's custody status to determine whether Molina was eligible for discretionary release pursuant to ICE Directive 16004.1. Pujol Decl. ¶ 13. On April 10, 2024, FOD Genalo again made the determination to continue Molina's detention due to the danger Molina's release posed to the community, specifically due to the recency and serious nature of his criminal history. *See id.* ¶ 14. Thus, ICE complied with ICE Directive 16004.1 in continuing to detain Molina based on the risk he posed as "a danger to the community." Because ICE properly determined that Molina posed a danger to the community, in keeping with ICE Directive 16004.1, his continued detention cannot constitute a cognizable injury-in-fact.

Recognizing that he can no longer allege that he is being held in violation of ICE Directive 16004.1, Molina now argues that he is still experiencing "ongoing retaliation" because he remains discretionarily detained under 8 U.S.C § 1226(a), the statute conferring authority on ICE to detain noncitizens. *See* ECF No. 85 at 3-4. However, that statute says nothing about favoring the release of detainees. Section 1226(a) provides that ICE "may continue to detain the arrested" noncitizen,

or "may release" a noncitizen on bond or conditional parole. 8 U.S.C. § 1226(a)(1)-(2). Indeed, Molina has twice sought release from detention on bond during his immigration proceedings, and the Immigration Judge in his case has twice denied his request for release due to Molina's failure to establish that he does not pose a danger to the community. *See* Pujol Decl., ¶¶ 7-8, 10. As a result, Molina cannot plausibly contend that he is being detained by ICE in contravention of Section 1226(a).

Simply put, this Court previously held that it was, specifically, ICE's decision to continue detaining Molina in contravention of ICE policy favoring his release, which constituted the "ongoing injury" sufficient to confer standing. *See* Opinion & Order, ECF No. 78, at 7, 9-12. That purported injury is now moot as the ICE policy favoring release no longer applies to Molina. The fact that ICE has continued to detain Molina in compliance with its separate statutory authority under Section 1226(a) does not constitute an ongoing injury to Molina.

**B.   Molina does not identify another ongoing injury-in-fact sufficient to confer standing.**

As noted above, the Amended Complaint cannot rely on Molina's detained status as an injury that would give him standing to allege First Amendment retaliation. The only other "ongoing" retaliation Molina alleges in the Amended Complaint is that he has purportedly been subjected to more frequent searches of his cell at the Batavia Facility, after he submitted his February 2024 Civil Rights Complaint. Those allegations are insufficient to confer standing.

The allegations in the Amended Complaint that Molina has been subjected to cell searches "nearly every day" and that "[o]fficers are searching Plaintiff Molina's cell more frequently than other cells in his unit," (Am. Compl. ¶ 146) do not constitute a "concrete harm" for purposes of Article III standing. A search of a detainee's cell is inadequate, as a matter of law, to show injury sufficient to confer standing. *See Battice v. Phillip*, No. 04 Civ. 669, 2006 WL 2190565, at *7

(E.D.N.Y. Aug. 2, 2006) (noting courts in the Second Circuit have reasoned that because "a prisoner has no reasonable expectation of privacy in his or her prison cell . . . a search of an inmate's cell, even for retaliatory reasons, . . . does not implicate a constitutional right" (collecting cases)); *Walker v. Goord*, No. 98 Civ. 5217, 2000 WL 297249, at *4 (S.D.N.Y. Mar. 22, 2000) (holding that searches of cells do not implicate a constitutional right even if the search is arbitrary or retaliatory). Thus, because the alleged increased cell searches, standing alone, "cannot be the basis of a retaliation claim," *Corley v. City of New York,* No. 14 Civ. 3202, 2017 WL 4357662, at *20 (S.D.N.Y. Sept. 28, 2017), this "allegation is insufficient by itself to demonstrate injury." *Bilal v. White*, 494 F. App'x 143, 147 (2d Cir. 2012).

Moreover, the allegation that Molina has been subjected to near daily cell searches is meritless. Despite Molina's allegation to the contrary, in fact, Molina's cell has only been searched approximately 3 to 4 times per month, in keeping with the general practice in his detention unit. *See* Harvey Decl. ¶¶ 6-7. And Molina's cell has been subjected to the same frequency of searches as those of other detainees housed in his unit. *Id.* ¶ 7. Indeed, Molina's cell has not been subjected to daily or near daily cell searches for any reason, *id.,* and certainly not as retaliation for engaging in protected conduct. Because Molina's allegation of more frequent cell searches is readily refuted it cannot form the basis for subject matter jurisdiction. *See, e.g., Carter*, 822 F.3d at 57 (where defendant makes "a fact-based Rule 12(b)(1) motion, proffering evidence beyond the pleading … plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant") (citation omitted) (cleaned up).

Furthermore, Molina's allegations that he was subjected to "abusive treatment" by a guard, (Am. Compl. ¶ 143), and that he is "only permitted out of his cell for approximately five hours per day," (Am. Compl. ¶ 142), are not retaliatory injuries at all—let alone ongoing injuries which

confer standing. *First*, the alleged abusive treatment Molina experienced from an officer at the Batavia Facility, even as pled in the Amended Complaint, occurred *prior* to Molina engaging in any protected conduct at the facility. And the "abusive treatment" he was allegedly subjected to was no more than verbal abuse—which does not rise to the level of a cognizable injury. *See Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (stating that "disrespectful comments directed at an inmate generally do not rise to" the level of retaliation). Indeed, Molina's own February 2024 Civil Right Complaint, concerning the "conditions of confinement at Batavia," which was incorporated into the Amended Complaint at paragraph 145, notes only that Molina was "yelled at" twice by an officer at Batavia. *See* Farber Decl., Ex. 1 at 4.[4] *Second*, Molina's allegation that he is locked in his cell for 19 hours a day is unsupported. In fact, Molina—and all detainees in his unit—are allowed out of their cells an average of 6.5 to 7 hours per day based on a set schedule. *See* Harvey Decl. ¶¶ 4-5. In addition, Molina is allowed out of his cell, even when he is scheduled to be in his cell, for various reasons, including visitation, medical appointments, voluntary work assignments, law library, and in order to attend religious studies. *Id.* ¶ 5. Because Molina's allegations are controverted the Court should afford them no weight. *See e.g., Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993) (if the movant denies or controverts the complainant's jurisdictional allegations, the motion is a factual challenge and the allegations of the complainant do not control).

---

[4] Molina's complaint submitted by his counsel states: "Also, on two occasions, Officer C. Nichols has yelled at Mr. Molina for no apparent reason. Most recently, on February 9, 2024, Mr. Molina went to pill call. While there, Officer C. Nichols yelled at him for no apparent reason and told him to shut up. Mr. Molina has witnessed Officer Nichols speak to other detained people in this manner." Farber Decl., Ex. 1 at 4.

Moreover, besides being factually unsupported, the allegedly limited time spent outside of his cell is not an injury specific to him. In the February 2024 Civil Right Complaint, Molina states that *all of the detainees in his unit* are "typically allowed out of their cells for about five hours per day."[5] Thus, Molina's claimed injury is one shared by all detainees in his unit—and not personal to him as required to confer standing. *See Bilal*, 494 F. App'x at 147 (to satisfy "Article III's injury-in-fact requirement," the asserted harm must be "personal to the inmate and concrete, as opposed to speculative"). Finally, the Amended Complaint does not allege that Molina is locked in his cell for 19 days as retaliation for his protected speech. *Cf.* Am. Compl. ¶ 142. As a result, Molina fails to allege a current, ongoing injury fairly traceable to the Federal Defendants' conduct for purposes of Article III standing.

### C. Molina does not demonstrate a likelihood of future harm and the existence of an official policy necessary for standing to pursue prospective relief.

Molina's claims must be dismissed for lack of standing for the additional reason that he fails to demonstrate both a likelihood of future harm and the existence of an official ICE policy authorizing retaliation. *See Shain v. Ellison*, 356 F.3d 211, 216 (2d Cir. 2004). While Molina allegedly suffered retaliation at the hands of ICE in the *past*, Molina offers no nonconclusory allegations of certainly impending injuries sufficient to support the *prospective* relief he now seeks. Molina asserts he has a "credible fear" of future retaliation because (1) "he remains in ICE custody"; (2) he alleges he was subjected to retaliation at OCJ; and (3) he may be subjected to

---

[5] Molina's February 2024 Civil Rights Complaint states: "Mr. Molina is housed in A1, a general population housing unit comprised of two-person cells. He and others in his unit are typically allowed out of their cells for about five hours per day, which includes the time allotted for meals and showers." Farber Decl., Ex. 1 at 1-2; *see also id.* at 2 ("Batavia provides five hours *total* out-of-cell time to people in Mr. Molina's general population unit, which includes the time allotted for showering and meals.").

"ICE's broader pattern and practice of retaliating against people in their custody who engage in conduct protected by the First Amendment." ECF No. 66 at 10-11. However, these allegations fail to satisfy the injury-in-fact requirement for purposes of Article III.

"A plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (citing *Lyons*, 461 U.S. at 105-06). In *Lyons*, the plaintiff sought declaratory and injunctive relief against the Los Angeles police department because he claimed that he had been illegally choked by police officers. *Lyons*, 461 U.S. at 98. The Supreme Court dismissed plaintiff's claim for injunctive relief for lack of standing, holding that in order to allege standing, Lyons would need to establish "(1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, … or, (2) that the City ordered or authorized police officers to act in such manner." *Lyons*, 461 U.S. at 106 (emphasis in original). Accordingly, to establish standing for prospective equitable relief, a plaintiff "must demonstrate *both* a likelihood of future harm *and* the existence of an official policy or its equivalent." *Shain*, 356 F.3d at 216 (emphasis in original) (citing *Lyons*, 461 U.S. at 105-06 and *Deshawn E.,* 156 F.3d at 344-45). Molina does not and cannot do so here.

     1.  <u>Molina fails to demonstrate a likelihood of future harm.</u>

Molina's conclusory allegation that he fears retaliation in the future is insufficient to establish a likelihood of future harm. *See* Am. Compl. ¶ 147 ("Based on ICE's past retaliation against him for his advocacy, Plaintiff Molina expects ICE will continue to target him for retaliation as long as he remains detained . . . .").[6] Such assertions offer no more than his subjective

_____

[6] Molina's claim that he fears retaliation at OCJ is clearly implausible. Molina was transferred out of OCJ on or around July 26, 2022. Am. Compl. ¶ 105. On or around December 18, 2023, he was

fear that he may be retaliated against in the future. *See, e.g., Lujan*, 504 U.S. at 564 n.2 (noting that the concept of imminent injury "has been stretched beyond the breaking point where, as here, the plaintiff alleges only an injury at some indefinite future time"); *Clapper*, 568 U.S. at 418 ("Because '[a]llegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm,' . . . the plaintiffs in *Laird*—and respondents here—lack standing." (quoting *Laird v. Tatum*, 408 U.S. 1, 13-14 (1972)). The fact that he was allegedly retaliated against in the past when he engaged in protected conduct (over two years ago at OCJ) does not lead to the conclusion that any retaliation will occur in the future. *See, e.g., Medina v. City of New York*, No. 19 Civ. 9412 (AJN), 2020 WL 7028688, at *5 (S.D.N.Y. Nov. 30, 2020) ("The mere fact that such conduct brought the Plaintiff into contact with the NYPD in a way that resulted in the use of excessive force does not compel the conclusion that the Plaintiff faces a real and imminent threat of reoccurrence."). Moreover, as detailed above, Molina's allegations that he is subjected to harassing cell searches at the Batavia Facility on account of his engaging in protected conduct are unsupported. As a result, he fails to demonstrate a likelihood of future harm.

2.   Molina fails to allege the existence of an official policy or its equivalent.

Molina has also failed to allege that any retaliation was conducted pursuant to an "official policy or its equivalent" necessary to confer standing. As noted above, a plaintiff "must

_____

transferred back to the New York area and is currently detained at Batavia. *Id.* ¶ 140. Molina alleges no facts showing that he faces certainly impending injury at OCJ. While he claims he fears returning to OCJ, *see id.* ¶ 141, the Federal Defendants have agreed by stipulation, and the Court has *ordered*, ICE not to transfer Molina back to OCJ, *see* ECF No. 58 at ¶ 3. Accordingly, there is no basis for Molina to believe he will be returned to OCJ, and/or retaliated against by the Federal Defendants in the future for engaging in constitutionally protected conduct at OCJ.

demonstrate *both* a likelihood of future harm *and* the existence of an official policy or its equivalent." *Shain*, 356 F.3d at 216 (emphasis in original).

Molina claims that ICE has engaged in a "continued pattern of retaliatory conduct" against him (ECF No. 85 at 4), but Molina offers no nonconclusory allegations to support the contention that ICE has a formal policy (or its equivalent) of retaliating against detainees who engage in protected conduct. At most, Molina asserts that ICE has retaliated against him in the past, and he makes the conclusory assertion that those actions are part of ICE's "routine practice." *See* Am. Compl. ¶ 82 ("These actions are part of ICE's routine practice of retaliating against hunger strikers . . ."); *id.* ¶ 135 ("ICE, in partnership with its contracted facilities, has long used its vast web of detention centers to transfer people in retaliation for engaging in protected speech or conduct, including hunger strikes."). However, Molina fails to point to the existence of any official ICE policy or its equivalent authorizing such retaliation. *See, e.g., Peck v. Baldwinsville Cent. Sch. Dist.*, 351 F. App'x 477, 479 (2d Cir. 2009) (concluding plaintiff lacked standing for declaratory and prospective injunctive relief where he "points to no policy or custom (or an equivalent) suggesting that any defendant regularly violates students' free speech rights"); *Curtis v. City of New Haven*, 726 F.2d 65, 68 (2d Cir. 1984) (finding plaintiffs lacked standing because they could not show that they would be assaulted with mace in the future absent any police department order authorizing the use of mace in the illegal manner challenged by the plaintiffs).

Indeed, ICE's policy is that retaliation against detainees who file complaints and grievances is prohibited. *See* ICE, Performance Based National Detention Standards 2011, Section 6.2(V)(G), *available at* https://www.ice.gov/doclib/detention-standards/2011/6-2.pdf ("Staff shall not harass, discipline, punish or otherwise retaliate against a detainee who files a complaint or grievance or who contacts the DHS Office of the Inspector General."); *cf. Amadei v. Nielsen*, 348 F. Supp.

3d 145, 158 (E.D.N.Y. 2018) (finding plaintiffs had standing where defendants' statements admitted that searches were "part of a 'routine' practice conducted pursuant to a formal 'policy'"). Because ICE's policy is that retaliation against detainees is prohibited, and Molina offers no plausible allegations to the contrary, he does not have standing to pursue his claims.

Molina lacks standing because he neither demonstrates a likelihood of future harm nor the existence of an official policy or its equivalent. As a result, his claims for injunctive and declaratory relief must be dismissed.

## CONCLUSION

For the reasons set forth above, the Court should dismiss Molina's claim against the Federal Defendants.

Dated:  New York, New York
        August 8, 2024

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney for the
Southern District of New York
*Attorney for the Federal Defendants*

By:    */s/ David E. Farber*
       DAVID E. FARBER
       TARA SCHWARTZ
       Assistant United States Attorneys
       86 Chambers Street, 3rd Floor
       New York, New York 10007
       Telephone: (212) 637-2772
       E-mail: david.farber@usdoj.gov