# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NAHUM GILBERTO ORTIZ; DENNY MOLINA CANTOR; LUCAS PALACIOS ALVARADO; JEREMIAS LOPEZ LOPEZ; ELMER MOSCOSO GUERRA; and LUIS GONZALEZ CARBAJAL, <br><br> Plaintiffs, <br><br> v. <br><br> ORANGE COUNTY, NEW YORK; PAUL ARTETA, Sheriff of Orange County, in his official and individual capacity; CARL DUBOIS, former Sheriff of Orange County, in his individual capacity; KENNETH JONES, former Undersheriff of Orange County, in his individual capacity; U.S. DEPARTMENT OF HOMELAND SECURITY; U.S. IMMIGRATION AND CUSTOMS ENFORCEMENT; and KENNETH GENALO, Acting ICE Field Office Director, in his official capacity, <br><br> Defendants. | Case No. 23-cv-2802 (VLB) |

## PLAINTIFFS' OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

NEW YORK CIVIL LIBERTIES UNION
    FOUNDATION

By Guadalupe Aguirre
Antony Gemmell
Kathryn Sachs
Amy Belsher
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3399
laguirre@nyclu.org

THE BRONX DEFENDERS

By Niji Jain
360 E. 161st Street
Bronx, N.Y. 10451
Tel: 718-838-7878
nijij@bronxdefenders.org

Dated: August 22, 2024
New York, N.Y.

CENTER FOR CONSTITUTIONAL
    RIGHTS

By Caitlin J. Sandley*
P.O. Box 486
Birmingham, A.L. 35201
Tel: 212-614-6443
csandley@ccrjustice.org

By Samah Sisay
Astha Sharma Pokharel
Baher Azmy
666 Broadway, 7th Floor
New York, N.Y. 10007
Tel: 212-614-6484
ssisay@ccrjustice.org

*Admitted *pro hac vice*

*Counsel for Plaintiffs*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

PRELIMINARY STATEMENT ........................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

ARGUMENT ........................................................................................................................ 10

    I.    CONSIDERING THE UNCONTROVERTED FACTS IN THE COMPLAINT AND
           PLAINTIFF MOLINA'S EXTRINSIC EVIDENCE, PLAINTIFF MOLINA
           PLAINLY HAS STANDING. .................................................................... 10

    II.    FEDERAL DEFENDANTS FAIL TO CONTROVERT MATERIAL ALLEGATIONS
           IN PLAINTIFFS' COMPLAINT CONFERRING STANDING. ............................. 16

CONCLUSION ...................................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**................................................................................................Page(s)

*Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140 (2d Cir. 2011)...............................2, 3, 10

*APWU v. Potter*, 343 F.3d 619 (2d Cir. 2003)................................................................19

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................................................10

*Battice v. Phillip*, No. 04-cv-669, 2006 WL 2190565 (E.D.N.Y. Aug. 2, 2006) ........................14

*Carter v. HealthPort Techs., LLC*, 822 F.3d 47 (2d Cir. 2016)....................................2, 3, 19, 20

*Carver v. City of New York*, 621 F.3d 221 (2d Cir. 2010) ......................................................12, 13

*Chevron Corp. v. Donzinger*, 833 F.3d 74 (2d Cir. 2016) ........................................................11

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983) ....................................................11, 12, 13, 16

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) ................................................................10

*Corely v. City of New York*, No. 14-cv-3202, 2017 WL 4357662 (S.D.N.Y. Sept. 28, 2017) ......14

*Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340 (2d Cir. 1998) ............................11, 12, 13, 16

*Dorsett v. Cnty. of Nassau*, 732 F.3d 157 (2d Cir. 2013) ..............................................10

*Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126 (2d Cir. 1976)......................2

*Gill v. Pidlypchak*, 389 F.3d 379 (2d Cir. 2004)..................................................................14, 15

*Harty v. West Point Realty, Inc.*, 477 F. Supp. 3d 163 (S.D.N.Y. 2020)....................................10

*Hayes v. Dahlke*, 976 F.3d 259 (2d Cir. 2020) ..................................................................13

*Hettler v. Entergy Enterprises, Inc.*, 15 F. Supp. 3d 447 (S.D.N.Y. 2014) ................................2

*Hoskins v. Lenear*, 395 F.3d 372 (7th Cir. 2005) ................................................................15

*H'Shaka v. Drown*, No. 03-cv-937, 2007 WL 1017275 (N.D.N.Y. Mar. 30, 2007) ....................15

*Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006 (2d Cir. 1986) ................................................16, 19

*Knife Rights, Inc. v. Vance*, 802 F.3d 377 (2d Cir. 2015)........................................................12, 13

*Kotler v. Boley*, No. 21-1630, 2022 WL 4589678 (2d Cir. Sept. 30, 2022) ................................16

*M.E.S., Inc. v. Snell*, 712 F.3d 666 (2d Cir. 2013) ................................................................16, 19

*Phillips v. Bowen*, 278 F.3d 103 (2d. Cir. 2002) ...........................................................15

*Raines v. Byrd*, 521 U.S. 811 (1997) .............................................................................12

*Shain v. Ellison*, 356 F.3d 211 (2d Cir. 2004) ...............................................................12

*Shanks v. Vill. of Catskill Bd. of Trustees*, 653 F. Supp. 2d 158 (N.D.N.Y. 2009) .......15

*Silva v. Farrish*, 47 F.4th 78 (2d Cir. 2022) ..................................................................13

*Susan B. Anthony List v. Driehaus*, 573 U.S 149 (2014)..............................................11, 12, 16, 20

*Walker v. Goord*, No. 98-cv-5217, 2000 WL 297249 (S.D.N.Y. Mar. 22, 2000)...........14

*Williams v. Casey*, 657 F. Supp. 921 (S.D.N.Y. 1987)..................................................19

**Statutes, Rules and Regulations**

8 U.S.C. § 1226(a) ...........................................................................................................4

Federal Rule of Civil Procedure 12(b)(1) ............................................................ *passim*

**Other Authorities**

United States Immigration and Customs Enforcement Directive 16004.1 ......................................4

## PRELIMINARY STATEMENT

Before the Court is the Federal Defendants' second motion to dismiss Plaintiff Denny Molina Cantor's First Amendment claim for injunctive and declaratory relief under Federal Rule of Civil Procedure 12(b)(1), arguing that he no longer has standing.[1] Details of Plaintiff Molina's immigration proceedings and detention location and conditions, which are almost entirely in Federal Defendants' control, have changed over the 16 months this lawsuit has been pending. But the critical facts remain: Since the filing of this litigation, Plaintiff Molina has exercised his First Amendment rights on various occasions and suffered adverse actions by Federal Defendants in response. Without relief from this Court, this cycle of speech and retaliation will continue indefinitely. Plaintiff Molina has standing to seek declaratory and injunctive relief, and Federal Defendants' motion to dismiss should be denied.

In support of their motion, the Federal Defendants argue that Plaintiff Molina (1) can no longer sustain an ongoing injury-in-fact sufficient to confer standing and (2) has not demonstrated a likelihood of future harm and the existence of an official ICE policy or custom of retaliation sufficient to pursue prospective relief. In further support of their motion, the Federal Defendants introduce extrinsic evidence to attempt to controvert Plaintiff Molina's allegations regarding the ongoing adverse actions he experiences in ICE custody, namely punitive confinement and uniquely frequent and harassing retaliatory cell searches. The Federal Defendants' arguments fail for two reasons. First, even considering the extrinsic evidence proffered by both parties, Plaintiff Molina plainly establishes both a substantial risk of future harm and ongoing injuries against him, including discipline for hunger striking and a uniquely

---

[1] The Court denied Federal Defendants' prior motion to dismiss. Op. & Order, Jan. 10, 2024, ECF No. 53. In addition, the Court rejected Federal Defendants' related standing arguments in opposition to Plaintiffs' Motion for Leave to Amend the Complaint, Op. & Order, May 31, 2024, ECF No. 78.

higher volume of harassing cell searches, due to his advocacy for improved detention conditions. Second, Federal Defendants' extrinsic evidence concerning cell searches and out-of-cell time is immaterial and carries little weight because it is not competent, not based on the requisite personal knowledge, and conclusory, and regardless does not contravene Plaintiff Molina's allegations. Consequently, this Court can rule solely based on the uncontroverted allegations in the First Amended Complaint, which firmly establish Plaintiff Molina's standing given his likelihood of future injury by the Federal Defendants. Therefore, whatever weight this Court assigns to the extrinsic evidence, Plaintiff Molina has standing, and this Court should deny the motion.

## STATEMENT OF FACTS

When assessing a challenge to its subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) ("Rule 12(b)(1)"), a court generally must accept all uncontroverted facts in the complaint as true and draw all reasonable inferences in favor of the party asserting jurisdiction. *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011); *Hettler v. Entergy Enterprises, Inc.*, 15 F. Supp. 3d 447, 450 (S.D.N.Y. 2014) (Briccetti, J.). However, a defendant making a fact-based challenge to subject matter jurisdiction under Rule 12(b)(1) may submit evidence outside the pleadings. *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016); *Hettler*, 15 F. Supp. 3d at 450 (stating that a court may review evidence outside of the pleadings when resolving disputed jurisdiction fact issues) (Briccetti, J.). In opposition, plaintiffs must come forward with evidence of their own "if the [evidence] submitted on a 12(b)(1) motion . . . reveal[s] the existence of factual problems" in the assertion of jurisdiction. *Exch. Nat'l Bank of Chicago v. Touche Ross & Co.*, 544 F.2d 1126, 1131 (2d Cir. 1976). However, if the defendant's extrinsic evidence is "immaterial because it does not contradict plausible allegations that are themselves sufficient to show standing," plaintiffs "are entitled to rely on the allegations in [their]

2

[p]leading[s]." *Carter*, 822 F.2d at 57. In the event the defendants' extrinsic evidence is both "material and controverted, the district court will need to make findings of fact in aid of its decision as to standing." *Id.*

In support of their Rule 12(b)(1) motion, the Federal Defendants introduce extrinsic evidence, through declaration and documentary evidence attached as exhibits, to challenge specific facts concerning Plaintiff Molina's allegations of ongoing retaliation while he remains detained at the Buffalo Federal Detention Center in Batavia, New York ("Batavia"). However, the Federal Defendants do not challenge the vast majority of facts as alleged by Plaintiff Molina in the First Amended Complaint. The following facts remain uncontroverted and therefore the Court should accept them as true. *See Amidax Trading Grp.*, 671 F.3d at 145.

*The Plaintiffs' Uncontroverted Facts*

Plaintiff Molina is one of six noncitizens previously incarcerated on behalf of Immigration and Customs Enforcement ("ICE") at the Orange County Correctional Facility ("Orange County Jail or "OCJ") who initiated this civil rights action after the Federal and County Defendants repeatedly retaliated against them in response to their sustained advocacy about the inhumane conditions of their confinement. *See generally* First Amended Complaint ("FAC"), ECF No. 81. Plaintiffs engaged in a collective campaign to alert the public to the racist and abusive treatment they were receiving at OCJ. As part of these efforts, the Plaintiffs submitted formal and informal grievances, including multiple administrative complaints to the Defendant Department of Homeland Security ("DHS"), provided testimony to the New York City Council hearing inquiring into conditions at OCJ, spoke with various media outlets, and engaged in a multi-day hunger strike. *Id.* ¶¶ 5, 34, 47-52, 55, 61-84, 94-102. In response, jail officials, in close coordination with ICE, attempted to silence the Plaintiffs through various

means, including: (1) assigning them disciplinary segregation for refusing OCJ meals; (2) subjecting the Plaintiffs, including Plaintiff Molina, to searches of their cells and confiscating personal items and commissary; and (3) confiscating their tablets or removing communications applications, thus preventing them from communicating with others inside and outside the jail. *Id.* ¶¶ 78-82; 117-135. And, when those measures failed to stop the Plaintiffs' continued advocacy for better detention conditions and treatment, the Defendants (4) coordinated the July 2022 transfer of Plaintiff Molina and one other Plaintiff to detention facilities in the Southern United States, hundreds of miles from New York and their families and attorneys. *Id.* ¶¶ 78-82, 117-135. Plaintiff Molina was initially detained in Mississippi and subsequently transferred to a facility in Louisiana. *Id.* ¶¶ 120-121.

In October 2023, while still detained in the Louisiana, Plaintiff Molina won immigration relief from removal in accordance with the Convention Against Torture ("CAT") after an immigration judge found he was likely to be tortured if returned to his country of origin. *Id.* ¶ 137. Longstanding ICE policy, namely ICE Directive 16004.1, dictates that individuals granted relief under CAT should promptly be released absent exceptional circumstances. *Id.* ¶ 137. Yet, Plaintiff Molina remained detained in ICE custody. *Id.* ¶¶ 137-146. In December 2023, Plaintiff Molina's immigration attorney submitted a request to ICE seeking Plaintiff Molina's release or transfer to a facility closer to his family in New York. *Id.* ¶ 139. Plaintiff Molina subsequently was transferred—his third transfer since his detention at OCJ—to Batavia on or about December 22, 2023, where he remains detained pursuant to a federal discretionary detention statute, 8 U.S.C. Section 1226(a). *Id.* ¶¶ 13, 140.

At Batavia, Plaintiff Molina has encountered similarly abhorrent conditions of confinement, including being locked in his cell for the vast majority of the day and has

experienced increased anxiety and depression as a result. FAC ¶¶ 142-147. In response to these conditions, Plaintiff Molina has engaged in continued advocacy while at Batavia. In February 2024, Plaintiff Molina submitted grievances and a civil rights complaint with the Federal Defendants. *Id.* ¶¶ 143, 145. Plaintiff Molina also spoke out about the conditions at Batavia to the media and advocacy groups, as well as Batavia guards, ICE officers, and at least one DHS investigator. *Id.* ¶ 144. Despite his fears that ICE will continue to retaliate against him, Plaintiff Molina intends to continue advocating for himself and others in detention. *Id.* ¶ 147.

*The Federal Defendants' Extrinsic Evidence*

In support of their motion to dismiss, the Federal Defendants proffer extrinsic evidence to controvert certain relevant allegations by Plaintiff Molina: Federal Defendants have continued to engage in a practice of retaliation against Plaintiff Molina due to his speech activity concerning the conditions at Batavia, *see id.* ¶¶ 142-46; specifically, within days after he submitted the civil rights complaint in February 2024, ICE began targeting Plaintiff Molina, searching his cell nearly every day, sometimes twice a day and searching his cell more frequently than other cells in his unit, *id.* ¶ 146; and Plaintiff Molina is confined to his cell for the vast majority of the day, *id.* ¶ 142. The Federal Defendants present extrinsic evidence asserting that, contrary to his allegations, ICE has not subjected Plaintiff Molina to the volume of cell searches he alleges and that searches of his cell have not occurred more frequently than searches of other cells in his unit. Decl. of George P. Harvey, Jr. ("Harvey Decl.") ¶ 7, ECF No. 95. To support this contention, the Federal Defendants proffer record logs for so-called "shakedowns" conducted at Batavia for Plaintiff Molina's detention unit, Alpha 1;[2] Federal Defendants describe shakedowns as routine, but random, cell inspections or searches. *See* Harvey Decl. ¶¶ 6, 7; Ex. B to Harvey Decl., ECF

---

[2] The Federal Defendants indicate that Plaintiff Molina is and has been held in the Alpha 1 unit in cell 206, which the Plaintiffs do not contest. *See* Harvey Decl. ¶ 7.

No. 95-2. According to the declarant, Batavia's Assistant Field Office Director George P. Harvey, Jr., shakedowns "are executed with the objective of ensuring safety, controlling contraband, and maintaining a clean and sanitary facility." Harvey Decl. ¶ 6. The record logs span the months of December 2023 to June 2024 and are styled as a grid in which certain letters denote the days during which specific cells were documented as having undergone a shakedown. Ex. B to Harvey Decl., ECF No. 95-2. If a box indicating a particular day of the month and cell is marked "B" a cell is documented as having had a shakedown during an 8 am to 4 pm shift; if it is marked "C" a cell is documented as having had a shakedown during a 4 pm to 12 am shift. Harvey Decl. ¶ 6. In some instances, grid boxes are marked with a crossed-out letter. *See* ECF No. 95-2. The record logs generally show each Alpha 1 cell as having undergone three to four shakedowns per month. *See id.*

Similarly, Mr. Harvey contests Plaintiff Molina's allegations regarding the amount of time he is allowed out of his cell, contending that he and other individuals in Alpha 1 are "allowed out of their cells for approximately 6.5-7 hours a day on average." Harvey Decl. ¶ 5. This, too, is based on a document fashioned as a grid that purports to reflect the scheduled operations for both the upper level or lower level of the Alpha 1 unit; this includes the set time frame for meals, lockdowns, and recreation.[3] *Id.*; Ex. A to Harvey Decl., ECF No. 95-1. The schedule does not indicate, or even have a designated space to indicate, any deviations from the printed schedule. *See id.* For the reasons explained below in Section II, this evidence does not controvert Plaintiff Molina's allegations concerning his experiences with a high volume of cell searches, including at times multiple searches in a day, and the restricted out-of-cell time.

---

[3] For instance, according to the log, during a particular week (week 1), the lower level is scheduled to have breakfast from 7:00 am to 7:20 am on Sunday, recreation at 10:00 am to 11:15 am, lunch at 12:30 pm to 1:00 pm, and so on. *See* Ex. A to Harvey Decl., ECF No. 95-1.

The Federal Defendants also introduce a factual update regarding the status of Plaintiff Molina's immigration case, which the Plaintiffs do not contest. Although Plaintiff Molina won relief under CAT in October 2023, on May 28, 2024, the Board of Immigration Appeals ("BIA") vacated the immigration judge's ruling and remanded Plaintiff Molina's case back to the immigration judge for further proceedings. *See* Decl. of Joseph T. Pujol ("Pujol Decl.") ¶ 15, ECF No. 98. Prior to the BIA's decision, the parties had briefed the Plaintiffs' motion to amend the complaint, which the Federal Defendants opposed arguing that Plaintiff Molina lacked standing due to his lack of an ongoing injury-in-fact. *See* Federal Defs.' Br. Supp. Mot. to Dismiss ("Fed Defs.' Br.") 6, ECF No. 93. The Plaintiffs counter argued, *inter alia*, that Plaintiff Molina's ongoing detention despite being granted CAT relief from the immigration judge was against ICE policy, constituted retaliation, and thus satisfied the injury-in-fact requirement. Pls.' Reply Br. Supp. Mot. to Amend, ECF No. 73 at 7-8. In an order dated May 31, 2024, this Court agreed with the Plaintiffs' and held that Plaintiff Molina's continued detention in contravention of ICE policy satisfied the standing requirement. Op. & Order, ECF No. 78. Because the BIA vacated the immigration judge's decision and remanded for further proceedings, the ICE directive favoring release of individuals who are granted relief under CAT no longer applies. *See* Pujol Decl. ¶ 15.

*Plaintiff Molina's Extrinsic Evidence*

In response to the Federal Defendants' extrinsic evidence, Plaintiff Molina introduces his own sworn declaration attesting to his experiences while detained at Batavia. As argued below, Plaintiff Molina's uncontroverted factual allegations and extrinsic evidence both establish his standing in this case.

In his declaration, Plaintiff Molina reaffirms his fear that ICE will continue retaliating against him. *See* Ex. A, Decl. of Denny Molina Cantor ("Molina Decl.") ¶ 16; *see also* FAC ¶

147. Independent from the advocacy concerning the conditions of confinement at Batavia described in the FAC, Plaintiff Molina details additional and recent occasions when he engaged in protected speech challenging the fact and conditions of his confinement. At the end of June 2024, Plaintiff Molina and others in his unit at Batavia engaged in a hunger strike to protest the lack of out-of-cell time provided to their unit and a recent announcement that detained people would no longer be provided free phone calls to loved ones. Molina Decl. ¶ 14. In response, federal detention officials issued him an Administrative Segregation Order and confined him to his cell for approximately 24 hours. *Id.*

While detained at Batavia, Plaintiff Molina also has spoken to reporters and provided information for complaints to the DHS Office for Civil Rights and Civil Liberties, the DHS Office of Inspector General, and the ICE Office of Immigration Detention Ombudsman about conditions at Batavia. *Id.* ¶ 13. Most recently, Plaintiff Molina has filed a federal habeas petition challenging his prolonged detention and detailing the deplorable conditions of confinement at Batavia. *See id.* ¶ 15; *see also* Petition, *Molina Cantor v. Freden*, 24-cv-00764-LJV (W.D.N.Y. Aug. 15, 2024), ECF No. 1.

In addition to the retaliatory administrative segregation order, Plaintiff Molina has experienced additional retaliatory conduct by the Federal Defendants, including an excessive volume of cell searches that he has consistently experienced since the filing of his February 2024 civil rights complaint and times when his cell was searched more than once in a day. Molina Decl. ¶¶ 6-11. Officers at Batavia also have regularly confiscated Plaintiff Molina's personal items, such as undershirts, socks, and books, conduct to which other detained individuals are not subjected. *Id.* ¶ 10. Molina also continues to be confined to his cell for the vast majority of the day and for more time than indicated by the Federal Defendants' record log. *Id.* ¶ 3. And even

though he has been approved to work as a floor buffer at Batavia, a federal detention officer has refused to allow him to leave his cell even to work. *Id.* ¶ 4.

As alleged in the FAC and affirmed in Plaintiff Molina's declaration, throughout his years-long detention, Plaintiff Molina has consistently exercised his right to make government officials, oversight entities, and the public aware of the detention conditions at ICE facilities and in response the Federal Defendants have pursued a litany of retaliatory action against him, including:

- Disciplinary action, including disciplinary segregation, for refusing meals at OCJ, FAC ¶ 59;

- Prevention of communications with people inside or outside jail through the disabling of tablets at OCJ, FAC ¶ 79;

- Transfer to facilities in Mississippi and Louisiana, hundreds of miles from his community and attorneys, FAC ¶ 105;

- Continued detention despite winning relief from removal, FAC ¶ 137;

- Excessive and targeted search of cells and confiscation of personal items at Batavia, FAC ¶ 146, Molina Decl. ¶¶ 6-11;

- Limited time outside of his cell at Batavia, Molina Decl. ¶¶ 3-5;

- Administrative Segregation Order for refusing meals at Batavia, Molina Decl. ¶ 14.

As detailed below and in light of this long history of retaliatory conduct, Plaintiff Molina clearly meets the standards for establishing an injury-in-fact as well as for seeking prospective equitable relief from the Federal Defendants.

**ARGUMENT**

**I.    CONSIDERING THE UNCONTROVERTED FACTS IN THE COMPLAINT AND PLAINTIFF MOLINA'S EXTRINSIC EVIDENCE, PLAINTIFF MOLINA PLAINLY HAS STANDING.**

The Federal Defendants move to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1). In order to assert that a court has subject matter jurisdiction over a case, a plaintiff must establish standing, which in turn requires a plaintiff "to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision." *Amidax Trading Grp.*, 671 F.3d at 145 (cleaned up); *accord Harty v. West Point Realty, Inc.*, 477 F. Supp. 3d 163, 167 (S.D.N.Y. 2020) (Briccetti, J.). In the context of First Amendment retaliation, "[a] plaintiff has standing if he can show *either* that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm. Various non-speech related harms are sufficient to give a plaintiff standing." *Dorsett v. Cnty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (emphasis in original). In their motion, the Federal Defendants introduce extrinsic evidence solely to contest that Plaintiff Molina has failed to sufficiently allege an injury-in-fact and establish the risk of future harm required in cases seeking forward-looking equitable relief. Therefore, the causal connection and redressability prongs of the standing test are not at issue. *See Amidax Trading Grp.*, 671 F.3d at 145.

To establish standing to seek prospective relief, plaintiffs need only demonstrate specific and plausible facts sufficient to plead the threat of ongoing or future injuries. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "An allegation of future injury may suffice if the threatened injury is certainly impending, *or* there is a substantial risk that the harm will occur."[4] *Susan B. Anthony List*

---

[4] Relying on *Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013), the Federal Defendants misconstrue the law as being satisfied only upon a showing of "certainly impending" future harm. Fed Defs.' Br. 8. In so doing, they excise the "substantial risk" prong of the test as laid out

*v. Driehaus*, 573 U.S 149, 158 (2014) (cleaned up) (emphasis added). Plaintiffs seeking prospective relief satisfy the injury-in-fact standard where they allege that they are likely to suffer future harms similar to those they suffered in the past, or "continue to suffer harm from the challenged conduct." *See Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998) (citation omitted). Past injury, while not enough on its own to confer standing, is relevant; courts consider "[p]ast wrongs" as "evidence bearing on whether there is a real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (cleaned up).

The Federal Defendants misstate the law and argue that to obtain equitable prospective relief, Plaintiff Molina must establish "*both* a likelihood of future harm and the existence of an official ICE policy authorizing retaliation." Fed Defs.' Br. 15 (emphasis added). This Court should reject this argument. In *Lyons*, the plaintiff sought declaratory and injunctive relief barring the illegal use of force against him after he was placed in a prohibited chokehold by police. *Lyons*, 462 U.S. at 97-98. The Supreme Court held that the plaintiff did not have standing to seek prospective relief because he had shown neither a sufficient likelihood that the harm would recur nor the existence of a municipal policy or practice sanctioning the use of chokeholds during arrest. *Id.* at 105-106. The Court thus required an allegation of "another encounter with police" as a threshold requirement, coupled with *either* a showing that police would generally act in a certain way *or* a policy ordering or authorizing the conduct in question. *See id.*

The Federal Defendants cite the Second Circuit's 2004 decision in *Shain v. Ellison*, 356 F.3d 211 (2d Cir. 2004), to support their proposition that the *Lyons* test is conjunctive. Fed Defs.'

---

in *Susan B. Anthony List*, thereby overstating both the level of certainty and degree of immensity required for establishing future injury. *See also*, *Chevron Corp. v. Donzinger*, 833 F.3d 74, 121 (2d Cir. 2016) (cleaned up) (recognizing both "certainly impending" and "substantial risk" tests). Regardless of the test, for the reasons set forth above, Plaintiff Molina sufficiently establishes standing to seek prospective relief.

Br. 15. The Court in *Shain* conflated the requirement in *Lyons* that plaintiffs needed to allege a future *encounter* with police with a requirement to allege that the future encounter would necessarily cause a recurrence of the harm. *See Shain*, 356 F.3d at 215-216. However, in cases both preceding and following *Shain*, the Second Circuit has acknowledged that *Lyons* requires *either* allegations of likelihood of recurrence *or* a policy or its equivalent, but not both. *See Knife Rts., Inc. v. Vance*, 802 F.3d 377, 385 (2d Cir. 2015) (framing the *Lyons* test in the disjunctive); *Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010) (concluding that the test for standing under *Lyons* and *Shain* is "a likelihood that [a plaintiff] will be injured in the future" without requiring the existence of a policy or its equivalent); *Deshawn E. by Charlotte E.*, 156 F.3d at 344 (2d Cir. 1998) (same). Regardless, Molina satisfies either part of the *Lyons* test.[5]

Plaintiff Molina plainly establishes a "substantial risk" or "certainly impending" risk of future harm sufficient to confer standing. *See Susan B. Anthony List*, 573 U.S at 158. Plaintiff Molina remains detained at Batavia where he has remained outspoken about his conditions of confinement. *See generally* Molina Decl. As a result of his advocacy, ICE has continued its pattern of retaliatory conduct against him in various ways. Taking two examples: (1) in response to Plaintiff Molina's participation in a June 2024 hunger strike at Batavia due to, among other things,

---

[5] The Federal Defendants make an additional attempt to heighten the standard for establishing standing in this case. The Federal Defendants rely on *Raines v. Byrd*, 521 U.S. 811 (1997), to argue for an "especially rigorous" standing inquiry, but *Raines* is inapposite. There, six members of Congress challenged the constitutionality of a recently enacted federal law that they opposed in a case brought against officials in the executive branch of government. *Id.* at 814-815. Thus, *Raines* was an exceptional case concerning a dispute between two competing branches of the federal government, not the retaliatory actions by the executive branch against a private person. *See id.* This Court should decline to apply *Raines* here, as it did when deciding Plaintiffs' motion for leave to amend. *See* Op. Order, May 31, 2024, ECF No. 78; Federal Defs.' Opp. Mot. Amend, Apr. 9, 2024, ECF No. 70 at 14-15 (arguing for heightened standard under *Raines*). Regardless, the record before the Court would meet any such standard.

a new ICE policy ending a program that provided free call time to detained individuals, he was issued an administrative segregation order; and (2) shortly after filing a formal civil rights complaint in February 2024, Plaintiff Molina began experiencing an atypically high level of cell searches, sometimes multiple times a day, in addition to having his personal items confiscated. Molina Decl. ¶¶ 5-7, 12; FAC ¶ 146. And Batavia guards continue to target Plaintiff Molina for these frequent, harassing cell searches to this day; most recently, federal detention officers completed two searches of Plaintiff Molina's cell and attempted a third search in the span of a week. Molina Decl. ¶ 9. Others in his unit neither experienced the same frequency of harassing cell searches nor had their personal items confiscated as often as Plaintiff Molina. *Id*. ¶ 10. Coupled with the numerous incidents of uncontroverted "past wrongs" he alleges, these recent incidents bolster the strong evidence of "a real and immediate threat of repeated injury" to Plaintiff Molina. *See Lyons*, 461 U.S. at 102; *accord Silva v. Farrish*, 47 F.4th 78, 88 (2d Cir. 2022) (distinguishing cases lacking standing because they "involved circumstances in which a past injury was unlikely to recur" or the "relied on an accumulation of inferences that were simply too speculative and conjectural" (cleaned up)). And while Plaintiff Molina is not required to demonstrate that ICE has an official policy or custom of retaliation, *see, e.g.*, *Knife Rts., Inc.*, 802 F.3d. at 385; *Carver*, 621 F.3d at 228; *Deshawn E. by Charlotte E.*, 156 F.3d at 344, he does so through the facts alleged in his complaint, *see* FAC ¶¶ 82, 135.

Plaintiff Molina has adequately demonstrated, and Federal Defendants have not controverted, that he has suffered adverse actions and therefore concrete harms that satisfy the injury-in-fact requirement. Forms of solitary confinement, such as the recent administrative segregation order, are adverse actions. *See Hayes v. Dahlke*, 976 F.3d 259, 273 (2d Cir. 2020).

13

The Federal Defendants, however, contend that cell searches, even the excessive and atypical kind Plaintiff Molina has experienced, are "insufficient to confer standing." Fed Defs.' Br. 12. The Federal Defendants' assertion that Plaintiff Molina's frequent harassing retaliatory cell searches are "inadequate, as a matter of law, to show injury sufficient to confer standing" misconstrues the law. *See* Fed Defs.' Br. 12-13 (citing *Battice v. Phillip*, No. 04-cv-669, 2006 WL 2190565, at *7 (E.D.N.Y. Aug. 2, 2006)). Adverse action in the Second Circuit means "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising . . . constitutional rights" and does not require actual deterrence. *See Gill v. Pidlypchak*, 389 F.3d 379, 381 (2d Cir. 2004). Notably, the Second Circuit has not addressed whether a cell search, or, as in this case, cell searches are adverse action. And the cases upon which the Federal Defendants rely to argue cell searches are not adverse action are unpersuasive and distinguishable. First, one district court case involved a single cell search, *see Battice v. Phillip*, 2006 WL 2190565, at *1-2 (N.D.N.Y. Sept. 13, 2011), and another district court considered two cell searches over six months apart, *see Walker v. Goord*, No. 98-cv-5217, 2000 WL 297249, at *1-2 (S.D.N.Y. Mar. 22, 2000)—not the volume of cell searches alleged by Plaintiff Molina, the frequency and nature of which would "deter a similarly situated individual of ordinary firmness from exercising" their First Amendment rights, *see Gill*, 389 F.3d at 381. Second, the decisions are incorrectly premised on a constitutional right-to-privacy analysis rather than the relevant adverse action inquiry.[6] *See Battice*, 2006 WL 2190565, at *7 (characterizing the decisions holding a cell search is not adverse action by courts in the Second Circuit as reasoning "a prisoner has no reasonable expectation of privacy in his or her prison cell"); *Corely v. City of New York*, No. 14-cv-3202, 2017 WL 4357662, at *20

---

[6] Indeed, an adverse act need not independently violate the Constitution to support a retaliation claim, *see Hoskins v. Lenear*, 395 F.3d 372, 375 (7th Cir. 2005).

(S.D.N.Y. Sept. 28, 2017) (relying in part on cases with similar privacy analyses); *but see H'Shaka v. Drown*, No. 03-cv-937, 2007 WL 1017275, at *12 (N.D.N.Y. Mar. 30, 2007) (reasoning that the plaintiff's cell search "would not be considered adverse action as the inmates in SHU are well aware that random searches of their cells are conducted daily, thus, a search would not deter similarly situated inmates from exercising their constitutional rights" (emphasis added)).

Applying the correct analysis here, Plaintiff Molina's cell searches are clearly adverse action. The Federal Defendants' own evidence supports this finding. To the extent the record logs say anything about Batavia's routine shakedown practices (approximately 3-4 shakedowns per month per cell), *see* Ex. B to Harvey Decl., ECF No. 95-2, these records highlight that the high number of cell searches Plaintiff Molina has experienced since February 2024 are not routine and are indeed retaliatory. The searches have caused Plaintiff Molina to feel targeted by federal detention officials. Molina Decl. ¶ 11. And given the harassing manner in which Batavia conducts the searches, as well as their sheer volume compared to others in his unit, *see id.* ¶ 10, it is reasonable to expect similarly-situated people to be harmed in similar ways, which would serve to "deter a person of ordinary firmness from exercising their rights." *See Gill*, 389 F.3d at 381.

Plaintiff Molina remains detained in ICE custody and the Federal Defendants' policies, customs, and practices govern his life. The Federal Defendants have subjected Plaintiff Molina to a litany of retaliatory acts, *see generally* FAC; Molina Decl., and while the retaliatory tactics have frequently shifted, Plaintiff Molina remains unprotected from ICE's established pattern and practice of retaliation. Certainly, "the combination of . . . incidents" Plaintiff Molina has and continues to experience, has "reach[ed] a critical mass" and the Court should find that these incidents "form the basis of constitutional claim," *see Shanks v. Vill. of Catskill Bd. of Trustees*, 653 F. Supp. 2d 158, 166 (N.D.N.Y. 2009) (quoting *Phillips v. Bowen*, 278 F.3d 103, 109) (2d.

Cir. 2002); *accord Kotler v. Boley*, No. 21-1630, 2022 WL 4589678, at *2 (2d Cir. Sept. 30, 2022) (positing that a combination of actions, *including* cell searches, "could deter prisoners "of ordinary firmness" from exercising their rights to file grievances). Because he both "continue[s] to suffer harm from the challenged conduct," *Deshawn E. by Charlotte E.*, 156 F.3d at 344, and establishes a likelihood of future harm, *see Susan B. Anthony List*, 573 U.S at 158; *Lyons*, 461 U.S. at 102, this Court should find that Plaintiff Molina has established standing in this case and deny the Federal Defendants' motion to dismiss. Granting the motion would perversely reward their game of whack-a-mole retaliation and unreasonably deny Plaintiff Molina the opportunity to argue the merits of his case.

## II.    FEDERAL DEFENDANTS FAIL TO CONTROVERT MATERIAL ALLEGATIONS IN PLAINTIFFS' COMPLAINT CONFERRING STANDING.

When considering evidence outside the pleadings in a fact-based challenge under Rule 12(b)(1), courts refer to Rule 56 for guidance. *See Kamen v. Am. Tel. & Tel. Co.*, 791 F.2d 1006, 1011 (2d Cir. 1986). Accordingly, courts must not consider extrinsic evidence that is not "competent" *see id.*, but are "permitted to rely on non-conclusory, non-hearsay" evidence, *M.E.S., Inc. v. Snell*, 712 F.3d 666, 671 (2d Cir. 2013). Moreover, affidavits are insufficient if not based upon personal knowledge, including an explanation of the basis for that knowledge, for conclusory statements contained therein. *Kamen*, 791 F.2d at 1011. Here, Federal Defendants' proffered evidence is not competent, and is immaterial and unpersuasive because it does not controvert Plaintiff Molina's allegations that there is a "substantial risk" of future retaliation by ICE sufficient to confer standing. *See Susan B. Antony List*, 573 U.S at 158.

The relevant facts the Federal Defendants attempt to controvert relate to Plaintiff Molina's allegation that he faced retaliation at Batavia due to his past and continuing advocacy concerning deplorable detention conditions at ICE facilities. Principally, the Federal Defendants

contend that Plaintiff Molina has not been subjected to near-daily cell searches and more frequently than others in his unit and argue that such conduct would nevertheless be insufficient to constitute a concrete harm for standing purposes. Fed Defs.' Br. 12-13. The Federal Defendants also challenge Plaintiff Molina's allegations that he is confined in a unit where individuals are locked in their cells approximately 19 hours per day. *Id.* at 14. The Federal Defendants' extrinsic evidence is not competent, holds little evidentiary weight, and does not controvert Plaintiff Molina's allegations concerning the actual *implementation* of cell searches and the out-of-cell time schedule.

The only relevant extrinsic evidence by the Federal Defendants consists of a declaration by a high-level ICE official who bases his knowledge on a review of record logs pertaining to "shakedowns" and the out-of-cell time schedule. There are several issues with this evidence. First, Mr. Harvey's assertion that Plaintiff "Molina's cell has not been subjected to daily or near daily [sic] cell searches," is not based on any personal knowledge regarding what Mr. Harvey himself has witnessed, but rather a review of documents that may or may not accurately reflect Plaintiff Molina's own experiences with cell searches at Batavia. *See* Harvey Decl. ¶¶ 7, 3 ("According to the monthly reports, Molina . . . was generally subjected to the same frequency of cell searches as all other individuals in the Alpha-1 unit."). Indeed, Plaintiff Molina's sworn declaration demonstrates that they do not. *See* Molina Decl. ¶¶ 6-11. Nowhere in his declaration does Mr. Harvey describe being on the scene for any period of time covered by the documents he reviewed or even having reviewed video footage concerning cell searches. Nor do the Federal Defendants provide any declarations from any guards who are more likely to have personal knowledge regarding the day-to-day operations at Batavia.

Second, Mr. Harvey's declaration at best speaks to Batavia's typical practice regarding cell searches: "*generally* three cells were selected at random to be searched per day," Harvey Decl. ¶ 7 (emphasis added), but Mr. Harvey remarkably does not attest to the accuracy of the documentary evidence he reviewed to come to his conclusions or the ways in which Batavia audits or assures their accuracy.

Third, Mr. Harvey also does not attest to whether this documentary evidence captures the entire universe of cell searches conducted at Batavia. For example, are random "shakedowns" the only cell searches *ever* conducted? Does Batavia ever conduct non-random, targeted cell searches? If so, how does Batavia document those searches? Did Mr. Harvey review that documentation?

Fourth, while cell searches may have occurred as documented in the Federal Defendants' evidence, given Plaintiff Molina's allegations against the Federal Defendants and complaints regarding the conditions at Batavia, coupled with ICE's express prohibition of retaliatory conduct against detained persons, it is not unreasonable to believe that the sorts of suspect, retaliatory cell searches Plaintiff Molina alleges would evade documentation. Indeed, as previously mentioned, by establishing the routine number of "shakedowns" conducted at Batavia's Alpha 1 unit, the Federal Defendants' evidence only further supports Plaintiff Molina's claims that his searches are retaliatory since he experiences a substantially higher number than is typical.

Turning to the out-of-cell time, Plaintiff Molina alleges that he is confined to a celled unit where he is provided, at best, approximately 6 hours of out-of-cell time per day. Molina Decl. ¶ 3; *see* Ex. A, ECF No. 95-1. Federal Defendants again offer Mr. Harvey's sworn statement that he reviewed a document—here, the daily schedule for Plaintiff Molina's unit at Batavia, Harvey

18

Decl. ¶¶ 4-5 and Ex. A, ECF No. 95-1, which suffers from the same infirmities as the extrinsic cell-search evidence. Mr. Harvey offers no statement that he has personally observed this schedule in effect day-in and day-out in unit Alpha 1, nor any basis for his apparent belief that Batavia officers follow the schedule to the letter. A schedule does not prove what actually occurs on a regular basis. Indeed, the schedule offers no room whatsoever for *any* deviation *ever*, which further undermines its credibility for making conclusions about its implementation. Mr. Harvey also offers no explanation for why Plaintiff Molina is confined to unit Alpha 1, where he is indisputably locked in his cell the large majority of the day, and not in another open dorm unit at Batavia where people of similar classification levels are also confined. *See* Harvey Decl.; Molina Decl. ¶ 5. Given the conclusory nature of the evidence and the lack of personal knowledge to support the Federal Defendants' assertions that Plaintiff Molina's allegations about his out-of-cell time also are not true, the Federal Defendants' extrinsic evidence warrants little weight, if any, and does not controvert Plaintiff Molina's allegations about the amount of time he spends locked in his cell at Batavia. *See Kamen*, 791 F.2d at 1011; *M.E.S., Inc.*, 712 F.3d at 671; *Carter*, 822 F.2d at 57.

Federal Defendants present their extrinsic evidence as smoking guns warranting the dismissal of Plaintiff Molina's First Amendment retaliation claim. Far from it. Because the Federal Defendants fail to controvert Plaintiff Molina's jurisdictional allegations,[7] Plaintiff

---

[7] Should the Court disagree that the Federal Defendants' extrinsic evidence is immaterial and fails to controvert the Plaintiffs' allegations, the Court should "take care to give [Plaintiff Molina] ample opportunity to secure and present evidence relevant to the existence of jurisdiction," *APWU v. Potter*, 343 F.3d 619, 627 (2d Cir. 2003) (cleaned up), including through the use of limited jurisdictional discovery, *see Williams v. Casey*, 657 F. Supp. 921, 925 (S.D.N.Y. 1987) ("As a general rule, before dismissing a suit for lack of jurisdiction a court will allow limited jurisdictional discovery" (citing *Kamen*, 791 F.2d at 1011)). Jurisdictional discovery would provide the Plaintiffs with a reasonable opportunity to further establish, such as through corroborating evidence, Plaintiff Molina's ongoing retaliation and/or likelihood of future harm, or ICE's custom of retaliation.

Molina is entitled to rely on his pleadings to establish standing. *See Carter*, 822 F.3d at 56-57. As alleged, Plaintiff Molina's excessive, harassing cell searches and limited out-of-cell time constitute adverse action, satisfying the injury-in-fact requirement for the reasons outlined in Section I. And because these searches and cell confinement are part of the Federal Defendants' "continued pattern of retaliatory conduct," Op. & Order 11, May 31, 2024, ECF No. 78, and Plaintiff Molina continues to engage in First Amendment activity, FAC ¶ 147, he has sufficiently established a likelihood of future harm sufficient to confer standing. *See Susan B. Anthony List*, 573 U.S. at 158. Therefore, regardless of the import this Court assigns to the Federal Defendants' evidence, Plaintiff Molina clearly has standing and the Federal Defendants' motion fails.

## **CONCLUSION**

For the foregoing reasons, this Court should find that Plaintiff Molina has standing to bring his claim against the Federal Defendants and deny the motion to dismiss.

---

This is particularly significant in this case "where the facts, for which discovery is sought, are peculiarly within the knowledge of the opposing party," given that the Federal Defendants control virtually every aspect of Plaintiff Molina's daily life. *See Gualandi v. Adams*, 385 F.3d 236, 244 (2d Cir. 2004); *accord D.J.C.V. v. United States*, 605 F. Supp. 3d 571, 605 (S.D.N.Y. 2022).

Dated: August 22, 2024
    New York, N.Y.

Respectfully Submitted,

NEW YORK CIVIL LIBERTIES UNION
    FOUNDATION

*/s/ Guadalupe Aguirre*
Guadalupe Aguirre
Antony Gemmell
Kathryn Sachs
Amy Belsher
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300
laguirre@nyclu.org

CENTER FOR CONSTITUTIONAL
    RIGHTS

Caitlin J. Sandley*
P.O. Box 486
Birmingham, A.L. 35201
Tel: 212-614-6443
csandley@ccrjustice.org

Samah Sisay
Astha Sharma Pokharel
Bahar Azmy
666 Broadway, 7th Floor
Tel: 212-614-6484
ssisay@ccrjustice.org

THE BRONX DEFENDERS

Niji Jain
360 E. 161st Street
Bronx, N.Y. 10451
Tel: 718-838-7878
nijij@bronxdefenders.org

*Admitted *Pro Hac Vice*

*Counsel for Plaintiffs*