UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
NAHUM GILBERTO ORTIZ; DENNY MOLINA :
CANTOR; LUCAS PALACIOS ALVARADO; :
JEREMIAS LOPEZ LOPEZ; ELMER MOSCOSO :
GUERRA; and LUIS GONZALEZ CARBAJAL, :
                         Plaintiffs, :
                          :
v. :   **OPINION AND ORDER**
                          :
ORANGE COUNTY, NEW YORK; PAUL ARTETA, :   23 CV 2802 (VB)
in his individual and official capacities; CARL :
DUBOIS, in his individual capacity; KENNETH :
JONES, in his individual capacity; U.S. :
DEPARTMENT OF HOMELAND SECURITY; U.S. :
IMMIGRATION AND CUSTOMS ENFORCEMENT; :
and KENNETH GENALO, in his official capacity, :
                        Defendants. :
--------------------------------------------------------------x

Briccetti, J.:

      Plaintiffs Nahum Gilberto Ortiz, Denny Molina Cantor ("Molina"), Lucas Palacios Alvarado, Jeremias Lopez Lopez, Elmer Moscoso Guerra, and Luis Gonzalez Carbajal, all individuals who were civil immigration detainees at the Orange County Jail in Goshen, New York ("OCJ"), bring this Section 1983 action against defendants Orange County, New York; Paul Arteta, Sheriff of Orange County; Carl Dubois, former Sheriff of Orange County; and Kenneth Jones, former Undersheriff of Orange County (together, the "Orange County Defendants"); as well as against the U.S. Department of Homeland Security ("DHS"); U.S. Immigration and Customs Enforcement ("ICE"); and Kenneth Genalo, Acting ICE Field Office Director (together with DHS and ICE, the "Federal Defendants").

      Plaintiffs bring First Amendment claims, principally alleging defendants retaliated against them for complaining about poor conditions in immigration detention facilities.

1

Now pending is the Federal Defendants' motion to dismiss plaintiff Molina's claim for declaratory and injunctive relief pursuant to Rule 12(b)(1) and 12(h)(3). (Doc. #92).[1]

For the reasons set forth below, the motion is DENIED.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343(a)(3).

## BACKGROUND

This is the Court's third decision in this case, having previously denied the Federal Defendants' motion to dismiss and granted plaintiffs' motion for leave to amend and supplement the complaint. (Docs. ##53, 78). Familiarity with those decisions is presumed.

For the purposes of ruling on this motion to dismiss, the Court accepts as true all well-pleaded factual allegations in the complaint and draws all reasonable inferences in plaintiffs' favor. In addition, the parties submitted extrinsic evidence in the form of affidavits and exhibits, which the Court may use to resolve disputed jurisdictional issues of fact. For the sake of brevity, the Court summarizes only those facts relevant to the instant motion.

I.  Alleged Retaliation at OCJ

Starting in November 2021, while his immigration proceedings were pending, Molina was detained at OCJ pursuant to a contract between the facility and ICE. While at OCJ, Molina and others complained internally and publicly about the conditions at OCJ, including by participating in a multiday hunger strike to convince ICE and OCJ to address the conditions and mistreatment they had allegedly experienced while detained. During the hunger strike, OCJ guards allegedly retaliated against Molina and other hunger strikers. Plaintiffs claim OCJ guards placed hunger strikers in segregated confinement; conducted mass searches of their cells,

---

[1] The parties previously agreed to dismiss all other plaintiffs' claims against the Federal Defendants because they had been deported or released from ICE custody. (Docs. ##58, 65, 78).

confiscating and discarding food and personal items; prevented the hunger strikers from using jail-provided tablets to communicate with their attorneys; and issued them disciplinary citations for engaging in group demonstrations. Plaintiffs also allege ICE was informed of and approved of these disciplinary actions, and that an ICE official was present during the hunger strike and OCJ's retaliatory actions.

II.     Continued Detention Following Immigration Judge's Order of Relief

In October 2023, an immigration judge granted Molina relief in his immigration proceedings under the Convention Against Torture. However, ICE continued to detain him pending an appeal to the Board of Immigration Appeals ("BIA") of the immigration judge's order. Plaintiffs allege Molina's continued detention pending the outcome of the appeal contravened ICE's policy to release individuals who have been granted relief by an immigration court absent exceptional circumstances, as they allege no such exceptional circumstances existed.

On May 31, 2024, the Court granted plaintiffs' motion for leave to amend and supplement the complaint. In particular, the Court held plaintiffs adequately alleged Molina had standing to pursue his claims against the Federal Defendants because his continued detention in contravention of ICE policy constituted an injury-in-fact fairly traceable to the Federal Defendants' conduct.

However, by letter dated July 5, 2024, the parties notified the Court of the BIA's May 28, 2024, decision vacating the immigration court's decision. (Doc. #85). The BIA found the immigration judge erred in determining Molina was eligible for relief under the Convention Against Torture and remanded the case to the immigration judge for further proceedings.

3

III.     Alleged Retaliation at Batavia

Around December 21, 2023, ICE transferred Molina to the Buffalo (Batavia) Service Processing Center, an ICE detention facility in Batavia, New York ("Batavia").  Plaintiffs allege Molina experienced harsh restrictions and abusive treatment at Batavia.  Plaintiffs also alleges Molina communicated with the public, ICE officers, and DHS about the conditions of his confinement at Batavia.  Shortly after Molina submitted a complaint to the ICE Office of Civil Rights and Civil Liberties challenging the conditions of his confinement, Batavia guards allegedly began searching Molina's cell more frequently than other cells in his unit—several days per week and sometimes as much as several times a day.  Despite the increase in cell searches, plaintiffs allege Molina intends to continue advocating for himself and others allegedly experiencing poor conditions of confinement in ICE detention.

The Federal Defendants submit the declaration of George P. Harvey, Jr., an Assistant Field Office Director at Batavia who oversees detention, compliance, and processing of noncitizens, in support of their motion.  Harvey states that, according to his review of monthly ICE reports, "Molina's cell has not been subjected to daily or near daily cell searches" but "was searched generally 3 to 4 times per month" and "was generally subjected to the same frequency of cell searches as all other individuals" in his unit.  (Doc. #95 ¶ 7).

In response, plaintiffs submit a declaration from Molina in which he states the logs Harvey reviewed "do not document all the searches of my cell . . . that have occurred since I have been detained at Batavia."  (Doc. #106 ¶ 6).  According to Molina, there have been multiple occasions where officers searched his cell more than once a day, and he has not observed or become aware of officers searching anyone else's cells multiple times in a single day.  Moreover,

Molina claims officers search his cell more frequently than others in his unit.  Molina further claims officers confiscate his undershirts, socks, and books during the searches.[2]

## DISCUSSION

I.  Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory authority or constitutional power to adjudicate it." Nike, Inc. v. Already, LLC, 663 F.3d 89, 94 (2d Cir. 2011).  "[F]ederal courts are courts of limited jurisdiction and lack the power to disregard such limits as have been imposed by the Constitution or Congress."  Durant, Nichols, Houston, Hodgson & Cortese-Costa, P.C. v. DuPont, 565 F.3d 56, 62 (2d Cir. 2009) (quoting Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978)).  The party invoking the Court's jurisdiction bears the burden of establishing jurisdiction exits.  Conyers v. Rossides, 558 F.3d 137, 143 (2d Cir. 2009).

In deciding a Rule 12(b)(1) motion at the pleading stage, the court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor."  Conyers v. Rossides, 558 F.3d at 143.  "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn."  Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir. 1992).  To the extent a Rule 12(b)(1) motion places jurisdictional facts in dispute, the district court may resolve the disputed jurisdictional fact issues by referring to evidence outside the pleadings.  Amidax Trading Grp. v. S.W.I.F.T. SCRL, 671

---

[2]  Molina also states that after he participated in a hunger strike at Batavia in June 2023, he was issued an administrative segregation order and held in solitary confinement.  However, because this conduct post-dates, and is not alleged in, the amended complaint, the Court does not consider it in evaluating the present motion. Gale v. Chicago Title Ins. Co., 929 F.3d 74, 78 (2d Cir. 2019).  ("Jurisdiction must be supported solely by the allegations in the amended complaint" and "depends on the state of things at the time.").  Unless otherwise indicated, case quotations omit all internal citations, quotation marks, footnotes, and alterations.

5

F.3d 140, 145 (2d Cir. 2011). "While a 12(b)(1) motion cannot be converted into a Rule 56 motion, Rule 56 is relevant to the jurisdictional challenge in that the body of decisions under Rule 56 offer guidelines in considering evidence submitted outside the pleadings." Kamen v. Am. Tel. & Tel. Co., 791 F.2d 1006, 1011 (2d Cir. 1986).

II. Standing

Defendants argue Molina lacks standing to seek declaratory and injunctive relief against the Federal Defendants because he is no longer being held in contravention of ICE policy, has failed to allege any other ongoing injury, and cannot demonstrate a likelihood of future harm and the existence of an official policy or its equivalent.

A. Legal Standard

To satisfy the "irreducible constitutional minimum of standing . . . . [t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016). To support standing, an injury must be both "concrete and particularized and actual or imminent, not conjectural or hypothetical." Id. at 339. "This does not mean, however, that the risk of real harm cannot satisfy the requirement of concreteness." Id. at 341. To assert a First Amendment retaliation claim, a plaintiff must establish that the retaliatory conduct "would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Davis v. Goord, 320 F.3d 346, 353 (2d Cir. 2003). A plaintiff asserting a First Amendment retaliation claim "has standing if he can show either that his speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." Dorsett v. County of Nassau, 732 F.3d 157, 160 (2d Cir. 2013).

To establish standing for injunctive or declaratory relief, a plaintiff must show that "he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct." City of Los Angeles v. Lyons, 461 U.S. 95, 101–102 (1983). "An allegation of future injury may suffice if the threatened injury is certainly impending or there is a substantial risk that the harm will occur." Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014). Although "past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief," courts consider past wrongs as "evidence bearing on whether there is a real and immediate threat of repeated injury." City of Los Angeles v. Lyons, 461 U.S. at 102. "The critical standing inquiry is whether a plaintiff is realistically threatened by a repetition of his experience or whether the claim is speculative." Curtis v. City of New Haven, 726 F.2d 65, 67 (2d Cir. 1984).

B.  Analysis

1.  Ongoing Injury

The Federal Defendants argue plaintiffs have not alleged an ongoing injury sufficient to confer standing because Molina's continued detention in contravention of ICE policy is moot and plaintiffs have not adequately alleged any ongoing violations.

The Court agrees Molina's continued detention does not confer standing, but finds plaintiffs have adequately alleged ongoing retaliation as a result of near-daily cell searches.

a.  Continued Detention

The Federal Defendants argue Molina's purported ongoing injury as a result of his continued detention is now moot.

The Court agrees.

The Court previously held Molina's continued detention during the pendency of his immigration proceedings constituted an ongoing injury-in-fact because he was being held in

7

contravention of ICE policy. At the time, an immigration judge had granted Molina relief from removal proceedings because he found Molina was likely to be tortured upon returning to his home country. ICE declined to release Molina while its appeal of the immigration judge's decision to the BIA was pending. Since this Court's last decision, the BIA vacated the immigration judge's decision and remanded for further proceedings. Molina is thus no longer being held in contravention of ICE policy in a manner sufficient to confer standing.

The Federal Defendants argue Molina's continued detention while the BIA appeal was pending was not in contravention of ICE policy, relying on extrinsic evidence that ICE determined Molina should be detained pending appeal because he poses a danger to the community. Because the question of whether Molina's continued detention at that time was sufficient to confer standing is now moot, the Court need not address the Federal Defendants' new arguments or consider this evidence.

Accordingly, the Court will examine plaintiffs' allegations of additional retaliation Molina has purportedly suffered at Batavia.

          b.        <u>Ongoing Retaliation</u>

The Federal Defendants argue plaintiffs have not adequately alleged ongoing retaliation against Molina sufficient to confer standing.

The Court disagrees.

Plaintiffs allege Molina was subjected to cell searches nearly every day and more frequently than others in his unit, and that this pattern began shortly after he spoke out about the conditions of his confinement. Although the Federal Defendants argue cell searches do not constitute a concrete harm for purposes of Article III standing, the cases they rely upon all arise in the context of a constitutional right-to-privacy analysis. The relevant question here, however, is whether the allegedly retaliatory conduct, which may "otherwise not rise to the level of a

constitutional violation," Dolan v. Connolly, 794 F.3d 290, 295 (2d Cir. 2015), would nevertheless "deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights." Davis v. Goord, 320 F.3d 346 at 353. Indeed, the Second Circuit has recognized that a single cell search, together with other actions, could "deter prisoners 'of ordinary firmness' from exercising their constitutional right to file grievances." Kotler v. Boley, 2022 WL 4589678, at *2 (2d Cir. Sept. 30, 2022) (summary order). Accepting plaintiffs' allegations as true, the Court finds the allegedly retaliatory conduct—the near-daily searches of Molina's cell, which represent a significant departure from the searches of other cells in his unit—would deter a similarly situated individual from continuing to challenge the conditions of his or her confinement.

Although the Federal Defendants assert Molina is not in fact being subjected to an increased number of searches, the Court makes no such finding at this stage. The Federal Defendants rely on the Harvey declaration, which states only that Molina's cell, like others in his unit, is randomly searched only three to four times per month. (Doc. #95). But Harvey does not attest to whether cell searches ever occur other than these random searches or whether officers ever conduct cell searches without documenting them. Moreover, Harvey's declaration is based on a review of monthly ICE reports, not on Harvey's personal knowledge of the searches in Molina's housing unit. Finally, Molina filed his own declaration affirming the allegations in the amended complaint and stating the logs do not accurately reflect the frequency with which his cell is searched. (Doc. #106). Drawing all inferences in plaintiffs' favor, Kamen v. Am. Tel. & Tel. Co., 791 F.2d at 1011, the Court finds the Federal Defendants have not established Molina has not been subjected to an increased number of cell searches.

Accordingly, the Court finds plaintiffs' allegations of increased cell searches constitute an ongoing injury sufficient to confer standing.

2. Substantial Risk of Future Harm

In addition, plaintiffs have standing because they have adequately alleged a substantial risk of future harm. The Federal Defendants argue Molina's claim must be dismissed to the extent plaintiffs rely on purported future injuries because plaintiffs are required to, and cannot, demonstrate both a likelihood of future harm and the existence of an official ICE policy.

The Court disagrees.

The Federal Defendants rely on Shain v. Ellison, 356 F.3d 211 (2d Cir. 2004), in which the Second Circuit applied the Supreme Court's decision in City of Los Angeles v. Lyons, 461 U.S. 95 (1983), and held that that "a plaintiff seeking injunctive relief must demonstrate both a likelihood of future harm and the existence of an official policy or its equivalent." Shain v. Ellison, 356 F.3d at 216. However, the Second Circuit's holding in Shain is at odds with both City of Los Angeles v. Lyons and other, more recent Second Circuit decisions.

In City of Los Angeles v. Lyons, 461 U.S. at 105–06, a plaintiff who had been placed in a chokehold by police officers effecting his arrest sued for declaratory and injunctive relief from an alleged municipal policy of excessive force in arrest. The Supreme Court ruled that in order for the plaintiff to demonstrate "a sufficient likelihood that he will again be wronged in a similar way," he "would have had not only to allege that he would have another encounter with the police but also to make the incredible assertion either, (1) that all police officers in Los Angeles always choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation or for questioning or, (2) that the City ordered or authorized police officers to act in such manner." 461 U.S. at 105–06, 111 (emphasis added). As such, the

Supreme Court held that a plaintiff establishes a sufficient likelihood of future injury by alleging that a plaintiff's actions will always result in the same outcome either as a practicality or through the existence of an official policy or its equivalent, but not both.

The Second Circuit has recognized as much in other cases. For example, in Knife Rights, Inc. v. Vance, 802 F.3d 377, 385 (2d Cir. 2015) ("Knife Rights"), the court framed the Supreme Court's test in the disjunctive, holding that a plaintiff seeking injunctive relief must establish "(1) an imminent threat that he would again be stopped by policy, particularly as he expressed no intent to violate any law in the future; or (2) the blanket application of chokeholds by arresting Los Angeles police officers." Id. at 385 (emphasis added). There, plaintiffs brought a pre-enforcement challenge to a state statute that criminalized the possession of certain knives. The court focused on past harms incurred by plaintiffs—including charges, fines, and a deferred prosecution agreement arising from the sale of prohibited knives—and concluded there was a "credible threat of imminent prosecution" if the state again determined that plaintiffs' future sales violated the statute. Id. at 385. Therefore, the court concluded the plaintiffs had sufficiently alleged an injury-in-fact, without considering whether an official policy existed. See id. Similarly, in Carver v. City of New York, 621 F.3d 221 (2d Cir. 2010), the Circuit reiterated that a plaintiff must show a likelihood of future harm without mention of a requirement of an official policy or its equivalent. Id. at 228.

The Federal Defendants attempt to distinguish the Second Circuit's decision in Knife Rights by arguing that it applies a modified test exclusive to pre-enforcement challenges and does not apply to cases involving First Amendment retaliation. But the Federal Defendants cite no authority in support of that argument, and the Court does not find the argument persuasive. Moreover, the Federal Defendants ignore that Shain v. Ellison arises out of an allegedly

unconstitutional strip search and does not address First Amendment retaliation, and therefore is no more on point than Knife Rights.

Accordingly, the Court agrees with plaintiffs that they need only to allege the likelihood of a future harm or the existence of an official policy to have standing. Therefore, the Court considers whether plaintiffs have met either requirement.

### a. Likelihood of Future Harm

The Federal Defendants argue plaintiffs have not alleged a sufficient likelihood of future harm because Molina's subjective fear of future harm is insufficient. The Court agrees fear alone is not sufficient. But here, plaintiffs have adequately alleged a sufficient likelihood of future harm because Molina allegedly continues to experience poor conditions of confinement at Batavia, plans to continue to speak out about these conditions, and has experienced a pattern of retaliatory conduct both at OCJ and Batavia that suggests he is likely to experience similar injuries in the future. Plaintiffs have alleged a pattern of retaliation at OCJ—with ICE's knowledge and consent—involving harassing cell searches, placement in segregated confinement, disrupting communications with their attorneys, and issuing disciplinary citations. This pattern has purportedly continued at Batavia, as plaintiffs allege that days after Molina submitted a civil rights complaint regarding the conditions of confinement at Batavia, officers began searching his cell more frequently than other cells in his unit. This past purportedly retaliatory conduct constitutes adverse actions that would deter similarly situated individuals from engaging in protected First Amendment speech, such that the Court finds plaintiffs have demonstrated a sufficient likelihood of future harm.

To the extent plaintiffs rely on allegations that Molina is subjected to poor conditions at Batavia, such as only being allowed out of his cell for four to five hours per day, these are not sufficient to demonstrate a retaliatory injury-in-fact. As the Federal Defendants argue, plaintiffs

12

concede this alleged policy is not specific to Molina. Moreover, plaintiffs have not alleged any connection between Molina's purported First Amendment protected activity and the allegedly poor conditions at Batavia, and thus is not "traceable to the challenged conduct of the defendant." Spokeo, Inc. v. Robins, 578 U.S. at 338.

Accordingly, the Court finds plaintiffs have alleged a likelihood of future harm sufficient to confer standing.

b. Existence of Official Policy

Plaintiffs also argue they have adequately alleged ICE has an official policy or custom of retaliation, pointing generally to the facts alleged in the amended complaint.

The Court disagrees.

Plaintiffs have not alleged ICE has an official policy of retaliation. Moreover, as the Federal Defendants note, ICE's official policy prohibits retaliating against detainees who file complaints and grievances. See ICE, Performance Based National Detention Standards 2011, Section 6.2(V)(G), available at https://www.ice.gov/doclib/detention-standards/2011/6-2.pdf ("Staff shall not harass, discipline, punish or otherwise retaliate against a detainee who files a complaint or grievance or who contacts the DHS Office of the Inspector General."). Moreover, plaintiffs provide no support for their argument that the mosaic of alleged retaliatory conduct constitutes an official policy or custom that overrides ICE's official stated policy against retaliation.

Accordingly, plaintiffs have not adequately alleged the existence of an official policy or custom of retaliation. However, because plaintiffs have alleged both an ongoing injury and a sufficient likelihood of future harm, either of which is sufficient to confer standing, plaintiffs may pursue Molina's claim against the Federal Defendants for declaratory and injunctive relief.

**CONCLUSION**

The motion to dismiss Molina's claim against the Federal Defendants is DENIED.

The Clerk is instructed to terminate the motion. (Doc. #92).

Dated: November 27, 2024
       White Plains, NY

SO ORDERED:

_____
Vincent L. Briccetti
United States District Judge