

New York Civil Liberties Union
125 Broad Street, 19th Floor
New York, NY 10004

(212) 607-3300

www.nyclu.org

June 27, 2025

**VIA ECF**

Honorable Victoria Reznik
United States Magistrate Judge
The Hon. Charles L. Brieant Jr.
Federal Building and United States Courthouse
300 Quarropas St.
White Plains, NY 10601-4150

        Re:    *Ortiz, et al., v. Orange Cty.*, No. 23-cv-2802 (VLB) (VR) - Parties' Joint Status Report

Hon. Judge Reznik,

    Plaintiffs Nahum Gilberto Oritz, Denny Molina Cantor, Lucas Palacios Alvarado, Jeremias Lopez Lopez, Elmer Moscoso Guerra, and Luis Gonzalez Carbajal ("Plaintiffs") and Defendants Orange County, Paul Arteta, Carl DuBois, and Kenneth Jones ("County Defendants"), by and through their undersigned counsel, respectfully submit this joint status report in compliance with this Court's June 11, 2025 order. ECF 144.

    On May 16, 2025, Plaintiffs filed a letter-motion with the Court requesting a Local Rule 37.2 conference to resolve certain discovery disputes. On June 11, 2025, the Court held a discovery conference regarding the dispute. At the close of that conference, the Court ordered Plaintiffs to submit a revised RFP No. 30 to County Defendants that was "limited to the period of time and conduct identified in the complaint." ECF 144. On June 13, 2025, in compliance with the Court's order, Plaintiffs submitted a revised RFP to County Defendants via electronic correspondence.[1] On June 18, 2025, in compliance with the Court's order, the parties met to confer on the revised RFP.

---

[1] All grievances submitted to OCJ from 9/1/2021 to 12/31/23 by individuals held in ICE custody that reference inadequate or difficulty accessing medical and mental health care (ECF 81 ¶¶ 3, 33-42, 61, 69, 72, 74, 95, 97, 107, 114); inedible, foul-smelling or rotten food (¶¶ 3, 33, 41, 46-47, 52, 61, 69, 72, 74, 96, 114, 116); unsanitary conditions (¶¶ 33, 52, 61, 106, 107-09, 114); verbal insults by facility staff (¶¶ 3, 33, 43-44, 52, 59, 61, 69, 72, 74, 114); assaults or threats by facility staff (¶¶ 33, 59-61, 69, 72, 74, 114); and retaliation by facility staff for speech and/or expressive conduct protected by the First Amendment, including but not limited to making complaints, filing grievances, and participating in hunger strikes, food boycotts, demonstrations by three or more individuals (¶¶ 5, 33, 44-50, 53, 55,

Plaintiffs' Position

County Defendants raised two objections to the revised request. County Defendants objected to the proposed September 1, 2021 to December 31, 2023 timeframe, stating that it was too broad and surpassed the last event involving County Defendants. County Defendants proposed amending the timeframe to end in April 2023. Plaintiffs agreed to review the proposed timeline and affix it to the allegations against the County Defendants pled in the amended complaint. On June 26, 2025, Plaintiffs submitted a revised timeframe to County Defendants via electronic correspondence: from September 1, 2021, when Plaintiffs first submitted grievances related to the conditions they experienced at the Orange County Jail, ECF 81 ¶ 49, to May 7, 2024, as County Defendants' production indicates that Plaintiff Lopez was held within the Orange County Jail until that date, and the amended complaint alleges he suffered an ongoing chilling effect based on County Defendants' retaliatory conduct. *Id.* ¶ 50. It is Plaintiffs' position that this timeframe complies with the Court's June 11, 2025 order, *see* ECF 144, as it limits the timeframe of responsive documents to the timeframe when Plaintiffs were impacted by the actions taken by County Defendants as alleged in the amended complaint.

County Defendants likewise objected to the scope of the conduct outlined in the revised request. Plaintiffs limited the request to only the conduct alleged in the amended complaint, providing pincites to the applicable paragraphs. As Plaintiffs understood County Defendants' position, County Defendants believed that Plaintiffs could only request other persons' grievances that alleged similar conduct to that described in Plaintiffs' grievances. Plaintiffs stated at this conferral, and via electronic correspondence that same day, that the Court's directive was to limit the conduct to only that which was described in the complaint, and that is what Plaintiffs have done. Plaintiffs requested that County Defendants provide a revised version of the current RFP proposal to illustrate County Defendants' position. County Defendants refused to do so.

Second, at a May 28, 2025 meet-and-confer, the parties agreed that County Defendants would begin rolling productions of responsive communications to Plaintiffs' RFP Nos. 14-16 and 24 by July 2, 2025. Plaintiffs agreed to allow for rolling productions over the course of July 2025, in order to accommodate the volume of responsive documents County Defendants anticipated to produce. On June 26, 2025, less than an hour before the Court's June 26, 2025, discovery conference on another matter, County Defendants notified Plaintiffs via electronic correspondence that they would "need more time to start producing responsive emails" and would "update [Plaintiffs] the week of July 7 on where things stand there." Plaintiffs served the County Defendants with RFPs nearly eleven months ago, and to date, the County Defendants have not produced a single email or text message communication. As Plaintiffs informed this Court during the June 26, 2025, discovery conference, Plaintiffs need these documents to begin conducting defendant depositions and, with the forthcoming November 21, 2025 deadline for close of fact discovery, would be open to this Court setting a firm deadline by which County Defendants must complete rolling productions of responsive documents.

---

61-62, 68-74). Retaliatory acts by the facility include confiscating tablets, cell searches, transferring detainees to other housing blocks within OCJ, and placement of detainees in segregation, solitary confinement, or keep lock. (¶¶ 6-9, 50, 54, 56, 58, 59-62, 75-93, 96, 104-119, 131, 134).

County Defendants' Position

The County Defendants respectfully request an extension of time to confer on RFP No. 30. Plaintiffs originally sought all grievances from all inmates, and the parties have been working to narrow this request down to relevant material and a request that is workable. At first blush, Plaintiffs' revised RFP No. 30 does not appear to address Defendants' concerns about burden and proportionality. But we are reviewing the request with our client to determine whether it is workable. As we informed Plaintiffs' counsel, we are still conferring with our client and can get back to them with our position next week. Additional time to confer with our client is especially important because Plaintiffs just proposed to expand the time period by several months, which may substantially increase the volume of records involved and the associated burden. For example, a shorter time frame than Plaintiffs' June 13th proposal already implicates as many as 1,113 ICE detainee files. We respectfully request the Court allow us to provide Plaintiffs with our position on the latest version of RFP No. 30 by the end of next week.

As to e-discovery, the parties have been negotiating custodians and an initial list of search terms for several months. Only on May 30, 2025, did the parties come to an agreement on an initial list of search terms. Since then, we have been working with our clients and their IT specialists to collect the data and put together an initial review set. The initial list of search terms yielded approximately 28,000 emails, which is much larger than anticipated and not a reviewable data set. We are working to secure an e-discovery vendor who can load these documents into a database. Next, we need to work with the vendor to come up with a plan to further narrow the review set to something manageable so that we can start our review. We expect to secure an e-discovery vendor by July 11, 2025. Once we do that, we can confer with the vendor to present a proposal to Plaintiffs further narrow the search terms. We propose to send Plaintiffs narrowed search terms by July 25, 2025. And we propose submitting a joint status letter specifically on this issue to the Court by August 1, 2025.

As to other outstanding issues, Defendants are still waiting for Plaintiffs to confirm whether Plaintiff Moscoso received any medical or mental health treatment outside of the Orange County Correctional Facility. We asked for HIPAA authorizations for health treatment that predates Moscoso's stay at the jail through the present, and we are waiting for Plaintiff to advise whether he sought or received other treatment. Additionally, the parties are still at an impasse concerning Plaintiffs' refusal to provide HIPAA authorizations for Plaintiffs' pharmaceutical records. Defendants intend to submit a premotion letter on that issue shortly.

Respectfully submitted,

| | |
|---|---|
| */s/ M. Porter* | */s/ Marissa Embola* |
| *One of Plaintiffs' Attorneys* | *Attorneys for County Defendants* |
| | |
| M. Porter* | Leo Dorfman |
| Amy Belsher | Marissa Embola |
| Robert Hodgson | Sokoloff Stern LLP |
| Elizabeth Gyori | 179 Westbury Avenue |
| New York Civil Liberties Union Foundation | Carle Place, New York 11514 |

125 Broad Street, 19th Floor
New York, N.Y. 10004
(212) 607-3300
mporter@nyclu.org

Samah Sisay
Astha Sharma Pokharel
Baher Azmy
Adina Marx-Arpadi Center for Constitutional Rights
666 Broadway, 7th Floor
New York, N.Y. 10007
(212) 614-6484
ssisay@ccrjustice.org

Caitlin J. Sandley*
Center for Constitutional Rights
P.O. Box 486
Birmingham, A.L. 35201
(212) 614-6443
csandley@ccrjustice.org

Isabel Bolo
The Bronx Defenders
360 E 161st Street
Bronx, N.Y. 10451
718-838-7878
ibolo@bronxdefenders.org

*Admitted Pro Hac Vice

(516) 334-4500
ldorfman@sokoloffstern.com
membola@sokoloffstern.com